ACCEPTED
05-15-01533-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
12/17/2015 10:17:26 AM
LISA MATZ
CLERK

No. 05-15-_____-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
12/17/2015 10:17:26 AM
LISA MATZ
Clerk

**In the
Fifth Judicial District Court of Appeals
at Dallas, Texas**

**IN RE BRYAN ROWES
Relator**

**Original Proceeding Arising Out of
the 256th District Court of Dallas County, Texas
No. DF-09-18237
(Hon. David Lopez)**

**Combined Appendix & Record**

In support of this Petition, Relator submits this combined Appendix and

Record, in compliance with Rule 52.3(j) of the Texas Rules of Appellate

Procedure:

Tab A:     Affidavit of Paula Bennett

Tab 1:     Proof of Confinement (December 14, 2015)

Tab 2:     Order in Suit Affecting the Parent Child Relationship (March 6, 2012)

Tab 3:     Transcript of Protective Order Hearing without Exhibits (April 11,

2014)

Tab 4:       Protective Order (April 17, 2014)

Tab 5:       Ex Parte Motion to Modify and Motion to Enforce (April 21, 2015)

Tab 6:       Associate Judge's Report (May 28, 2015)

Tab 7:       Mary Tillotson's Motion for Enforcement of Protective Order (October 23, 2015)

Tab 8:       Order to Appear (October 23, 2015)

Tab 9:       Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer to Mary Tillotson's Motion for Enforcement of Protective Order Subject to Special Exceptions, Motion to Strike, and Motion to Dismiss for Lack of Standing (November 30, 2015)

Tab 10:      Order Holding Bryan Rowes in Contempt for Violation of April 11, 2014 Protective Order, and for Commitment to County Jail (December 10, 2015)

Tab 11:      Amended Order Holding Bryan Rowes in Contempt for Violation of April 17, 2014 Protective Order, and for Commitment to County Jail (December 10, 2015)

Tab 12:      Attachment and Commitment in Contempt (December 10, 2015)

Tab 13:      Contempt Hearing Transcript with Exhibits (December 10, 2015)

| STATE OF TEXAS | § |
| --- | --- |
| | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned notary, on this day appeared in person PAULA A. BENNETT, who is known to me to be the person whose signature is subscribed below and who stated under oath as follows:

"I am PAULA A. BENNETT, one of the counsel representing Relator in Cause No. DF-09-18237, *In the Interest of A.M.R. and A.M.R., Minor Children*, in the 256th District Court of Dallas County, Texas. I have reviewed the items in the Appendix Supporting Petition for Writ of Habeas Corpus and Record and verify based on my personal knowledge that all of the items are true and correct copies of the documents filed in the above lawsuit.

"Further affiant sayeth not."



_____
PAULA A. BENNETT

SUBSCRIBED AND SWORN TO before me, the undersigned notary on the 16th day of December, 2015.

MARGARET JOAN SCOTT
Notary Public, State of Texas
My Commission Expires
July 18, 2017

Notary Public in and for
the State of Texas



Lupe Valdez, Sheriff
FRANK CROWLEY COURTS BUILDING
133 N. RIVERFRONT BLVD., LB-31
DALLAS, TEXAS 75207

14-Dec-15

You have requested that this department provide you with documentation concerning the time you spent in the Dallas County Jail.

The records of the Dallas County Sheriffs Department reflect that **ROWES, BRYAN WILLIAM**

with the date of birth of ▓▓▓▓▓▓ a <u>W/M</u>  .

| | | | |
|---|---|---|---|
| Booked into jail on | 12/10/2015 | and released from jail on | STILL IN CUSTODY |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |
| Booked into jail on | N/A | and released from jail on | N/A |

CONFIRMED BY:
RECORDS UNIT



NO. 09-18237

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| ██████████████ | § | |
| AND | § | 256TH JUDICIAL DISTRICT |
| ██████████████ | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

## ORDER IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

On _March 6 2012_, 2012, the Court heard this case.

### Appearances

Petitioner, BRYAN ROWES, appeared in person and through attorney of record, RYAN KIRKHAM, and announced ready for trial and announced that the parties have agreed to the terms of this judgment to the extent permitted by law, as evidenced by their signatures.

Respondent, MARY TILLOTSON, has agreed to the terms of this judgment to the extent permitted by law, as evidenced by their signatures.

### Jurisdiction

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case. All persons entitled to citation were properly cited.

### Jury

A jury was waived, and all questions of fact and of law were submitted to the Court.

### Record

The record of testimony was duly reported by the court reporter for the 256th Judicial District Court.

_Order in Suit Affecting the Parent Child Relationship_ _Page 1_

*Children*

The Court finds that the following children are the subject of this suit:

Name:  █████████████
Sex: Female
Birth date:  ███████████
Home state: Texas
Social Security number:  ████████
Driver's license number and issuing state: N/A

Name:  ███████████
Sex: Female
Birth date:  ███████
Home state: Texas
Social Security number:  ████████
Driver's license number and issuing state: N/A

*Parenting Plan*

The Court finds that the provisions in these orders relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

*Conservatorship*

The Court finds that the following orders are in the best interest of the children.

IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON are appointed Joint Managing Conservators of the following children:  ██████████████ and  ██████

██████████

---

*Order in Suit Affecting the Parent Child Relationship*        *Page 2*

IT IS ORDERED that, at all times, MARY TILLOTSON, as a parent joint managing

conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

4.      the right of access to medical, dental, psychological, and educational records of the children;

5.      the right to consult with a physician, dentist, or psychologist of the children;

6.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

7.      the right to attend school activities;

8.      the right to be designated on the children's records as a person to be notified in case of an emergency;

9.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

10.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, BRYAN ROWES, as a parent joint managing

conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.      the right of access to medical, dental, psychological, and educational records of the children;

02/22/2012 WED 16:48 [TX/RX NO 5767] ☑005

03/07/2012 WED 15.44 [TX/RX NO 9967] ☑005

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, BRYAN ROWES and MARY TILLOTSON, as

parent joint managing conservators, shall each have the following duties:

1.      the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.      the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

*Order in Suit Affecting the Parent Child Relationship*      *Page 4*

IT IS ORDERED that, during her periods of possession, MARY TILLOTSON, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, BRYAN ROWES, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that MARY TILLOTSON, as a parent joint managing conservator, shall have the following rights and duty:

1. the exclusive right to designate the primary residence of the children within Dallas Counties;

2. the exclusive right to select the school the minor children will attend.

3. the right, (after consultation with the other parent conservator and consultation with the parenting facilitator prior to consenting) to consent to medical, dental, and surgical treatment involving invasive procedures;

4. the right, (after consultation with the other parent conservator), to consent to outpatient psychiatric and psychological evaluation of the children.

5.  the right, (after consultation with the other parent conservator), to consent to outpatient psychiatric and psychological treatment of the children;

6.  the right, subject to the agreement of the other parent conservator, to consent to inpatient psychiatric and psychological treatment of the children.

7.  the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

8.  the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States.

9.  the right, (after consultation with the other conservator and consultation with the parent facilitator), to make decision concerning the children's education.

10. except as provided by section 264.0111 of the Texas Family Code, the right, subject to the agreement of the other parent conservator, to the services and earning of the children.

11. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right, subject to the agreement of the other parent conservator, to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government.

12. the duty, subject to the agreement of the other parent conservator, to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

13. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

IT IS ORDERED that BRYAN ROWES, as a parent joint managing conservator, shall

have the following rights and duty:

1.  the right to consultation from the other conservator, and an opportunity to consult with the parent facilitator, prior to that conservator consenting to medical, dental, and surgical treatment involving invasive procedures.

2.  the right to consultation with the other parent conservator, prior to that conservator's consent to outpatient psychiatric and psychological evaluation of the

children.

3. the right to a consultation with the other parent conservator, prior to that conservator's consent to outpatient psychiatric and psychological treatment of the children.

4. the right, subject to the agreement of the other parent conservator, to consent to inpatient psychiatric and psychological treatment of the children.

5. the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children.

6. the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States.

7. the right to consultation from the other conservator, and consultation with the parent facilitator prior to the other conservator making a decision concerning the children's education with the exception of the other conservators right to select the school the children attend.

8. except as provided by section 264.0111 of the Texas Family Code, the right, subject to the agreement of the other parent conservator, to the services and earnings of the children.

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right, subject to the agreement of the other parent conservator, to act as an agent of the children in relation to the children estates if the children's action is required by a state, the United States, or a foreign government.

10. the duty, subject to the agreement of the other parent conservator to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

The Court orders that, as long as the nonprimary parent resides in Dallas County or a contiguous county, the residence of the children is restricted to Dallas County or until further orders of the Court or by written agreement of the parties filed with the Court.

*Order in Suit Affecting the Parent Child Relationship*                                                    *Page 7*

*Possession and Access*

1.    *Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Possession Order.  IT IS ORDERED that this Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Possession Order.  IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Possession Order "school" means the primary or secondary school in which the children is enrolled or, if the children is not enrolled in a primary or secondary school, the public school district in which the children primarily resides.

2.    In this Possession Order "children " includes each child , whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the children at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the children under the specified terms set out in this Possession Order.

(c)    Except as otherwise expressly provided in this Possession Order, BRYAN ROWES shall have the right to possession of the children as follows:

Weekends Periods of Possession shall continue year round with the exception of June and July.

*December 2, 2011 to January 13, 2012*

* Father shall have possession of the children on alternate weekends from Friday at 6:00 p.m. until the immediately following Sunday at 6:00 p.m.

* Father shall have possession of the children on each Thursday from 6:00 p.m. until 8:00 p.m.

---

*Order in Suit Affecting the Parent Child Relationship*                          *Page 8*

_Beginning: January 14, 2012_

- Father shall have possession of the children each Thursday from the time school recesses until school resumes Friday and alternate Fridays from the time school recesses until 11:30 a.m. the immediately following Sunday. This weekend possession on alternate weekends shall continue year round and the special periods of possession set forth herein shall serve as an overlay to the weekend possession calendar and shall not alter the rotation of the weekends. Upon thirty (30) day's written notice to Mother, the Father may elect to extend his possession until Sunday at 6:00 p.m. in the event he is not working on Sundays.

_Special Periods of Possession_

_Winter Break_

Christmas Holidays in Odd-Numbered Years – In odd numbered years, BRYAN ROWES shall have the right to possession of the children from the time school recesses until 8:00 p.m. on December, 23rd.

Christmas Holidays in Odd-Numbered Years - In odd-numbered years, MARY TILLOTSON shall have the right to possession of the children from 8:00 p.m. on December, 23rd until school resumes.

Christmas Holidays in Even Numbered Years – In even numbered years, BRYAN ROWES shall have the right to possession of the children from 10:00 a.m. December 26th until school resumes following the holiday.

Christmas Holidays in Even Numbered Years – In even numbered years, MARY TILLOTSION shall have the right to possession of the children from the time school recesses until 10:00 a.m. on December 26th.

_Thanksgiving Holiday_

Thanksgiving in Even-Numbered Years - In even-numbered years, BRYAN ROWES shall have the right to possession of the children beginning at 6:00 p.m. on the day the children is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

Thanksgiving in Odd-Numbered Years - In odd-numbered years, MARY TILLOTSON shall have the right to possession of the children beginning at 6:00 p.m. on the day the children is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

### Spring Break

Father shall have possession of the children in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the children is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

Mother shall have possession of the children in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the children is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

*In the event that Spring Break conflicts with Easter or Passover, Spring Break shall supercede. In the event of a conflict with Passover and Easter, the Easter holiday supercedes in odd numbered years and Passover in even numbered years.*

### Easter Holiday

Mother shall have possession of the children every Easter from the time school recesses for Easter until the time school resumes following Easter Sunday. *(In the event of a conflict with Passover and Easter, the Easter holiday supercedes in odd numbered years and Passover in even numbered years).*

### Special Holidays

Mother shall have possession of the children from 3:00 p.m. the day prior until 3:00 p.m. the day following:

- First communion *(Father shall yield possession for two (2) classes for this special holiday also)*
- First reconciliation *(Father shall yield possession for two (2) classes for this special holiday also)*
- Confirmation *(Father shall yield possession for two (2) classes for this special holiday also)*
- 8th Grade Graduation weekend from 3:00 p.m. Friday until 6:00 p.m. Sunday.

Father shall have possession of the children from 3:00 p.m. the day prior until 3:00 p.m. the day following:

- Yom Kippur
- Purim
- Suckhot
- Simchot Torah
- Tu V'Shvat
- Hannukah (not to supercede thanksgiving or Winter Break allocation)

*Order in Suit Affecting the Parent Child Relationship*                                     *Page 10*

- Passover (2 days) (*In the event of a conflict with Passover and Easter, the Easter holiday supercedes in odd numbered years and Passover in even numbered years.*
- Rosh Hashanah (2 days)

### *Children's Birthday*

If a parent is not otherwise entitled under this Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent and returns the child to that same place.

### *Father's Day*

BRYAN ROWES shall have the right to possession of the children each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if BRYAN ROWES is not otherwise entitled under this Possession Order to present possession of the children, he shall pick up the children from MARY TILLOTSON and return the children to that same place.

### *Mother's Day*

MARY TILLOTSON shall have the right to possession of the children each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if MARY TILLOTSON is not otherwise entitled under this Possession Order to present possession of the children , she shall pick up the children from BRYAN ROWES and return the children to that same place.

### *Summer Possession*

June in Even-Numbered Years - In even-numbered years, Mother shall have the right to possession of the children the 2nd and 4th weeks and Father shall have possession of the children the 1st and 3rd weeks.

June in Odd-Numbered Years - In odd-numbered years, Mother shall have the right to possession of the children the 1st and 3rd weeks and Father shall have possession of the children the 2nd and 4th weeks.

July in Even-Numbered Years - In even-numbered years, Mother shall have the right to possession of the children the 3rd and 4th weeks and Father shall have possession of the children the 1st and 2nd weeks.

July in Odd-Numbered Years - In odd-numbered years, Mother shall have the right to possession of the children the 1st and 2nd weeks and Father shall have possession of the children the 3rd and 4th weeks.

The parties shall exchange the children for the month of June and July periods at 6:00 p.m. Sunday with the parent receiving the children picking them up from the other conservator.

### Surrender of Child by MARY TILLOTSON

*MARY TILLOTSON* is ORDERED to surrender the children to *BRYAN ROWES* at the beginning of each period at the children's school or the police station nearest her residence.

### Surrender of Child by BRYAN ROWES

*BRYAN ROWES* is ORDERED to surrender the children to *MARY TILLOTSON* at the children's school or the police station nearest his residence.

This concludes the Possession Order.

2.    *Duration*

The periods of possession ordered above apply to each children the subject of this suit while that children is under the age of eighteen years and not otherwise emancipated.

3.    *Noninterference with Possession*

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

4.    *Termination of Orders*

The provisions of this order relating to conservatorship, possession, or access terminate on the remarriage of BRYAN ROWES to MARY TILLOTSON unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

*Order in Suit Affecting the Parent Child Relationship*                    *Page 12*

## Telephone Access to Minor Children

IT IS ORDERED that the parent shall provide reasonable telephone access for the children to the other parent.

## Parenting Facilitator

The Court finds that there is good cause shown and it is in the best interest of the children the subject of this suit that a parenting coordinator be appointed and that the parties have agreed to the appointment of *Carrie Beaird*, **15150 Preston Road, Suite 300, Dallas, Texas 75281, 972-448-8797**, as the Cooperative Parenting Facilitator in this case. The Court further finds that the appointment of a parenting facilitator is in the best interest of the children.

IT IS FURTHER ORDERED that all expenses associated with the appointment of the Cooperative Parenting Facilitator shall be split equally between the parties unless the parenting facilitator finds that a parent is using the process for harassment or is abusing the process in which case she may reallocate the costs for those harassing or abusive sessions against the parent who is abusing the process. IT IS ORDERED that each party shall promptly pay one-half of all joint sessions. IT IS FURTHER ORDERED that each party shall promptly pay for any and all sessions that is scheduled by the party and in which the party attends individually and without the other party. The Court shall enforce payment of any amounts owed to the Cooperative Parenting Coordinator by either party as necessary.

The Cooperative Parenting Facilitator shall assist the parties and the children to promote the children's best interest in general. The Cooperative Parenting Facilitator is entitled to communicate with the parties, children, health care providers, psychological providers, teachers and any other third parties deemed necessary by the Cooperative Parenting Facilitator. The

*Order in Suit Affecting the Parent Child Relationship*                Page 13

parties shall cooperate with the coordinator by executing any necessary releases.

I.     The Cooperative Parenting Facilitator shall:

1.     Make any recommendations relative to enforcing any shared parenting plan and parenting schedule and to minimize conflicts between the parties by addressing the particular patterns of behavior of the parents,

2.     Assist the parent in implementing any plan or schedule so that the children have continuous and consistent contact with both parents within the context of court ordered possession schedules.

3.     Minimize conflict, loyalty binds and unnecessary stress for the children.

4.     Have the following broad responsibilities:

     a.     Recommend approaches that will reduce conflict between parents

     b.     Recommend compliance with any parenting plan or parenting schedule in the Court's order.

     c.     Recommend outside resources as needed such as parenting classes, psychotherapy, etc.

     d.     Monitor parenting plan or parenting schedule and mediate the parent's disputes concerning parenting issues.

     e.     Write detailed guidelines or rules recommended for communication between parents and practicing those guidelines or rules with the parents. If parenting skills are lacking, the coordinator shall work with one or both parents to teach those skills.

     f.     Recommend modification of the parenting plan when agreement or consensus cannot be reached, as a means of reducing conflict and promoting the best interest of the children. Any recommendation for modification of a plan or schedule must be in writing and submitted to the parties and their attorneys.

     g.     Prior to completion, write modification of the parenting plan when mutual agreement has been made by both parents and their attorneys.

     h.     Prior to completion, recommend how a particular elements of the parenting plan or schedule shall be implemented including, without limitation,, the frequency and length of visitation, temporary changes in

*Order in Suit Affecting the Parent Child Relationship*             *Page 14*

the schedule, holiday or vacation planning, logistics of pick up and drop off, suitability of accommodations, issues dealing with stepparents and significant others.

i.      Work with both parents and any significant others to update and fine tune their parenting schedule over time. (All changes in the family's circumstances could not be foreseen when the parenting plan originated). Parenting schedules, post divorce, may need to be adjusted to children's changing developmental needs, schedules, new blended families or evolving outside interests.

j.      Ensure that both parents maintain ongoing relationships with the children.

k.      Recommend a final decision on any parenting issue over which the parents reach an impasse, but submission of a written recommendation to the parties and their counsel.

l.      Educate the parents in the areas of:

effective communication and negotiation skills.
effective parenting skills.
how to meet the developmental needs of their children.
how to disengage from each other when it leads to conflict.
how to keep their children out of the middle.
the sources of their conflict and its effect of the children.

The Cooperative Parenting Facilitator may recommend the educational component is completed in a group format with other divorcing parents or in a co-parent format. If the parents participate in a group the Cooperative Parenting Facilitator may recommend they participate in the same group together or separately. The joint co-parent sessions may occur simultaneously or after the completion of an eight week group.

m.      Maintain communication among all parties by serving, if necessary, as a conduit for information. The Cooperative Parenting Facilitator is not the ally of either parent. The Cooperative Parenting Facilitator's role is active and specifically focused on helping parents work together for the benefit of the children. The Cooperative Parenting Facilitator's fundamental role is to minimize the conflict to which the children are exposed by the parties.

n.      The Cooperative Parenting Facilitator is not a custody evaluator, nor can

they change the amount of the custodial time either parent has been granted by the courts. Making decisions to place children in the residence and custody of one parent would seriously compromise the Cooperative Parenting Facilitator's neutrality. The Cooperative Parenting Facilitator does not have the power to recommend any changes relevant to the primary residence of the children. The Cooperative Parenting Facilitator recommend temporary changes to reduce the conflict for the children or to better understand the needs of the children. Temporary changes are those changes that would not expand more than a few weeks and might include slight changes in the transfer location, time of phone calls, and other parenting issues.

    o.    Recommend if necessary specific solutions to visitation issues and shall make recommendation in writing to counsel.

    p.    Assistance provided by the Cooperative Parenting Facilitator is not intended to be a crisis service. Unless an emergency directly impacts the children, neither parent shall contact the Cooperative Parenting Facilitator outside of normal working hours.

II.    Meeting with the Cooperative Parenting Facilitator:

    1.    The Cooperative Parenting Facilitator may meet with the parties, the children and significant others jointly or separately. The Cooperative Parenting Facilitator shall recommend the appointments shall be joint or separate.

    2.    Both parents shall contact the Cooperative Parenting Facilitator to schedule appointments. Appointments may also be scheduled when the Cooperative Parenting Facilitator requests.

    3.    Each parent should direct any disagreements or concerns regarding the children to the Cooperative Parenting Facilitator. The Cooperative Parenting Facilitator shall work with both parents to resolve the conflict and if necessary, shall recommend an appropriate resolution to the parties and their counsel.

III.    Written and Oral Reports and Appearance in Court:

The Cooperative Parenting Facilitator may submit written reports to the parties, the court, and their counsel describing any conflicts and the Cooperative Parenting Facilitator's recommended resolutions. At any time, the Cooperative Parenting Facilitator may also report to

the parties, the court and their counsel on parental compliance with and the parental attitudes about any element of the co-parenting process.

### Our Family Wizard

IT IS ORDERED that the parties (except in emergencies) communicate through *Our Family Wizard*. IT IS FURTHER ORDERED that the parties post all information relating to the minor children upon receipt on *Our Family Wizard*.

IT IS FURTHER ORDERED that the parents shall purchase *Our Family Wizard* (www.ourfamilywizard.com) within three (3) days after the entry of this Order. IT IS FURTHER ORDERED that the parents shall use *Our Family Wizard* for all communications between the parties, absent an emergency, with the only exception being that if either parent needs to email an attachment to the other parent, and they are unable to do so through Our Family Wizard, then the parent shall send an email with the attachment to the other parent through that parent's alternative email address (Katy Tillotson's' alternate email address: ▉▉▉▉▉▉▉▉▉▉ or substitute email address noticed through *Our Family Wizard*; Bryan Rowes' alternate email address: ▉▉▉▉▉▉ or substitute email address noticed through *Our Family Wizard*), and also send the other parent an email through *Our Family Wizard* notifying them that an email was sent to the parent's email address.

IT IS FURTHER ORDERED that each parent shall timely (within 48 hours of receipt) provide the other parent, through *Our Family Wizard* with information received regarding any children the subject of this suit.

---

*Order in Suit Affecting the Parent Child Relationship*                    *Page 17*

IT IS FURTHER ORDERED that each parent shall update the calendar in *Our Family Wizard* regarding all activities/events/appointments concerning the children as soon as the information is known to the parent, and at a minimum by midnight on Monday and Friday of each week beginning the first week following the entry of this Order.

## Documents

IT IS ORDERED that BRYAN ROWES shall produce twenty four (24) months of bank statements, credit card statements in his name, and his tax returns from the time of divorce to the current date. These documents must be produced within fourteen (14) days to his attorney of record and forwarded to MARYTILLOTSON's attorney of record within three (3) business days of receipt by BRYAN ROWES' attorney. If an adjustment is warranted for child support using the Child Support guidelines the amount shall be inserted in this Order. If the parties are unable to agree to a child support adjustment the matter shall be scheduled for an in person arbitration with Frances Harris whose decision shall be binding on the parties.

IT IS FURTHER ORDERED that BRYAN ROWES shall secure the unpaid child support with a declining term insurance policy with the children as beneficiaries and provide proof of same annually to MARY TILLOTSON.

IT IS ORDERED that BRYAN ROWES shall submit his proof of payments to Pat Gill or MARY TILLOTSON (for services by Pat Gill) within fourteen (14) days of entry of this Order.

IT IS FURTHER ORDERED that MARY TILLOTSON shall submit invoices from Pat Gill to BRYAN ROWES.

*Order in Suit Affecting the Parent Child Relationship*                          *Page 18*

IT IS ORDERED that BRYAN ROWES shall pay MARY TILLOTSON's deficiency (subject to reimbursement or true up) on the automobile in the Decree of Divorce. Submission shall be within fourteen (14) days in the same manner as bank statements and credit card statement. IT IS FURTHER ORDERED that the parties shall offset the amounts that each owes and payment made to the other party in the event the amounts do not offset.

### Extra Curricular Activities

IT IS FURTHER ORDERED and the parties agree that the minor children shall finish the current term of the activities in which they are enrolled. Dance term ends Summer of 2012. Choir, basketball and soccer term ends with the completion of the Spring Semester or activity term within that semester or whichever first occurs. Cub Scouts term ends with Summer of 2012. IT IS ORDERED that BRYAN ROWES shall pay one half (1/2) of the costs of the registration, enrollment, uniforms, equipment for the children to participate in these activities for this term.

IT IS ORDERED and the parties agree that BRYAN ROWES and MARY TILLOTSON shall each pay one half (1/2) of the costs of agreed upon extracurricular activities, including camps or lessons. IT IS FURTHER ORDERED that such agreement must be in writing, either email or text constitutes a "writing" for purposes of this provision.

IT IS FURTHER ORDERED that the party in possession of the children during a regularly scheduled extracurricular activity shall use their best efforts to transport the children to that activity on time and insure the children is present for the duration of the activity. If that party is unable to transport or insure the children are present for the duration of the activity that

*Order in Suit Affecting the Parent Child Relationship*            *Page 19*

parent shall offer the opportunity to the other parent.   If the parties are not able to agree upon an activity they shall confer with the parent facilitator who shall render a decision that is binding on the parents with regard to extracurricular activities.

IT IS ORDERED that either party shall have the right to enroll the children in extracurricular activities without the consent of the other party provided that the non-consenting parent is not required to pay costs of the activity nor shall the non-consenting parent be required to yield their time so that the children may participate in that activity.

IT IS FURTHER ORDERED that the method of payment for the foregoing expenses shall be paid by the parties as follows:

- By direct payment of his or her 50% share to the organization or individual as applicable within five (5) business days of receipt of an invoice specifying the total payment to be made; or

- By making his or her 50% of the payment available to the paying party to enable him or her to timely make the payment.

IT IS ORDERED that in the event either party pays 100% of any of the foregoing expense, then the nonpaying party shall reimburse the paying party 50% of such expenses paid by the paying party within five (5) business days of the nonpaying party's receipt of documentation evidencing the paying party's payment of such expenses.   Such reimbursements shall be made by mail or hand delivery at the paying party's current residence address.

*Order in Suit Affecting the Parent Child Relationship*                                    *Page 20*

*Health Care*

1.    IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON shall each provide medical support for each children as set out in this order as additional child support for as long as the Court may order BRYAN ROWES and MARY TILLOTSON to provide support for the children under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day BRYAN ROWES and MARY TILLOTSON's actual or potential obligation to support a children under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON are discharged from the obligations set forth in this medical support order with respect to that children, except for any failure by a parent to fully comply with those obligations before that date. IT IS FURTHER ORDERED that the cash medical support payments ordered below are payable through the state disbursement unit and subject to the provisions for withholding from earnings provided above for other child support payments.

2.    Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which BRYAN ROWES is responsible under a medical support order that does not exceed 9

*Order in Suit Affecting the Parent Child Relationship*                    *Page 21*

percent of BRYAN ROWES's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a children" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b.    to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3.    Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available to MARY TILLOTSON at a reasonable cost of $160.00

*Order in Suit Affecting the Parent Child Relationship*                            *Page 22*

from another source, including the program under section 154.1826 of the Texas Family Code to provide health insurance in title IV-D cases. IT IS FURTHER ORDERED that BRYAN ROWES shall reimburse MARY TILLOTSON the cost of the medical insurance premium.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4.     Provision of Health-Care Coverage -

As child support, MARY TILLOTSON is ORDERED to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

MARY TILLOTSON is ORDERED to maintain such health insurance in full force and effect on each children who is the subject of this suit as long as child support is payable for that children . MARY TILLOTSON is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of her employment or other disqualification from the group insurance. MARY TILLOTSON is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

MARY TILLOTSON is ORDERED to furnish BRYAN ROWES a true and correct copy of the health insurance policy or certification and a schedule of benefits within ten (10) days of the signing of this order. MARY TILLOTSON is ORDERED to furnish BRYAN ROWES the

*Order in Suit Affecting the Parent Child Relationship*                                   *Page 23*

insurance cards and any other forms necessary for use of the insurance within ten (10) days of the signing of this order. MARY TILLOTSON is ORDERED to provide, within three days of receipt by her, to BRYAN ROWES any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that BRYAN ROWES paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, it is ORDERED that if MARY TILLOTSON is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of BRYAN ROWES or others as authorized by law.

Pursuant to section 154.182 of the Texas Family Code, BRYAN ROWES is ORDERED to pay MARY TILLOTSON cash medical support for reimbursement of health insurance premiums, as additional child support, of One Hundred Sixty Dollars and No Cents ($160.00) per month, with the first installment being due and payable on December 1, 2012 and a like installment being due and payable on or before the first day of each month until the termination of current child support for all children under this order.

IT IS ORDERED that the cash medical support provisions of this order shall be an obligation of the estate of BRYAN ROWES and shall not terminate on his death.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: MARY TILLOTSON is ORDERED to pay 50 percent and BRYAN ROWES is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, MARY TILLOTSON is providing health insurance as ordered *including*

*Order in Suit Affecting the Parent Child Relationship*                          *Page 24*

*without limitation, medical, prescription drugs, psychiatric, psychological, dental, eye care, vision exams, contact lens and orthodontic charges, occupational therapy, dyslexia tutoring, and therapy, physical therapy, psycho educational therapy. The parties agree and it is ORDERED that the current health care providers and dental care providers shall not be changed during the pendency of the case absent written agreement of the parties.*

The party who incurs a health-care expense on behalf of a children is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any children who is the subject of this suit that are incurred while child support is payable for that children .

5. Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6.    Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion of that bill.

7.    Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option , may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of section

*Order In Suit Affecting the Parent Child Relationship*                          *Page 26*

1204.251 of the Texas Insurance Code, BRYAN ROWES is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a children to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.      Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a children shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.      WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID

*Order in Suit Affecting the Parent Child Relationship*                                    *Page 27*

ON BEHALF OF THE CHILDREN.

### Miscellaneous Child Support Provisions

#### Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this order shall be an obligation of the estate of BRYAN ROWES and shall not terminate on the death of BRYAN ROWES. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of BRYAN ROWES's estate.

#### Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this order relating to current child support terminate on the remarriage of BRYAN ROWES to MARY TILLOTSON unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this order does not terminate on the death of MARY TILLOTSON but continues as an obligation to AVI MICAH ROWES and AMELIA MATZEN ROWES.

### Settlement of Future Disputes

The Court finds that the parties agree to the following, as evidenced by their signatures below.

#### Mediation

It is agreed that before setting any hearing or initiating discovery in a suit for modification

*Order in Suit Affecting the Parent Child Relationship*                                    Page 28

of the terms and conditions of conservatorship, possession, or support of the children, except in an emergency, the parties shall mediate the controversy in good faith. This requirement does not apply to actions brought to enforce this order or to enforce any subsequent modifications of this order. It is agreed that the party wishing to modify the terms and conditions of conservatorship, possession, or support of the children shall give written notice to the other party of a desire to mediate the controversy. If, within ten days after receipt of the written notice, the parties cannot agree on a mediator or the other party does not agree to attend mediation or fails to attend a scheduled mediation of the controversy, the party desiring modification shall be released from the obligation to mediate and shall be free to file suit for modification.

### Permanent Mutual Injunction

The parties agree and the Court orders:

1.    *No Disparaging Statements* - Neither party shall make disparaging statements about the other party or the other party's family to or in the presence of the children or within the hearing of the children nor allow any third party to disparage the other parent in the presence of the children or within the hearing of the children.

2.    *No Disparaging Statements* - Neither party shall make disparaging statements about the other party's religion in the presence of the children or within the hearing of the children nor allow any third party to disparage the other parent's religion in the presence of the children or within the hearing of the children.

3.    *No Disparaging Statements* - Neither party shall disparage nor allow a third party to disparage the employ of the other parent or that parent's family.

4. _Conduct In The Presence of the Children_ — Neither parent shall nor shall they allow third parties to be naked in the presence of the children, nor shall they bathe with the children nor allow a third party adult to do so.

## Service of Writ

Petitioner and Respondent waive issuance and service of the writ of injunction, by stipulation or as evidenced by the signatures below. IT IS ORDERED that Petitioner and Respondent shall be deemed to be duly served with the writ of injunction.

## Required Information

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: **BRYAN ROWES**
    Social Security number: xxx-xx-▓▓▓
    Driver's license number and issuing state: ▓▓▓
    Current residence address: ▓▓▓
    Mailing address: ▓▓▓
    Home telephone number: ▓▓▓
    Name of employer: _Karen Dillard College Prep_
    Address of employment: _5211 Forest Lane, Suite 108, Dallas, Texas 75244_
    Work telephone number: _214-866-0220_

Name: **MARY TILLOTSON**
    Social Security number: xxx-xx-▓▓▓
    Driver's license number and issuing state: ▓▓▓
    Current residence address: ▓▓▓
    Mailing address: ▓▓▓
    Home telephone number: ▓▓▓
    Name of employer: _Children's Medical Center_
    Address of employment: _1935 Medical District Drive, Dallas, Texas 75235_
    Work telephone number: _214-456-7000_

*Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILDREN.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF

02/22/2012 WED 18:48 [TX/RX NO 8767] ☒038

03/07/2012 WED 15:44 [TX/RX NO 9967] ☒033

CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 256th District Court, 600 Commerce Street, Dallas, Texas 75202. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILDREN CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILDREN CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

### *Warnings*

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILDREN MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

### *Attorney's Fees*

IT IS ORDERED that attorney's fees are to be borne by the party who incurred them.

### *Costs*

IT IS ORDERED that costs of court are to be borne by the party who incurred them.

02/22/2012 WED 16:48 [TX/RX NO 9767] @ 085

03/07/2012 WED 15:44 [TX/RX NO 9367] @ 035

## Merger of Mediation Agreement

This order is stipulated to represent a merger of a mediation agreement between the parties. To the extent there exist any differences between the mediation agreement and this order, this order shall control in all instances.

## Discharge from Discovery Retention Requirement

IT IS ORDERED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

All provisions of the prior Decree of Divorce that are not modified remain in full force and effect.

## Relief Not Granted

IT IS ORDERED that all relief requested in this case and not expressly granted is denied.

## Date of Order

SIGNED on _____ MARCH 6 2012 _____

_____
JUDGE PRESIDING

JUDGE 301 JUDICIAL DISTRICT COURT ACTING
FOR 256 JUDICIAL DISTRICT COURT OF
DALLAS COUNTY, TEXAS

*Order in Suit Affecting the Parent Child Relationship*                     *Page 34*

APPROVED AS TO FORM ONLY:

QUILLING SELANDER LOWNDS
WINSLETT MOSER
2001 Bryan Street, Suite 1800
Dallas, TX 75201
Tel: (214) 871-2100
Fax: (214) 871-2111

By: _____
FREDERICK S. ADAMS, JR.
State Bar No. 0085600
Attorney for *MARY TILLOTSON*

McCurley, Orsinger, McCurley, Nelson
& Downing, L.L.P.
5959 Sherry Lane, Suite 800
Dallas, Texas 75225
Tel: (214) 273-2400
Fax: (214) 273-2470

By: _____
RYAN KIRKHAM
State Bar No. 24071100
Attorney for *BRYAN ROWES*

*Order in Suit Affecting the Parent Child Relationship*                    Page 35

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

BRYAN ROWES

MARY TILLOTSON

*Order in Suit Affecting the Parent Child Relationship*

*Page 36*

REPORTER'S RECORD

VOLUME 1 OF 1

CAUSE NO. DF-09-18237

IN THE INTEREST OF                    )          IN THE COUNTY COURT

                                      )

███  ██████  ████                     )

                                      )          DALLAS COUNTY, TEXAS

AND                                   )

                                      )

████  ██████  █████                   )          256TH JUDICIAL DISTRICT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PROTECTIVE ORDER HEARING

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 11th day of April, 2014, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Associate Judge, Honorable Graciela Olvera, George L. Allen, Sr. Courthouse, and held in Dallas County, Texas, and without a jury:

Proceedings were reported by machine shorthand.

COPY

A P P E A R A N C E S

Mr. Frederick S. Adams, Jr.
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street
Suite 1800
Dallas, Texas  75201
(214) 871-2100 (tel)
(214) 871-2111 (fax)
fadams@qslwm.com
    COUNSEL FOR THE MOVANT

Mr. Bryan Rowes

    RESPONDENT, PRO SE

                         I N D E X
                         VOLUME 1

APRIL 11, 2014                                              PAGE
 Appearances......................................... 02
MOVANT'S WITNESSES:

                    Direct   Cross   Statement
KATY TILLOTSON      07:05    26:24
BRYAN ROWES         50:23            58:13
FRED ADAMS          59:16    60:25
Movant Rests......................................... 64
Respondent Rests..................................... 64
Judge's Ruling....................................... 65
Reporter's Certificate............................... 71


                    E X H I B I T S
MOVANT'S:
NO.   DESCRIPTION                    OFFERED   ADMITTED
01    Email......................... 10        10
02    Admissions.................... 11        11
03    Responses..................... 12        12
04    Letter........................ 13        13
05    Audio recording.............. 15        16
06    Message....................... 16        16
07    Timeline...................... 17        17
08    Dr. Albritton's report...... 18        18
09    Email to Carrie Baeird...... 21        21
10    Email to Mr. Rowes........... 21        21
13    Email......................... 52        53


RESPONDENT'S:

01    Letter to Mr. Adams......... 27        27
02    Letter........................ 33        n/a
02    Text message................. 33        33
03    Dr. Albritton's report..... 39        n/a
      (All Exhibits retained by Judge Olvera.)

PROTECTIVE ORDER HEARING, APRIL 11, 2014

                    P R O C E E D I N G S

          THE COURT:  What do you have?

          MR. ROWES:  Just a request to review documents.

          THE COURT:  It's to unseal the --

          MR. ROWES:  It's not to take.  It's just to review downstairs.

          THE COURT:  Review what?

          MR. ROWES:  The original temporary restraining order.  I just want to look at it.

          THE COURT:  Don't you have a copy?

          MR. ADAMS:  You got a copy the day we were in court.

          MR. ROWES:  I believe I did.  I can't find it.

          MR. ADAMS:  I don't want to unseal this file under any set of circumstances.

          THE COURT:  I don't think this is necessary because you're a party to the lawsuit, Mr. Rowes.  You should be able to access the records.

          MR. ROWES:  I thought I would be able to, but they wouldn't let me downstairs.

          THE COURT:  Do you have an extra copy of the TRO?

          MR. ADAMS:  The TRO or the protective order?

MR. ROWES: I want a copy of the original draft, the judge's draft.

THE COURT: What do you mean the draft?

MR. ADAMS: You mean the associate judge's recommendation, the one she handwrote? I don't have that with me.

THE COURT: What is it?

MR. ROWES: The one you handwrote, the recommendations.

THE COURT: Do you remember what date it was?

MR. ROWES: October 3rd.

THE COURT: Of last year?

MR. ROWES: Yes.

THE COURT: And you just want the TRO?

MR. ROWES: Yes, ma'am.

MR. ADAMS: Let me see which one that is. Is that the one you're looking for?

MR. ROWES: No. It's the one with the carbon copies. You know what I'm talking about?

MR. ADAMS: The associate judge's record.

THE COURT: From what date?

MR. ROWES: The 3rd.

THE COURT: I didn't write up one on the 3rd.

MR. ROWES: Then it must have been on the 14th. Sorry. Thank you, Your Honor.

THE COURT: Oh, wait a minute. You're missing a page.

MR. ROWES: Oh, yeah.

THE COURT: Okay. Are we ready to get started?

MR. ADAMS: Yes, ma'am.

THE COURT: Mr. Rowes, are you ready?

MR. ROWES: Yes, ma'am.

THE COURT: I'm putting you on the clock for an hour and a half each. Let me have the parties and the witnesses stand and raise your right hand.

MR. ROWES: I'm going to plead the Fifth, Your Honor.

THE COURT: You need to raise your right hand.

(Witnesses sworn by Judge Olvera.)

THE COURT: Okay. You may be seated.

Mr. Adams, call your first witness.

MR. ADAMS: Call Katy Tillotson.

Sit in the one closest to the microphone.

THE COURT: Pull the microphone closer to you, ma'am.

Whenever you're ready.

KATY TILLOTSON,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. ADAMS:

Q.    Katy, do you understand that we're here today on your application for protective order under the Code of Criminal Procedure?

A.    Yes, sir.

Q.·    Before we do anything else, I want you to tell this Court what happened about an hour ago.

A.    I walked into the courtroom, and my husband had dropped me off because he was parking, and I was supposed to meet Fred downstairs in the cafeteria, and so, I was waiting outside the elevator to go down, and I look over, and Bryan is standing closer -- I mean, he had walked up, and he was closer than you and I are (indicating), and I said, I'm going down to the cafeteria, because I assumed he would be going up, and he said, I know, so am I.  And the door opened, and he just walked in, right past me, and I obviously didn't get on the elevator with him, and as it was closing, I said, we have a protective order, and he just smirked at me, and one of the sheriffs --

Q.    Dallas county security?

A.    Dallas county security had seen it happen and came over, and I said, I have a protective order against

him, he's not supposed to do that, and so, he escorted me down to Fred, in the basement cafeteria, and he looked around, and Bryan wasn't there.

Q. And then what happened while you and I were sitting at the table?

A. He walked right past the cafeteria.

Q. And stared in?

A. Yeah, with a smirk on his face, trying to intimidate me like he always does, like he's doing right --

Q. Are you fearful of Mr. Rowes?

A. Yes.

Q. Now, did you have the opportunity -- it's okay.

THE COURT: You want to hand her the Kleenex, Mr. Adams?

MR. ADAMS: Yeah.

A. The sheriff said, it's obvious he's just messing with her. He could have taken a different elevator. He could have waited. I was there first. He saw me, and he just passed me and got on the elevator before me.

Q. (BY MR. ADAMS) Did I make you a copy of the records that I got from Mr. Rowes' employer?

A. Yes.

Q. Did you have an opportunity to review them all?

A. (Witness nods head.)

Q. Briefly tell the Court what was in there.

A. Everything. My entire life, basically. He had gone through years of my husband's emails, some of which I was included on and some not. So often when I email Fred, I cc my husband, and so he had my emails to Fred that Joe was included on. There was a travel file where he had our travel itineraries, flight information, hotel information, all in this travel file. He had a password file where he had everything from my passwords to Shutterfly where I store my family pictures to my personal bank accounts, student loans. I mean, everything you can possibly imagine, our iTunes accounts, and he had filed it. He had gone into Joe's contacts and had things like our nanny's phone number.

MR. ADAMS: May I approach the witness, Your Honor?

THE COURT: You may.

A. My sister's information.

Q. (BY MR. ADAMS) Let me show you what I've marked as Movant's 1. Do you recognize that to be part of those documents?

A. Yep.

Q. Now, that was an email between you and Mr. Tillotson exchanging information, correct?

A. Yeah. This is what Bryan -- I think he just compiled it, but it is taken from these emails.

Q. Right. But you didn't put these headers on here

where it says travel or --

A. Oh, no, booking date. I mean, he's known everywhere we've been going for I don't know how long.

MR. ADAMS: Offer Movant's 1.

(Exhibit Movant's 1 offered.)

THE COURT: I'll give you a minute to look at it, Mr. Rowes.

A. He had things like --

Q. (BY MR. ADAMS) Katy, you've got to wait for a question.

A. Sorry.

THE COURT: Do you have any objections?

MR. ROWES: No, Your Honor.

THE COURT: Admitted.

(Exhibit Movant's 1 admitted.)

Q. (BY MR. ADAMS) Now, you and Joe were going through counseling, were you not?

A. Uh-huh. We were.

Q. Do you remember the abhorrent and offensive admissions that Mr. Rowes sent to you?

A. Yes.

Q. Let me show you what I've marked as Movant's 2 and ask you if you recognize those?

A. Oh, yes, because I cried for hours after I saw that.

Q.    How many people knew that you and Joe were in counseling?

A.    My mother.

Q.    You, Joe, and his business parter?

A.    Me, Joe, his business parter, Buddy.

Q.    That's it?

A.    Yeah.  I may have told a girlfriend, but not via email.

Q.    There's no way that Mr. Rowes would know about it?

A.    No.

Q.    Yet he asked you to admit or deny it, didn't he?

A.    (Witness nods head.)

Q.    And that was before we discovered the email invasion, correct?

A.    (Witness nods head.)

          MR. ADAMS:  Offer Movant's 2.

          (Exhibit Movant's 2 offered.)

          THE COURT:  Any objection?

          MR. ROWES:  No, Your Honor.

          THE COURT:  Admitted.

          (Exhibit Movant's 2 admitted.)

Q.    (BY MR. ADAMS) Do you recall that one of the interrogatories I asked Mr. Rowes was to give me the source of his information for those requests?

A.     Yes.

Q.     Show you Movant's 3, and are those his responses to that interrogatory?

A.     Yes.

Q.     And with regard to the first admission, he says, I don't have a source?

A.     Yes.

MR. ROWES:  No objection.

MR. ADAMS:  Offer 3.

THE COURT:  I'll admit 3 with no objection.

(Exhibit Movant's 3 offered and admitted.)

Q.     (BY MR. ADAMS) Do you remember when we had the first hearing about the letter that was disseminated around your neighborhood?

A.     Yes.

Q.     Mr. Rowes denied being the author of that letter?

A.     Yes.

Q.     Do you recognize Movant's 4 to be that letter?

A.     Yes.

Q.     And tell the Court to refresh her recollection when that was disseminated around your neighborhood.

A.     It was postmarked September 11th of 2013.

Q.     Okay.

A.     And so --

Q.     And it's the letter that says you and your

husband are --

A.    Sex offenders.

Q.    It also says you're in counseling, doesn't it?

A.    Uh-huh.

MR. ADAMS:  Offer Movant's 4.

(Exhibit Movant's 4 offered.)

THE COURT:  Any objection, Mr. Rowes?

MR. ROWES:  No, Your Honor.

THE COURT:  Admitted.

(Exhibit Movant's 4 admitted.)

Q.    (BY MR. ADAMS) Is there anything else about that letter that makes you believe that Mr. Rowes is the author?

A.    Yes.

Q.    What is that?

A.    Well, there's a few things.  His email to Rothstein Kass from his personal email was -- he got all the stuff off of his computer, I believe, to protect himself, and that was all done on September 10th.  The letter was postmarked September 11th.  There's the wording he used to his sister before he planned to extort me on July 24th where he uses the word sex offender.  He doesn't use that later until that letter was sent out.  It specifically uses the word sex offender.

Q.    Is there other phraseology in there?

A.    I believe there was, but without --

Q.    Did he use the phrase that disseminating this information was the responsible thing to do?

A.    Yes.

Q.    Has he used that phrase in other communications?

A.    (Witness nods head.)  He's obligated.  He's responsible.  That's common.

Q.    Has he communicated hurtful and embarrassing information to parents, officials at your children's school and your church?

A.    Yes.

Q.    In fact, in those emails were your wedding vows, weren't there?

A.    Yeah.  He had saved our wedding vows.  He had saved a newborn session that I had done with our one-and-a-half-year-old, pictures of me and my newborn child.  No pictures of his children, but professional pictures of me and my baby.

MR. ADAMS:  Your Honor, how much do you remember from the prior hearing?  I don't want to be duplicative but --

THE COURT:  I remember it.

MR. ADAMS:  Okay.

Q.    (BY MR. ADAMS) You had had a telephone conversation with Mr. Rowes that predated that letter, didn't you?

A.     Oh, the --

Q.     Where he threatened you?

A.     Yes.  I have a recording of that and a transcription of it.

Q.     You made a transcript from that recording; isn't that correct?

A.     Yes.  Yes, sir.

MR. ADAMS:  May I approach?

THE COURT:  You may.

Q.     (BY MR. ADAMS)  Is Movant's 5 an accurate transcript of that recording?

A.     Yes.

MR. ADAMS:  Offer Movant's 5.

(Exhibit Movant's 5 offered.)

MR. ROWES:  Objection.

THE COURT:  Excuse me?

MR. ROWES:  Objection.  It's not accurate.

THE COURT:  It's not what?

MR. ROWES:  The transcription is not accurate.

THE COURT:  The transcription does not adhere to the recording?

MR. ROWES:  That's correct.

THE COURT:  Do you have the recording?

THE WITNESS:  I have the recording.

MR. ADAMS: Yeah. Hang on just a second.

THE COURT: Do you have any objection to admitting the recording?

MR. ROWES: No, Your Honor.

THE COURT: I'll admit the recording.

(Exhibit Movant's 5 admitted.)

Q. (BY MR. ADAMS) Let me show you Movant's 6 and ask you if you recognize this?

A. Yes.

Q. What is it?

A. It is -- after the letter went out, the businesses, not Joe and I, but the businesses sued him, and he sent me this message, I believe, the next day.

MR. ADAMS: Offer Movant's 6.

(Exhibit Movant's 6 offered.)

THE COURT: Any objection, Mr. Rowes?

MR. ROWES: No, Your Honor.

THE COURT: Admitted.

(Exhibit Movant's 6 admitted.)

Q. (BY MR. ADAMS) And in Movant's 6, he threatens to make your children witnesses in that proceeding; isn't that correct?

A. Yes, as well as other St. Monica parents.

Q. In order to move things along a little quicker, let me show you Movant's 7, and is that a timeline that you

created?

A. Yeah.

Q. If I were to ask you about each and every item on there, would your answers be the same as is what's reflected on Movant's 7?

A. Yeah.

MR. ADAMS: Offer Movant's 7 as a summary of testimony.

(Exhibit Movant's 7 offered.)

MR. ROWES: Objection. This predates the March 2012 previous order.

MR. ADAMS: I think we've pretty much proved up a continuing course of conduct, Your Honor.

THE COURT: I'll overrule that objection. Do you have any other objection, Mr. Rowes?

MR. ROWES: No, Your Honor.

THE COURT: Admitted.

(Exhibit Movant's 7 admitted.)

Q. (BY MR. ADAMS) You're asking this Court, in addition on our other motion, to release the information from the computers and phones that Mr. Rowes turned over to the Court and that has been mirrored by Lance so that we can see what other damage has been done to your life?

A. Uh-huh.

Q. You have to say yes.

A.    Yes.  Sorry.  Yes.

MR. ADAMS:  Your Honor, I received Dr. Albritton's report, and since this was a sealed file, they couldn't file it, so they asked that I file it, which I will do after this hearing, but I brought the Court a copy and marked it as Exhibit 8.

THE COURT:  Any objection, Mr. Rowes?

MR. ROWES:  No, Your Honor.

THE COURT:  Admitted.

(Exhibit Movant's 8 offerd and admitted.)

Q.    (BY MR. ADAMS) Do you remember during our last proceeding, in reviewing the bank statements that he produced, you came across a purchase for a GPS tracking device?

A.    Yes, sir.

Q.    Do you remember what Mr. Rowes' excuse for it was?

MR. ROWES:  Objection, Your Honor.  This is not only irrelevant, but it predates the prior hearing.

THE COURT:  Overruled.

Q.    (BY MR. ADAMS) What was his excuse?

A.    His excuse was that he bought the $400 every-ten-second-location GPS tracker to put on his own car and track his mileage because he was very frugal and he wanted to be able to make the best purchase for a car.

Q.  I know you haven't had an opportunity to review Dr. Albritton's report, but would it surprise you to know he gave a different excuse to Dr. Albritton?

A.  No.

Q.  Were there also attorney-client communications in the email stack that we got Mr. Rowes' employer?

A.  Excuse me?  I'm sorry.  I was distracted. Someone else was in here, and I thought it was sealed. Sorry.

(Unidentified person exits courtroom.)

Q.  (BY MR. ADAMS) Were there communications between you and I that were covered under the attorney-client privilege?

A.  Yes.

Q.  Is that disturbing to you?

A.  Yes.

Q.  Were there emails between you and Mr. Tillotson regarding counseling?

A.  Yeah, and our marriage going back to like 2010, very, very personal emails between my husband and I.

Q.  Do you feel violated?

A.  Yes.

Q.  Has Mr. Rowes engaged in behavior for no other purpose than to harrass and intimidate you?

A.  Yeah.  I think all of this is that.

Q.   Describe his behavior at your child's first communion.

A.   Oh, he -- well, he had tried to stop it all weekend by calling the priest and the church office and all this stuff, and I knew about that.  I was worried he was going to show up.  He showed up.  He -- the church was packed.  He sat on a pew a few aisles over, and through most of it, he texted.  He was all sprawled out, I mean, totally disrespectful, and then when other people were sitting, he would stand with his arms up like this, like posturing.  I mean, so I spent the whole time afraid that he was going to like start shouting or you know --

Q.   Did you end up leaving immediately after the proceedings?

A.   Yes.

Q.   Okay.  Has he also been spotted parked in front of your house?

A.   Yes.

Q.   When it wasn't a day or time for him to pick up the children?

A.   Yes.

Q.   Does that disturb you?

A.   Yes.  He admitted that, too.

Q.   Has he also repeatedly refused your request to stop calling until this Court entered an order?

A.    Uh-huh.  Yes.

Q.    Has he called since the Court entered the order?

A.    The TR -- no.

MR. ADAMS:  Madam Court Reporter, I lost track.  What number am I on?

THE REPORTER:  I think 9.  Yeah, 9.

Q.    (BY MR. ADAMS) Let me show you Movant's 9 and ask you if that's an email that you sent to the parenting facilitator, Carrie Beaird, about his behavior?

A.    Yes.

MR. ADAMS:  Offer Movant's 9.

(Exhibit Movant's 9 offered.)

THE COURT:  Any objection?

MR. ROWES:  No, Your Honor.

THE COURT:  Admitted.

(Exhibit Movant's 9 admitted.)

Q.    (BY MR. ADAMS) Let me show you Movant's 10 and ask if this is an email that you sent to Mr. Rowes regarding his behavior?

A.    Yes.

MR. ADAMS:  Offer Movant's 10.

(Exhibit Movant's 10 offered.)

THE COURT:  Any objections, Mr. Rowes?

MR. ROWES:  No objection.

THE COURT:  Admitted.

(Exhibit Movant's 10 admitted.)

Q. (BY MR. ADAMS) Did you retain me and agree to pay me a reasonable fee for prosecuting this application for protective order?

A. Yes.

Q. Did Mr. Rowes ever claim to have a private investigator?

A. Yes.

Q. And is that where he claims to have gotten the information that now appears came from Joe's emails?

A. Yes.

Q. Who all has he told of his complaints during your marriage?

A. He told the principal at my children's school.

Q. Specifically, he's told him you had an affair?

A. Uh-huh. Yes.

Q. Okay. Who else?

A. I know he's -- from the email, I know that his sister knew probably that he had hacked into her email, but definitely they had discussed the information that was contained in there. He has sent -- I mean, one of the emails in there --

Q. Has he told anybody at church?

A. The Dad's Club president, yeah. ███'s basketball coach. Not about this specific -- the information from the

emails definitely I know went to his sister and our neighborhood.

Q.   Before you and Mr. Rowes divorced, did he acknowledge to you having placed a key logger on yours and someone else's computer?

A.   He tried to put it on mine, but was unable to because it was a Mac.  He put it on my grandfather's personal computer.  That was how I found it.  He put one on my mother's computer at her home.  He was doing computer work for her, and he put a key logger on her computer.

Q.   Did he admit this?

A.   Yes.

Q.   Was there also email transmissions about one of the condominiums next to the Katy Trail Ice House that there was a conflict between the residents and Katy Trail Ice House?

A.   Yes.  He told his sister that was one of the threats he was going to make was to interfere with that lawsuit.

Q.   The only way he would have learned of that is by Joe's emails, correct?

A.   Yes.

Q.   Does it scare you that he knew every time Joe was out of town?

A.   Yes, and that we were out of town.  We took a

two-week trip in the summer, and he knew that our house was empty for two weeks.

Q.    He also had occasion to call your boss?

A.    Yes.

Q.    What information did he share with your boss?

A.    He called my boss four or five times on a Sunday. When she finally talked to him the next week, he tried to disseminate personal information about me, like that I had an affair, and he talked to one of my coworkers.  He also attempted to disseminate personal information about me to her.  My boss, in response, sent me the Workplace Violence Act that Children's has in place, and my boss last week told me that her fear --

MR. ROWES:  Objection, Your Honor, relevance.

THE COURT:  I'll overrule as to relevance. Do you have any other objections?

MR. ROWES:  Hearsay.

THE COURT:  Sustain hearsay.

Q.    (BY MR. ADAMS) Don't tell me what somebody else said.

A.    Okay.

Q.    Did it concern you when he responded to our Rule 194 request for disclosure that he listed every teacher and every parent in St. Monica on there?

A.    Yeah.  I can't really figure out where he got that list.  It was a random mix of parents from both children's grades.  I don't even know all of those parents.  I wouldn't know who their children were.  Some of them, I do.  Some of them, I don't.  It was like he just went through the directory and kind of randomly chose people, and our son was on there as a potential witness also.

Q.    Does that concern you?

A.    Yes.

Q.    Has he been verbally abusive to you?

A.    Yes.

Q.    Tell the Court what types of things he's said to you.

A.    Things such as, I'm sorry for what I'm going to have to do.

Q.    Did he ever tell you what that was?

A.    And then I would say, what are you going to have to do, Bryan?  What are you going to have to do?

MR. ROWES:  Objection, hearsay.

THE COURT:  They're your statements.

MR. ROWES:  I'm sorry?

THE COURT:  They're your statements, Mr. Rowes.  They're not hearsay.

MR. ROWES:  Okay.

A.    Lots of, I'm sorry for what I'm going to have to

do and then not telling me. Over and over, I mean, calling me a whore countless times. One of them is even in an email. He told me -- apologize for my language -- one time that I would spread my legs for any rich dick. I mean, there's so much. He told me that he was going to buy a gun. He had already picked one out. I expressed concern.

At that point, he had been very suicidal. He was living in Wisconsin. I expressed concern that he was going to hurt himself, and he said, it's not to hurt me. I said, who are you going to hurt? He didn't answer. I asked him several more times then, are you going to hurt me, Bryan? No answer. Are you going to hurt me? No answer. It was like three times before he said real sarcastically, no, Katy, I'm not going to hurt you, but --

Q.    Did that place you in fear?

A.    Yes. I was a single parent. I didn't have money for an alarm system, so I went to Home Depot and got those stupid little pool alarms so that if any of my doors opened I would hear it, and I slept downstairs on my couch.

MR. ADAMS:  Pass the witness.

THE COURT:  Mr. Rowes?

CROSS-EXAMINATION

BY MR. ROWES:

Q.    On October 8th, 2013 --

MR. ROWES:  May I approach, Your Honor?

THE COURT: You may.

Q. (BY MR. ROWES) On October 8th, 2013, right after the trial started, I sent a letter to your attorney. Can you, please, read it?

A. It says, Dear --

MR. ADAMS: Objection, reading from a document not in evidence.

THE COURT: Sustained.

MR. ROWES: Motion to enter as evidence.

MR. ADAMS: Has it got a number on it?

MR. ROWES: It has a letter.

THE COURT: What is it, Mr. Rowes?

MR. ROWES: Exhibit A. It's a letter from myself to opposing counsel.

THE COURT: And you're offering that as your first exhibit?

MR. ROWES: Yes, Your Honor.

(Exhibit Respondent's 1 offered.)

THE COURT: Any objection?

MR. ADAMS: No objection.

THE COURT: Admitted.

(Exhibit Respondent's 1 admitted.)

Q. (BY MR. ROWES) Can you, please, read the document, Katy?

A. Can I read it?

Q.    Please.

A.    Dear Fred, you may or may not be aware of the fact that your client and her family have been barraging me and my family with emails, texts, and phone calls to continue in their pattern of false allegations in a variety of ways.  You also may or may not know the reason your client has also been having me followed.  Several times over this past weekend I had to call 911 to limit their intrusion.  I was notified at work last week security at my office had to remove an individual hired by your client for trespassing while taking photographs.  I was also told he was spotted outside taking photographs of me.

In short, my family and I will not stand for this continued harassment.  I would appreciate her and her family to refrain from such communications which seem to be slanderous at minimum and such invasive behavior.  Additionally, I ask that you, please, turn over any material that was obtained illegally, whether while trespassing or otherwise.  I've had to request your client from refraining from such behavior on numerous occasions.  My attorneys have also requested you directly to intervene on at least two occasions on exactly the same sort of matter.  Again, I insist that your client cease and assist from such harassment.

Q.    I never received a response from you or your

attorney.    Did your attorney provide you with a copy of that document?

A.    Yes, because this was also sent to the civil attorney for Katy Trail.

Q.    Since this letter, have you stopped contacting my family with accusations?

A.    I contacted your family when I found that --

Q.    Yes or no, please.

A.    Yes, I did.

Q.    Thank you.

A.    I mean, no, I have not ceased.  Last week, I spoke to your father.

Q.    Okay.  Since this letter, have you been having me followed?

A.    Yes.  One other time.

Q.    To my house?

A.    Yes.

Q.    To my work?

A.    You weren't working.

Q.    There's only one time since that letter on October 8th that you had me followed?

A.    Uh-huh.  Yes.

Q.    Are you aware that you were supposed to stay 500 feet from my house and work?

A.    Yes.

Q. How much money did you spend on these people having me following me around?

MR. ADAMS: Objection, relevance.

THE COURT: What is the relevance, Mr. Rowes?

MR. ROWES: I suppose I can't articulate it, Your Honor.

THE COURT: Then I'll sustain.

Q. (BY MR. ROWES) About two weeks ago, on the weekend of March 28th, you sent numerous messages to my parents and sister, correct?

A. I sent two emails to your sister. I never called her, even though you said she had to change her phone number.

Q. Your father also sent numerous messages to them, correct?

MR. ADAMS: I'm sorry. I didn't hear that.

A. Your father and my father have been speaking back and forth.

Q. (BY MR. ROWES) And you wanted them to come remove me from the state of Texas or you're going to file criminal charges, correct?

A. They wanted to take you to Ohio to let things calm down.

Q. So when you called them, their response was to --

they offered just out of the blue to remove me from Texas?

A. They said they would try to get ahold of you. They weren't able. Your dad finally said that he sent the police over to your house about 1:00 a.m. to check on you, that they were able to talk to you, and that what they wanted to do was take you to Ohio with them, but they wanted me to sign something stating that you were not abandoning the children. I said I was perfectly willing to do that. I drafted something. I sent an email to your dad. I just wanted you out.

Q. So it was your idea?

A. It was their idea to take you to Ohio. I actually had suggested that one of them come stay with you pending this, to make sure that you didn't leave the house in the middle of the night and try to kill me.

Q. Have you ever tried to get me to leave the city or the area?

A. Yes.

Q. Carrie Beaird, our parenting facilitator, has told you not to contact --

MR. ADAMS: Objection, hearsay.

THE COURT: Sustained.

Q. (BY MR. ROWES) True or false, on numerous occasions, you have told me that contacting any members of your family without your permission is harassment?

A.    Yes.  True.

Q.    Do you think there's any difference between me contacting your family and you contacting mine?

A.    I have only contacted your family when I felt I was in physical danger.

Q.    When you sent them communications, did you call me any names?  Did you call me a lunatic?

A.    After you mailed the letter to the neighborhood, I said, your son is a lunatic.

Q.    Have you called me idiot?

A.    Probably.

Q.    Stupid?

A.    I don't remember studid.  I may have said it was a stupid thing to do.

Q.    And you said earlier that you were aware that my sister had to change her contact information to prevent your harassment?

A.    You said that --

MR. ADAMS:  Objection, facts not in evidence.

THE COURT:  I'll sustain that.

THE WITNESS:  Do I answer that?

MR. ADAMS:  No.

MR. ROWES:  May I approach, Your Honor?

THE COURT:  You may.

MR. ROWES: Motion to enter into evidence Exhibit 2. Sorry.

(Exhibit Respondent's 2 offered.)

THE COURT: You want to show it to Mr. Adams first? Ma'am?

THE COURT: Any objections, Mr. Adams?

MR. ADAMS: Yeah. It's hearsay.

THE COURT: It's a letter, or what is it?

MR. ROWES: It's a letter --

MR. ADAMS: Written by Keith Nelson, directed to -- I think it's directed to me.

MR. ROWES: It's directed to you. It was from my attorney.

THE COURT: I'll sustain as to hearsay.

MR. ROWES: May I approach again?

MR. ADAMS: No objection.

MR. ROWES: Request to enter Exhibit 2.

THE COURT: You don't have any objection, Mr. Adams?

MR. ADAMS: No, ma'am.

THE COURT: I'll admit it.

(Exhibit Respondent's 2 offered and admitted.)

Q. (BY MR. ROWES) Could you, please -- this is a text message on August 29th. The message says that you

allege that I'm having you followed, and because of that, you should get a restraining order against me; isn't that correct?

A. Yes.

Q. Okay. Do you think that if you're having me followed that I should get a restraining order against you?

A. Again, the difference was, the only reason I had you followed was following two periods in which I believed you would be highly escalated, and so I used a combination of personal off-duty law enforcements at my home, but because two of our daughters don't live with us all the time, I wanted to know where you were so that they couldn't go to their mother's house, and you have their mother's address and all of her personal information because you got it from my husband's email. My only motive has been protecting my family and myself. I don't care what you do other than not hurt me.

Q. You allege that you have some documents that you allege came from my old work computer, correct?

A. Yes.

Q. They were put on a CD; is that correct? I believe that's --

A. You'd have to ask Fred. I don't know.

Q. And these documents contain email messages taken from your email account, and you said and/or Joe's?

A.    Well, we realized after -- it took a long time to go through the 500 pages or so.  What we realized is that it's all from my husband's.  His email is hosted on a law firm's network, virtual private network, and so it's all from Joe's email, but I frequently -- we cc'ed each other in legal communications and everything else.

Q.    Have you had any sort of forensic expert analyze your computers?

MR. ADAMS:  Objection.  Calls for work product.

THE COURT:  Sustained.

Q.    (BY MR. ROWES) Do you have any belief that -- do you have any evidence that I accessed your electronic media, computers, phones?

A.    Interestingly, I do.

Q.    What's that?

A.    Well, one of the emails that you had downloaded included our iCloud information, and when I tried to log in today, all of the security questions had been changed.  The email had been changed, so I can't get into our iCloud account, and Fred had asked me to print out a copy from my email of something he wanted to use today, and amazingly enough, that copy is deleted from my email account.

Q.    But do you have any evidence that I accessed your electronic media?  What you've stated is that --

A.     I don't have evidence.

Q.     Because you've stated that these things --

A.     Although we will.  Sorry.

Q.     Have any of your accounts been accessed by an IP address asociated with me?

A.     The FBI will figure that out when they look into it.

Q.     But we don't --

A.     Not as of now, no.

Q.     Okay.  Other than the docs that allegedly contain email messages, do you have any other evidence that I accessed your email accounts?

A.     You know a lot of information that you shouldn't know.

Q.     So, I mean, what you're claiming, though, is that I've seen these documents.  You're not stating --

A.     I saw emails back and forth.  That you've accessed my account?

Q.     Or Joe's, that I've done that?

A.     Yeah.  I mean --

Q.     I believe --

       MR. ADAMS:  Right here.

Q.     (BY MR. ROWES) So you have evidence that I possessed -- allegedly possessed the emails, but you don't have any evidence that I obtained this information over a

period of time?

A.    That doesn't make sense to me. I'm sorry. I don't understand the question.

Q.    So what I'm saying is, the evidence you're providing is that I, at some point, possessed these, I owned them, but you don't have any evidence that I went into your email account and got them?

A.    You went into Joe's email account and got them.

Q:    Or Joe's email. Excuse me.

A.    Yeah. It's right there.

Q.    So -- okay.

A.    Yeah.

Q.    I think I made my point. You've stated these document's contain attorney-client privilege, confidential business information, personal health care info, and travel info. Do the documents contain anything relevant to this case?

MR. ADAMS:  Do they contain what?

MR. ROWES:  Anything relevant to the case.

A.    Yes. I mean, I had -- after the phone call with you where we had the recording, I sent an email to Fred. I cc'ed Joe telling him exactly what had happened, that Bryan had made this phone call, I detailed it.

Q.    (BY MR. ROWES) Anything outside of work product?

A.    I don't know what you mean by that.

Q. Anything other than communications between you and your attorney?

A. I'm --

MR. ADAMS: I'm not following it either.

THE WITNESS: I don't understand what he's asking.

Q. (BY MR. ROWES) Okay. That's fine. Is there anything in those documents related to ██ and ██████?

A. Disturbingly, no. It's all about me.

Q. Yes or no, have you --

A. Well, there's travel information, I guess, yeah.

Q. Yes or no, have you ever accessed my mom's email account without her knowledge or permission?

MR. ADAMS: Objection, outside the scope of the pleadings and relevance.

THE COURT: I will sustain that.

Q. (BY MR. ROWES) How did I find out that you were having an affair?

MR. ADAMS: Objection, relevance.

THE COURT: An affair?

MR. ROWES: Yes, Your Honor.

THE COURT: We're here on a protective order, Mr. Rowes. What does that have to do with a protective order?

MR. ROWES: The way I found out was by

reading her email, and so we're talking about the alleged access of email.

THE COURT: Reading her email from where? Where did you get access to her email?

MR. ROWES: When we were married, we had a computer.

THE COURT: What does that have to do with today's protective order?

MR. ROWES: I suppose I don't know how to articulate that. I apologize.

THE COURT: I'll sustain then.

MR. ROWES: Move to enter Exhibit 3.

(Exhibit Respondent's 3 offered.)

MR. ADAMS: It's already in evidence. Wait. Dr. Albritton's report?

THE COURT: Yes, I have it.

MR. ROWES: Okay. May I approach so the witness can have a look at it?

Q. (MR. ROWES) Can you turn to Page 13, please?

MR. ADAMS: Hang on a second.

Q. (BY MR. ROWES) I underlined a sentence in there. Can you read it out loud, please?

A. Nevertheless, there's not a history of substance abuse, psychotic thoughts, or physical aggression, which would be most readily harmful to the Rowes children.

Q.     So no evidence of or history of physical abuse or even just aggression, correct?  Is that what that says?

A.     It says physical aggression; however, after I had this interview with him, I have been working with --

MR. ROWES:  Objection.

THE COURT:  Sustained.

Q.     (BY MR. ROWES) You've made -- you've talked a lot about the travel documents.  Is there any -- do you have any proof that I accessed these travel documents or allegedly accessed these documents prior to any of your travels?

A.     Yeah.  Well, it was -- you emailed it to yourself on September 10th.  Our last flight itinerary was from like, I think it was September 6th, and you had pasted it in a Word document with my Southwest Airlines number, times of travel.

Q.     So the flight was on the 6th or the 10th?

A.     It was on the 6th, but you emailed that document to yourself on the 10th, so I don't know about anything else.

Q.     So at the best, the only thing you know is that I allegedly had this document on the 10th, a few days after your travel, correct?

A.     Well, you created the document probably long before that, but I know you emailed it.

Q.     But you don't have any evidence or proof of that,

correct?

A.   I don't know when you read any of that stuff, Bryan.

Q.   So it would be hard to stalk you if I obtained this travel information after you had traveled, correct?

A.   I don't know when you got it.  That's all I can say.

Q.   And you also don't have any proof that I have that?

A.   I'm sure Lance will be able to figure it out.

Q.   Have I shown up at any of your locations unexpectedly, any of these travel times?

A.   No.

Q.   You've said -- you said earlier that I have been calling you really bad names.  Do you have any evidence I've said anything bad or called you anything bad since March 2012?

A.   You call me bad things all the time.  You tell me I'm a terrible parent.

Q.   Yes or no, since --

A.   Yes.  Okay.  I do.

Q.   Do you have any evidence of that?

A.   Yes.  The day after the initial TRO was put into effect, on October 3rd, you sent me an Our Family Wizard message that basically stated that I was violating our court

order by getting a TRO and that it just showed my continued inabiliity to act in the best interest of our children, which is something you say a lot.

Q. It's a little different than these vulgar names you were saying before, though. I think there's a significant difference there. Would you disagree?

A. No. I agree that there's different levels of threats.

Q. Okay. And so, do you have any other of these threats or claims since March 2012? Do you have any evidence at all to show since March 2012?

A. March 2012 or '13?

Q. 2012. That was when the prior order was entered.

A. I have thousands of pages, so I can go through that and figure it out, but off the top of my head, I don't know.

Q. Okay. And nothing's been produced since March 2012?

A. We had so much information that to be able to get it in here, we couldn't bring everything. I'll be happy to look.

MR. ROWES: Your Honor, this is the affidavit. May I approach?

THE COURT: Which affidavit?

MR. ROWES: The affidavit submitted with the

current motion.

MR. ADAMS: He can question her from the counsel table about the affidavit. I'll give her a copy of it. Do you have a spare copy?

Q. (BY MR. ROWES) The only thing relevant in your affidavit that occurred since March 2012 or possibly since March of 2012, the first one would be Number 5. You state through the following year, all -- I called up to 30 times a day, threatened to take the kids, called extended family, called five members between 12:00 and 4:00 a.m., threatened to call your grandfather in the middle of the night, called police multiple times.

Katy, do you remember in the previous hearing where you said I hardly ever call you, maybe once every other month?

A. That's now. This is divorce and through the following years. That would be 2009 and 2010.

Q. But you said through the following year?

A. Right. The divorce was in 2009.

Q. Through the following year after the divorce?

A. Right.

Q. Okay. So that one isn't relevant either because it occurred before March 2012. Number 11, you didn't state when that happened. That incident actually happened in 2011, didn't it?

A.     Yes.

Q.     Okay.  Number 12, on November 19th, 2012, you wrote that I called -- I'm sorry.  I'm on the wrong line.

Number 13, since March 2012, is there any evidence of me calling you degrading names, behaviors when married, or any degrading names?  I guess it would be duplicative.  We've already had that discussion.

In addition, on Line 13, do you think it's incongruous of you to object for my references -- for you to object to me referencing your actions prior to March 2012, when that very document you're holding is rife with them?

MR. ADAMS:  Objection.  That's not relevant.  It's just her opinion.

THE COURT:  I'll allow it.

A.     You mean that I -- that I'm saying you continue to focus on the time we were married?

Q.     (BY MR. ROWES) Or anytime before March of 2012.

A.     I believe that's relevant because I believe you've been stalking me for years, and so it shows a pattern of behavior.

Q.     Number 14, I think the judge can determine that.

Number 15, you are required to provide reasonable telephone access to the kids; is that correct?

A.     Yes, and I have given you a way to do that, but you don't want to do it because you want to call my phone.

Q.    Katy, Judge Olvera instructed us to attend a co-parenting class.  Did you do that?

A.    Do you mean in the -- in like 2010, in the temporary orders?

MR. ADAMS:  How is that relevant?

MR. ROWES:  I'm discussing things in her affidavit that she submitted with this motion.

THE WITNESS:  That was not in my affidavit.

THE COURT:  Is that in the affidavit?  Because I don't remember reading that in the affidavit.

MR. ROWES:  It was not in the affidavit, but one of the aspects they covered in the class addresses this issue.

THE COURT:  I don't think it's relevant for today's hearing.

MR. ROWES:  Okay.

Q.    (BY MR. ROWES) So, basically, you don't allow me to call the children?  You screen the calls?

A.    I asked that you call through my husband's phone because I don't want you calling my phone.

Q.    But you actually require me to text first, don't you?

A.    Yes.  I don't want you just calling all the time.  I want you to text, y'all arrange a time, and then figure it out.

Q.   So you do screen my calls?

A.   What does that mean?  I arrange.  Screen, arrange.  I mean, I wouldn't call that screening.  I would say, I don't want you calling our house all the time or my phone, you know.

Q.   And then recalling what we said before, how often have I called?  You said like once every other month?  Is that right?

A.   Well, now.  Although --

Q.   Since March 2012?

A.   After the TRO, you were calling my phone.

Q.   But how often did I call?  Do you have any evidence of this?

A.   A couple of times, but I told you not to.  I told you to go through Joe, just send him a text.  We have been very accommodating in that way.

Q.   Since March 2012, do you have any evidence that shows that I have been to your house other than the times you instructed me to?

A.   Yeah.  I don't think I have it here, but I know there was a time when I told you not to come to my house and you pulled up anyway.

Q.   Since March 2012?

A.   Yeah.  I'm trying to think when the police were called.  The last time the police were called, I can't

remember the exact date, but that was definitely since March of 2012.

Q.    Have you ever -- have there ever been times when you wouldn't allow the kids to come with me unless I came to your house?

A.    Yes, for times outside of visitation.

MR. ROWES:  Objection.

Q.    (BY MR. ROWES) Are you aware that your attorney has filed -- we're on Number 16.  Sorry.  Are you aware that your attorney has filed more motions than I have?

A.    I have no idea.

Q.    Did you -- are you aware that he filed a motion to garnish my wages?

A.    Yes.

Q.    Do you think that is more financially influential than any of the motions that I've filed?

A.    Yeah.  He's trying to get my child support paid and the children's medical bills paid.

Q.    Number 17, do you have any evidence that I've said anything negative to any other parent of our children's schoolmates?

A.    Yeah.  I think you and Amy had a long conversation that sent you through the roof.

Q.    Joe's ex-wife?

A.    Yes.

Q. Anybody else?

A. Well, you testified at the last hearing that you had been talking to other parents about me drinking at some Girl Scout event.

Q. Did I testify that I was telling them that or that they were telling me that?

A. I don't know. Y'all were talking about it.

Q. Have you said anything about me?

A. Oh, actually, you know what? You just sent an email very recently to the president of the Dad's Club saying that you weren't going to be able to attend that meeting and that, as an aside, you should know that Joe Tillotson has barred you from going into any of his places, that's it's hard for you to go, even though he's only hosted one event there in two years and you've never gone to any Dad's Club meeting anyway.

Q. Do you have any evidence that -- Number 17. Do you have any evidence that I said anything -- sorry. We just went through that one.

Number 25, do you recall that Carrie Beaird has instructed you not to diagnose me?

MR. ADAMS: Objection, calls for hearsay.

THE COURT: Sustained.

Q. (BY MR. ROWES) Other than this information getting changed in one of these accounts that cannot -- you

don't have any evidence that I was involved at all, have you -- and you say that I have passwords to all of your accounts, is there any evidence that I accessed any of these?

A.    Well, yeah.  I couldn't log on to my iCloud account today.  You know information you shouldn't know, one of which you've mentioned during this hearing that I'll talke to Fred about later, and one of my pieces of evidence that I tried to print for Fred today was mysteriously deleted from my email account.

Q.    But you don't have any evidence that I did these things?

A.    No.

Q.    Or you don't even have evidence that it happened; is that correct?

A.    I do have evidence that it happened.

Q.    But you just haven't admitted it?

A.    I can't log on to certain of my email accounts that you had access to.

Q.    Admitted into court?

A.    No.

Q.    And you said on this CD, there's all sorts of folders.  How many documents are on this CD?

A.    A mean, these are them.  I don't know.  I didn't count.

Q.   Hundreds of documents?

A.   Yeah.

MR. ROWES:  Okay.  That's all, Your Honor.

THE COURT:  Anything else, Mr. Adams?

MR. ADAMS:  No, ma'am.

THE COURT:  You may step down, ma'am.

Any other witnesses?

MR. ADAMS:  I have two other.

THE COURT:  Call your next witness.

MR. ADAMS:  Call Bryan Rowes.

MR. ROWES:  I'm going to take the Fifth, Your Honor.

THE COURT:  You still need to take the stand, sir.  You do have a right, Mr. Rowes, to take the Fifth Amendment on any question that might expose you to criminal prosecution.  I advise you of that right.

MR. ROWES:  Thank you.

THE COURT:  Please continue.

BRYAN ROWES,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. ADAMS:

Q.   State your name for the record.

A.   Bryan Rowes.

Q.   Now, you have repeatedly claimed that you did not

get notice of my deposition on written questions to your former employer; is that correct?

A. Correct.

Q. Isn't it also correct that Sharon at Document Acquisition Services called you to tell you that that notice had been returned to her?

A. No. That is not correct.

Q. You never spoke to her?

A. That is not correct either.

Q. What did you -- what was the substance of your conversation with her?

A. I was -- I received a letter after the fact, and I called to inquire as to why I had not been notified.

Q. And you did purchase a GPS tracking device, didn't you, sir?

A. No, I did not.

Q. You rented it. Excuse me. You're right. You rented it, didn't you?

A. Yes, I did.

Q. And what was your reasoning for doing that?

A. I was about to lease a car, and so I had just moved, wanted to get an idea of the mileage I would need on a lease.

Q. Odometer wouldn't work for that purpose?

A. I mean, I thought it was a better -- I'd get a

better idea of my needs if I rented this little thing.

Q.    Did you end up leasing a car?

A.    I did.  Well, technically, my parents leased it. Katy ruined my credit, so I couldn't lease a car.

MR. ADAMS:  Objection, nonresponsive.

THE COURT:  Sustained.

MR. ADAMS:  Court's indulgence for just a minute.  May I approach the witness?

THE COURT:  You may.

Q.    (BY MR. ADAMS) Do you recognize Movant's 13 as an email you sent to your sister?

A.    Take the Fifth.

Q.    You can't take the Fifth on that.

THE COURT:  Unless that exposes you to criminal prosecution, sir, you have to answer that question.

THE WITNESS:  I think it might expose me, Your Honor.

THE COURT:  What is it, Mr. Adams?

MR. ADAMS:  It's where he lays out his plan for the prosecution of this modification suit.  I don't see anything that leads --

THE COURT:  You need to answer that question, Mr. Rowes.

A.    Yes, I do.

MR. ADAMS:  Offer Movant's 13.

(Exhibit Movant's 13 offered.)

THE COURT: Any objections, Mr. Rowes?

MR. ROWES: No.

THE COURT: Admitted.

(Exhibit Movant's 13 admitted.)

Q. (BY MR. ADAMS) So it's just happenstance that when you're communicating with your sister, you refer to my client or my client's husband as a sex offender?

A. Take the Fifth.

THE COURT: That does not expose to you criminal prosecution, Mr. Rowes.

A. Okay. Can you ask the question again, please?

Q. (BY MR. ADAMS) It's just happenstance that you refer to them as sex offenders in that email that is shortly before the letter gets disseminated in my client's neighborhood?

A. It's just happenstance? Is that what you said?

Q. Yes.

A. I mean, possibly. I don't know how to answer that question.

Q. Now, you had Ms. Tillotson read from Dr. Albritton's report?

A. Yes.

Q. Did you read the conclusion?

A. Yes.

Q. That you ought to have supervised possession of your kids because of your personality problems for the next year and a half while you undergo intensive psychotherapy?

A. I did read that, yes.

Q. You, of course, don't think there's anything wrong with you?

A. Correct.

Q. Did you gain access to Joe Tillotson's email account?

A. Take the Fifth.

Q. Are you refusing to answer that question on the basis that it may tend to incriminate you?

A. Take the Fifth.

Q. That's what I'm asking.

A. Oh, I think that's what the Fifth means, yes.

MR. ADAMS: May I approach the witness?

THE COURT: You may.

Q. (BY MR. ADAMS) Do you recognize Movant's Exhibit 14?

A. No.

Q. Isn't Movant's Exhibit 14 where you've emailed tillotson.docx to yourself at another address?

A. I just said I don't recognize it.

Q. You don't recognize your own emails?

A. Is that a question?

Q.   Yes, sir.

A.   I don't know how to answer that question.

Q.   Okay.  You were -- let's move on to another subject.  You were ordered by this Court to deliver all memory devices, hard drives, computers, and cell phones to the Court.  Do you recall that?

A.   Yes.

Q.   You did not turn in your current cell phone; isn't that correct?

A.   Yeah.  That's correct.

Q.   Why not?

A.   When I was packing everything in the box, I had just forgotten it.  When I got your email, I went to Lance and delivered it to him.

Q.   Now, I sent you an email asking for the password to the recorder and the -- I sent you an email -- how come there's not a date on this thing -- on April 2nd; isn't that correct?

A.   I do not recall.

Q.   And you didn't turn that or give the password until, what, Wednesday of this week?

A.   I tried to get it to him before that.

Q.   You actually took it directly to Lance, didn't you?

A.   Well, actually, the first time, no.  You had the

incorrect address on the motion, and so I brought it to an apartment building, and then, yes, I brought it to Lance and gave him the password and everything.

Q. Have you accessed my legal assistant's email?

A. No. What do you mean? Her like email account?

Q. Yes.

A. No.

Q. So it's just, again, happenstance that an hour after I send a letter to Lance telling him that I will address those issues with the Court, you pick it up and get the phone and the password to him?

A. I suppose that is happenstance then, yes.

Q. Have you accessed any of my email accounts?

A. I'll take the Fifth.

Q. You're taking the Fifth on whether you've accessed my email accounts?

A. I think so, yes.

Q. All right, Mr. Rowes. What's your home address?

A. ███████.

Q. What's the ZIP there?

A. █████.

Q. Are you going to take the Fifth amendment to any question I ask you regarding accessing either my or my client's emails or her husband's emails?

A. I think so, yes.

Q.   No.  I want a yes or a no.

A.   Okay.  Yes then, because I've already done it.

Q.   Are you presently working?

A.   No.

Q.   Why were you fired from your last employer?

A.   I was told that the legal expenses relating to this case did not warrant my employment.

Q.   Did they discuss with you the reams of Mr. Tillotson's emails that were on the company's server?

A.   Nope.

Q.   What's your date of birth?

A.   ▓▓▓▓▓

Q.   What color are your eyes?

A.   Brown.

Q.   Hair, black?

A.   Yeah, black, dark brown.

Q.   How tall are you?

A.   5'8".

Q.   How much do you weigh?

A.   150.

Q.   Do you have any tattoos or scars?

A.   I have a little scar above my left eyebrow.

Q.   What's your Social Security number?

A.   ▓▓▓▓▓▓.

Q.   And your Texas driver's license number?

A. ███████

Q. I'm sorry. ███

A. ███

MR. ADAMS: Pass the witness.

THE COURT: Mr. Rowes, you can make a statement and testify, if you like; however, I am cautioning you, Mr. Rowes, depending on what you say, it may open the door to Mr. Adams questioning you about information that may be protected under the Fifth Amendment right. Do you understand this?

MR. ROWES: Yes, I do.

THE COURT: Do you have anything to say?

MR. ROWES: The only thing I have to say is that the report that was produced by the forensic psychologist stated that there has been no history of physical aggression at all. We're here on a family violence --

MR. ADAMS: Objection. No, we aren't. I'm here under a protective order. Under the Code of Criminal Procedure, stalking doesn't require family violence.

THE COURT: He is correct, Mr. Rowes.

MR. ROWES: Okay. The stalking statute also states that the --

MR. ADAMS: Objection, Your Honor. This is argument, not testimony.

THE COURT: I'll sustain that. This is a time for testimony, sir.

MR. ROWES: Okay. Then I would testify -- I guess that's it. I'm done.

THE COURT: You have nothing else to add?

MR. ROWES: I don't believe so, no.

THE COURT: Anything else, Mr. Adams, of this witness?

MR. ADAMS: No, ma'am.

THE COURT: You may step down, Mr. Rowes. Any other witnesses?

MR. ADAMS: May I testify from the counsel table?

THE COURT: You may.

DIRECT EXAMINATION

MR. ADAMS: My name is Frederick S. Adams, Jr. I'm licensed to practice law by the Supreme Court of the State of Texas and have been so licensed since October of 1981. I'm board certified in family law. I've practiced in and around Dallas County, Texas for 32 years and am familiar with the reasonable and customary fees for attorneys with my experience on matters such as this application for protective order.

I'm also a member of the American Academy of Matrimonial Lawyers, the Texas Academy of Family Law

Specialits, and the International Academy of Matrimonial Lawyers. I've authored in excess of 20 continuing legal education articles, and it is my testimony that my hourly rate is $450, and that's reasonable for an attorney of my experience.

I would further testify that the actual preparation of the application for protective order didn't take but probably an hour, but we've made several appearances, and preparing for today's hearing, I have expended eight hours in preparation going through the documents and time today, including preparing my client, three. So it's my testimony that I have expended 15 hours in the prosecution of this protective order, and none of that time relates to the defense of any of Mr. Rowes' motions.

It's further my testimony that all of the actions I took were necessary for the protection of my client and that such a fee is reasonable and customary in Dallas County, Texas. Pass myself.

THE COURT: Do you have any questions of him, Mr. Rowes?

MR. ROWES: Yes, Your Honor.

CROSS-EXAMINATION

BY MR. ROWES:

Q. You state in your affidavit that you called up

the opposing attorney, the general counsel at my office, or my former office, and asked them about some documents in a civil case; is that correct?

A.    No.  Actually, what happened is I called -- when I got the deposition on written questions back explaining that there were no documents responsive to my request, I sent him a letter saying I knew that he had produced documents that were for in camera inspection in the civil case and that I was wondering about why they responded in the manner in which they did, and his response was that somebody in HR had decided to fill out that deposition on written questions instead of sending it to legal, and it was a mistake, and he asked if you had filed any objections to it.  I told him you hadn't.  He said he'd send me the documents, which he did.

Q.    You were in the courtroom in that civil case on the first day, is that correct, first hearing?

A.    I know I was in there one day.  I don't know whether it was the first day.

Q.    Do you recall that the court records were sealed in that?

A.    No, but you've told me that.

Q.    Okay.  If the court records were sealed, how did you get that information?

A.    I just told you.  I got it from the general

counsel.

Q.    You said you called the general counsel and told him that there were documents produced for an in camera review.  How did you know that?

A.    I believe I was told by the attorney in the civil matter.

Q.    And you had no ethical issues trying to acquire documents that were produced in camera for another case?

A.    I made a legitimate request for them in this case.  This case is seperate and apart.  That case has nothing to do with this case, so, no, I had no ethical qualms whatsoever.

Q.    You also state that this civil case was an ancillary case.  Do you know what ancillary means?

A.    Yes, I know what ancillary means.

Q.    So it was a case to support this case?

A.    No.  My client in this case is Katy Tillotson.  The plaintiffs in the other case are separate business entities, but there are facts in both of them regarding your behavior that I believe have some level of commonality to them.

Q.    Since you knew that the documents in that civil case were sealed, why didn't you ask me as we were leaving one day about documents produced for in camera review?

A.    Well, first off, just because something is

sitting before the Court for in camera review is different, separate, and apart from the file being sealed, and I believe you're the one that brought up the discussion after I mentioned to the Court that I had obtained these records from general counsel, you brought up, how did you get them? But it wasn't I that brought up that subject of conversation.

Q.    Are you aware that the state of Texas requires you to make a specific request when analyzing computers?

A.    I am aware there's more than one way to accomplish that.

Q.    But you want to know if there's any -- in your motion, you state that you are looking for any illegal activity?

A.    I don't remember what the motion says.

Q.    Okay.

A.    I know we routinely mirror hard drives and phones in divorce cases because it's relevant evidence, because there can be evidence related to what's in the best interest of the children.  There can be evidence of all sorts of things that, per se, may not be illegal, but would be relevant for the Court to decide what is best for the children.

Q.    Should we just have all parties' computers and electronic media mirrored then?

A.    Why?  You seem to have great access to my clients without having it done.

MR. ROWES:  Objection.

THE COURT:  Sustained.

Q.    (BY MR. ROWES) You are opposed to me looking at your client's electronic media; is that correct?

A.    No such request has been made.  I'll deal with it when it's made.

MR. ROWES:  Okay.  That's all, Your Honor.

THE COURT:  Anything else?

MR. ADAMS:  No, ma'am.  We rest.

THE COURT:  Okay.  Do you have any witnesses, Mr. Rowes?

MR. ROWES:  No, Your Honor.

THE COURT:  You rest as well?

MR. ROWES:  Yes.

THE COURT:  Mr. Rowes?

MR. ROWES:  Yes, Your Honor?

THE COURT:  I'm going to ask you, did you deliver all of your computers, hard drives, electronic devices to the Court according to the order that was signed before?

MR. ROWES:  Yes, Your Honor.

THE COURT:  Including your phone and your laptop that you're using right now?

MR. ROWES: I mean, you have my laptop.

THE COURT: You haven't come to pick it up?

MR. ROWES: I have not. That's correct.

THE COURT: And those are the only laptops you have?

MR. ROWES: That's correct.

THE COURT: Is there a reason why you delivered to the Court just pieces of computers?

. MR. ROWES: I tried to bring you everything that I had. I knew that -- I mean, it was in a box. I just didn't really know -- I mean, if it was like a whole computer, I would have brought that, but it was disassembled. I didn't want to not bring something, if that makes sense.

THE COURT: I'm going to authorize your expert, Mr. Adams, to go ahead and analyze the information. I want the documents delivered to the Court for in camera inspection, whatever is found there.

MR. ADAMS: Okay.

THE COURT: And if there's anything that is protected by Mr. Rowes, either work product, as he had said before --

MR. ADAMS: Health related under HIPAA, I understand.

THE COURT: And we're going to take that

out. I will even consider, at that time, his argument as to self-incrimination. However, Mr. Rowes, from what I've heard today, I am making a finding that there is probable cause -- that probable cause exists to believe that you have committed an offense under Penal Code Section 42.072, being that you have engaged in conduct in the commission of the offense indicates that defendant is likely to engage in the future in conduct prohibited by Section 42.072 A 1, 2, or 3 of the Penal Code, which does say you have committed some acts, Mr. Rowes, that reasonably puts Ms. Tillotson in fear of bodily injury, that you have committed actions that would constitute stalking of Ms. Tillotson, and I am granting the protective order for a period of two years from today, until April the 11th, 2016.

I am also ordering you, Mr. Rowes, to pay in attorney's fees the amount of $5,000 for what she has spent in prosecuting this protection or this order. You are to pay that in monthly payments of $250 per month beginning May the 1st and continuing on the first day of each month thereafter until it is paid in full. I am granting Mr. Adams a judgment in that amount, with interest, at 5 percent per annual.

Do you have an order Mr. Adams?

MR. ADAMS: I do, Your Honor. My order doesn't provide for the payout of the attorney's fees. It

says pay on a date certain. You can adjust it, and I will prepare an order relative to the computer data. I didn't know for sure exactly what you were going to do. I did not prepare an order for that. I'll tender it to Mr. Rowes.

THE COURT: Why don't you make these changes, Mr. Adams, back at your office and send it to me? Because on the first page, it does say that he has committed family violence. Change that to the language --

MR. ADAMS: I did. I don't know how my -- I went through and corrected it all. She must have sent the wrong copy.

THE COURT: Okay.

MR. ADAMS: Is the ex parte -- what day did we sign the ex parte?

THE COURT: It's good through today, the end of business today. It's 3:00 o'clock. Or if you want to do this, Mr. Adams, you'll have some time and won't be rushed, get me an order to extend the ex parte. I will extend it for a week so you can get me the order.

MR. ADAMS: Very good, Your Honor. I'll have one faxed to the law library. May I step outside?

THE COURT: You may. We're off the record.

(Short break taken.)

MR. ADAMS: I would like, with the Court's indulgence, a specific finding in the order that he violated

the ex parte protective order. The undisputed evidence clearly indicates that he did.

THE COURT: Violated it on what specific day?

MR. ADAMS: Today when he entered that elevator and walked up and stood up next to my client.

MR. ROWES: May I say something in my defense, Your Honor?

THE COURT: I'm going to caution you, what you might say, again, Mr. Rowes, you have an absolute right to take the Fifth whenever it has something to do with a violation of a protective order or the other offenses that they are alleging that you committed, you may open the door to further questioning. Do you understand that?

MR. ROWES: Yes, Your Honor.

THE COURT: Go ahead.

MR. ROWES: Your Honor, I came into the courthouse, went around the wall that's there. Katy was there. The door -- I mean, we just kind of looked up at each other. She said, I'm going down. I said, I am, too, just in response. And she backed up, so I just got in and went down. I did not know that she was in the cafeteria. I was just going, as I tried to give you before, the document request.

THE COURT: I will take that request under

advisement. I'll sign the order to extend it out a week and take it under advisement. I'll let you know by Monday.

MR. ADAMS: Okay.

THE COURT: You just want to go get one of the forms they have down in the law library?

MR. ADAMS: I'm having one faxed to the law library and I'll bring it to you.

THE COURT: Do you want to excuse your client so that one of the sheriffs can walk her out maybe?

MR. ADAMS: I would like the Court to explain on the record to Mr. Rowes what a violation of a protective order will garner him.

THE COURT: Violation of a protective order, Mr. Rowes, is going to land you in jail. Do you understand that?

MR. ROWES: Yes, Your Honor.

THE COURT: It is a criminal offense.

MR. ROWES: Yes, Your Honor.

THE COURT: I didn't do criminal law, so I don't know what exactly it's classified as. I believe it's a misdemeanor, Class A or B, but I'm not very sure.

MR. ADAMS: I didn't practice criminal law, but I think it's an A.

THE COURT: A. It possibly carries some jail time. I think it's a year or less, and a fine as well.

Do you understand that?

MR. ROWES:  Yes, Your Honor.

THE COURT:  Aside from that, I will tell you one thing that I know is if you violate the protective order, that could give the Court a reason to extend out the protective order for even a longer period of time.

MR. ROWES:  I'm aware.

THE COURT:  Anything else, Mr. Adams?

MR. ADAMS:  No, ma'am.

THE COURT:  Okay.  We're adjourned.

(End of Proceedings.)

STATE OF TEXAS          )

COUNTY OF DALLAS    )

This is to certify that I, Melissa A. English, CSR, RPR, in and for the State of Texas, reported in shorthand the proceedings had at the time and place set forth in the caption hereof, and that to the best of my ability, the above and foregoing contains a full, true, and correct transcript of the said proceedings.

Certified to on this __24th__ day of __April__, 2014.

*Melissa English*

_____

MELISSA A. ENGLISH, Texas CSR 8127/Firm No. 216

Certification Expires 12/31/14

1205 Main Street

Garland, Texas   75040

(972) 494-2000 (tel)

(972) 494-2269 (fax)



NO. 09-18237

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ▬▬▬▬▬▬▬ | § | 256TH JUDICIAL DISTRICT |
| AND | § | |
| ▬▬▬▬▬▬▬ | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

## PROTECTIVE ORDER

On **APRIL 11**, 2014, the Court heard the Application of *MARY TILLOTSON* for a Protective Order.

### Appearances

Applicant, *MARY TILLOTSON*, appeared in person and through attorney of record, **FREDERICK S. ADAMS, JR.**, and announced ready.

Respondent, *BRYAN ROWES*, appeared in person and announced ready.

### Jurisdiction

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

### Findings

The Court finds that *BRYAN ROWES* has engaged in conduct violative of Texas Penal Code Section 42.072. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and are necessary for the protection of Applicant.

### "Protected Person"

In this order, "Protected Person" means Applicant

## Orders

IT IS ORDERED that Respondent, **BRYAN ROWES**, is:

Prohibited from committing family violence, as defined by section 71.004 of the Texas Family Code.

Prohibited from communicating directly with **MARY TILLOTSON** in a threatening or harassing manner.

Prohibited from communicating a threat through any person to **MARY TILLOTSON**

On a finding of good cause, prohibited from communicating in any manner with **MARY TILLOTSON** except through Respondent's attorney or a person appointed by the Court, except Our Family Wizard related to the children.

Prohibited from going to or near, or within 500 feet of, any location where **MARY TILLOTSON** is known by Respondent, **BRYAN ROWES** to be and from remaining within 500 feet after Respondent, **BRYAN ROWES** becomes aware of **MARY TILLOTSON** presence.

Prohibited from going to or near **MARY TILLOTSON**'s employment addresses or where **MARY TILLOTSON** normally resides at ███████████████

Prohibited from possessing a firearm or ammunition unless Respondent, **BRYAN ROWES** is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Respondent's license to carry a concealed handgun issued under subchapter H, chapter 411, of the Texas Government Code is suspended.

## Attorney's Fees

The Court finds that **BRYAN ROWES** should be assessed *Five Thousand Dollars and No Cents* ($5,000.00) as attorney's fees for the services of FREDERICK S. ADAMS, JR.   IT IS

ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of *Five Thousand Dollars and No Cents* ($5,000.00) for legal services rendered with post judgment interest thereon. The judgment, for which let execution issue, is awarded against **BRYAN ROWES,** which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest is paid in accordance with Exhibit "A" hereof which is incorporated herein at 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

## *Fees, Charges, and Expenses*

IT IS ORDERED that **BRYAN ROWES** shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent, **BRYAN ROWES** shall pay *Sixteen Dollars and No Cents* ($16.00) to the clerk of this Court on or before May 1, 2014 at Dallas County Courthouse, 600 Commerce Street, Dallas, Texas 75202, by cash, cashier's check, or money order.

## *Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

## *Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court to the chief of police of the municipality of Dallas, Texas.

## *Effective Period*

This order shall continue in full force and effect until April 10, 2016.

*Warnings*:

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM

OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE TIIERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.

SIGNED on   **APR 1 7 2014**

**Associate Judge**
**254th District Court**
*JUDGE PRESIDING*

*Information about Respondent to Aid Law Enforcement Officers:*

Name:　**BRYAN WILLIAM ROWES**

Home address:　████████████████████

Home telephone number:　Cell

Work address:　**None**

Work telephone number:　**None**

Date of birth:　████████████████

Color of eyes:　BROWN

Color of hair:　Black

Height:　5'8"

Weight:　150

Sex:　**Male**

Race:　**Caucasian**

Personal Descriptors:　SCAR Above leFt eye

Social Security number:　████████████████

Driver's license or identification number and issuing state:　**TX DL#**████████

4839-0394-6010, v. 1

NO. 09-18237

IN THE INTEREST OF

**[REDACTED]** AND

**[REDACTED]**

CHILDREN

DF-09-18237
MODT
MOTION - MODIFY TEMPORARY ORDER
621507

§
§
§
§
§
§
§

IN THE 256TH JUDICIAL
DISTRICT COURT FOR
DALLAS COUNTY, TEXAS

## EX PARTE MOTIONS TO MODIFY AND MOTION TO ENFORCE

COMES NOW, Bryan Rowes, and files this Ex Parte Motion to Modify Protective Order and Ex Parte Motion to Order Temporary Restraining Order and Ex Parte Motion to Enforce all medical provisions of prior orders in support thereof would show unto the court the following:

I.  Claims

A.  Respondent is restricting Movant's access to children's medical records and medical care providers.

B.  Movant should have access to his children during medical emergencies

C.  Respondent is restricting Movant's family's access to children.

D.  Respondent is secreting children and attempting to further alienate children's father

II.  Argument

A.  On or about 4/19/2014 **[REDACTED]**, a child of this suit, was admitted to the hospital. Bryan Rowes was notified of this through OurFamilyWizard. (Attached as Exhibit "A")

B.  In response to an inquiry I sent, Katy Tillotson informed me that **[REDACTED]** was a "confidential patient". That combined with the protective order precludes me from obtaining any medical information. (Attached as Exhibit "B")

C.  In response to an inquiry I sent, Katy Tillotson informed me that she would not be allowing any release of information to my family. (Attached as Exhibit "C")

D. I sent an inquiry to Katy Tillotson asking that she have the doctor contact me. (Attached as Exhibit "D")

E. The standing decree in this order provides the following rights to Bryan Rowes:

    a. The right to consultation from the other conservator, and an opportunity to consult with the parent facilitator, prior to that conservator consenting to medical, dental, and surgical treatment involving invasive procedures.

    b. The right to consult with a physician dentist, or psychologist of the children

    c. The right of access to medical, dental, psychological, and educational records of the children

    d. The right to confer with the other parent to the extent possible before making a decision regarding the health, education, and welfare of the children, and

    e. The right to receive information from any other conservator of the children concerning the health, education, and welfare of the children. (Attached as Exhibit "E")

F. The standing decree in this order commands the following duties upon Katy Tillotson:

G. The duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children (Attached as Exhibit "E")

III. Requests

    A. Movant requests that the Court modify the Temporary Restraining Order to allow Bryan Rowes to visit his son in the hospital.

    B. Movant requests that the Court modify the Protective Order to allow Bryan Rowes to communicate with Children's Hospital regarding issues concerning his children and to allow Bryan Rowes to access Children's Hospital whenever his children are present.

C.  Movant requests that the Court enforce the standing order to allow Bryan Rowes full and unfettered access to all medical providers and records concerning the children and that Katy Tillotson be instructed to immediately remove any confidential restrictions.

Respectfully submitted,

Bryan Rowes

████████████

████████████

████████████

**Notice of Hearing**

A hearing for the above entitled Motion is set for ___4/29___, 2014 at ___9:00 AM___ in the 256th District Court, 600 Commerce Street, Dallas, Texas 75202.

Signed on ___4/21/14___

Assoc ___ Judge or Clerk

**Certificate of Service**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the same date of filing herein.

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 04/20/14 at 06:39 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Email:** | 1 of 1 |
| **Date:** | 04/20/2014 12:11 AM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 04/20/2014 12:13 AM) |
| **Subject:** | ■ |
| **Message:** | |

■ was admitted to the hospital this evening. He is ok but but probably has juvenile diabetes and I need to speak to your parents regarding their medical histories. Please have them call me as soon as possible. I will email more information when I speak with the doctors again.

Please remember that there is a protective order in place and the police, security and front desk have been notified.

Copyright ©2000-2013 OurFamilyWizard.com, all rights reserved, patent pending

# Message Report



*Bryan Rowes generated this report on 04/20/14 at 06:41 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Email:** | 1 of 1 |
| **Date:** | 04/20/2014 12:53 AM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 04/20/2014 12:53 AM) |
| **Subject:** | RE: ▮ |
| **Message:** | |

He was admitted due to concerns about symptoms of diabetes. The history has nothing to do with juvenile diabetes but related diseases that they would want to test for. Please have him call now as they will want to begin testing first thing in the morning.

Please remember your protective order covers Children's Hospital and also any threats or harassment of me related to anyone there or anyone else. ▮ is a confidential patient.

I will be waiting to speak with your father and I will update you in the morning. He is stable and in good spirits.

**On Sun, 04/20/14 at 12:23 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: ▮
Message:
Dear Katy,

Please let me know why he was admitted and what hospital he is in.

I spoke with my father. Our family has no history of juvenile diabetes. would you like him to call now or in the morning?

thank you.
Bryan

**On Sun, 04/20/14 at 12:11 AM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: ▮
Message:
▮ was admitted to the hospital this evening. He is ok but but probably has juvenile diabetes and I need to speak to your parents regarding their medical histories. Please have them call me as soon as possible. I will email more information when I speak with the doctors again.

Please remember that there is a protective order in place and the police, security and front desk have been notified.

Copyright ©2000-2013 OurFamilyWizard.com, all rights reserved, patent pending

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Bryan Rowes generated this report on 04/20/14 at 06:45 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Email:** | 1 of 1 |
| **Date:** | 04/20/2014 1:02 AM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 04/20/2014 1:03 AM) |
| **Subject:** | RE: █ |

**Message:**

I am not releasing the physician to speak with your mother or father. They can call me if they care about their grandson.

On Sun, 04/20/14 at 12:55 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: █
Message:

Dear Katy,

Please have the hospital physician call my father on my mothers cell phone.

Thank you,
Bryan

On Sun, 04/20/14 at 12:53 AM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: █
Message:

He was admitted due to concerns about symptoms of diabetes. The history has nothing to do with juvenile diabetes but related diseases that they would want to test for. Please have him call now as they will want to begin testing first thing in the morning.

Please remember your protective order covers Children's Hospital and also any threats or harassment of me related to anyone there or anyone else. Avi is a confidential patient.

I will be waiting to speak with your father and I will update you in the morning. He is stable and in good spirits.

On Sun, 04/20/14 at 12:23 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: █
Message:

Dear Katy,

Please let me know why he was admitted and what hospital he is in.

I spoke with my father. Our family has no history of juvenile diabetes. would you like him to call now or in the morning?

thank you,
Bryan

On Sun, 04/20/14 at 12:11 AM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: █

Copyright ©2000-2013 OurFamilyWizard.com, all rights reserved, patent pending

██ was admitted to the hospital this evening. He is ok but but probably has juvenile diabetes and I need to speak to your parents regarding their medical histories. Please have them call me as soon as possible. I will email more information when I speak with the doctors again.

Please remember that there is a protective order in place and the police, security and front desk have been notified.

Copyright ©2000-2013 OurFamilyWizard.com, all rights reserved, patent pending

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Bryan Rowes generated this report on 04/20/14 at 06:45 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Email:** | 1 of 1 |
| **Date:** | 04/20/2014 8:56 AM |
| **From:** | Bryan Rowes |
| **To:** | Katy Tillotson (First View: 04/20/2014 1:22 PM) |
| **Subject:** | RE: ■ |
| **Message:** | |

Dear Katy,

Please have the doctor to call me.

Thank you.
Bryan

---

On Sun, 04/20/14 at 1:02 AM, Katy Tillotson wrote:
**To:** Bryan Rowes
**Subject:** RE: ■ i
**Message:**

I am not releasing the physician to speak with your mother or father. They can call me if they care about their grandson.

---

On Sun, 04/20/14 at 12:55 AM, Bryan Rowes wrote:
**To:** Katy Tillotson
**Subject:** RE: ■
**Message:**

Dear Katy,

Please have the hospital physician call my father on my mothers cell phone.

Thank you,
Bryan

---

On Sun, 04/20/14 at 12:53 AM, Katy Tillotson wrote:
**To:** Bryan Rowes
**Subject:** RE: Avi
**Message:**

He was admitted due to concerns about symptoms of diabetes. The history has nothing to do with juvenile diabetes but related diseases that they would want to test for. Please have him call now as they will want to begin testing first thing in the morning.

Please remember your protective order covers Children's Hospital and also any threats or harassment of me related to anyone there or anyone else. ■ is a confidential patient.

I will be waiting to speak with your father and I will update you in the morning. He is stable and in good spirits.

---

On Sun, 04/20/14 at 12:23 AM, Bryan Rowes wrote:
**To:** Katy Tillotson
**Subject:** RE: ■
**Message:**

Copyright ©2000-2013 OurFamilyWizard.com, all rights reserved, patent pending

Please let me know why he was admitted and what hospital he is in.

I spoke with my father. Our family has no history of juvenile diabetes, would you like him to call now or in the morning?

thank you,
Bryan

On Sun, 04/20/14 at 12:11 AM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: ▮
Message:

▮was admitted to the hospital this evening. He is ok but but probably has juvenile diabetes and I need to speak to your parents regarding their medical histories. Please have them call me as soon as possible. I will email more information when I speak with the doctors again.

Please remember that there is a protective order in place and the police, security and front desk have been notified.

NO. 09-18237

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ▆▆▆▆▆▆▆▆ | § | |
| AND | § | 256TH JUDICIAL DISTRICT |
| ▆▆▆▆▆▆▆▆ | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

## ORDER IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

On ___March 6 2012___, 2012, the Court heard this case.

### Appearances

Petitioner, BRYAN ROWES, appeared in person and through attorney of record, RYAN KIRKHAM, and announced ready for trial and announced that the parties have agreed to the terms of this Judgment to the extent permitted by law, as evidenced by their signatures.

Respondent, MARY TILLOTSON, has agreed to the terms of this judgment to the extent permitted by law, as evidenced by their signatures.

### Jurisdiction

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case. All persons entitled to citation were properly cited.

### Jury

A jury was waived, and all questions of fact and of law were submitted to the Court.

### Record

The record of testimony was duly reported by the court reporter for the 256th Judicial District Court.

---

*Children*

The Court finds that the following children are the subject of this suit:

Name: ███████████
Sex: Female
Birth date: ███████████
Home state: Texas
Social Security number: ███████
Driver's license number and issuing state: N/A

Name: ███████████
Sex: Female
Birth date: ███████
Home state: Texas
Social Security number: ███████
Driver's license number and issuing state: N/A

*Parenting Plan*

The Court finds that the provisions in these orders relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

*Conservatorship*

The Court finds that the following orders are in the best interest of the children.

IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON are appointed Joint Managing Conservators of the following children: ███████████ and ███████

███████████

*Order in Suit Affecting the Parent-Child Relationship*                    *Page 2*

IT IS ORDERED that, at all times, MARY TILLOTSON, as a parent joint managing conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

4. the right of access to medical, dental, psychological, and educational records of the children;

5. the right to consult with a physician, dentist, or psychologist of the children;

6. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

7. the right to attend school activities;

8. the right to be designated on the children's records as a person to be notified in case of an emergency;

9. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

10. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, BRYAN ROWES, as a parent joint managing conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

*Order in Suit Affecting the Parent Child Relationship*                                      *Page 3*

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, BRYAN ROWES and MARY TILLOTSON, as parent joint managing conservators, shall each have the following duties:

1.      the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.      the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, MARY TILLOTSON, as parent

joint managing conservator, shall have the following rights and duties:

1.    the duty of care, control, protection, and reasonable discipline of the children;

2.    the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.    the right to consent for the children to medical and dental care not involving an invasive procedure; and

4.    the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, BRYAN ROWES, as parent joint

managing conservator, shall have the following rights and duties:

1.    the duty of care, control, protection, and reasonable discipline of the children;

2.    the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.    the right to consent for the children to medical and dental care not involving an invasive procedure; and

4.    the right to direct the moral and religious training of the children.

IT IS ORDERED that MARY TILLOTSON, as a parent joint managing conservator, shall

have the following rights and duty:

1.    the exclusive right to designate the primary residence of the children within Dallas Counties;

2.    the exclusive right to select the school the minor children will attend.

3.    the right, (after consultation with the other parent conservator and consultation with the parenting facilitator prior to consenting) to consent to medical, dental, and surgical treatment involving invasive procedures;

4.    the right, (after consultation with the other parent conservator), to consent to outpatient psychiatric and psychological evaluation of the children.

*Order in Suit Affecting the Parent Child Relationship*                    *Page 5*

5.    the right, (after consultation with the other parent conservator), to consent to outpatient psychiatric and psychological treatment of the children;

6.    the right, subject to the agreement of the other parent conservator, to consent to inpatient psychiatric and psychological treatment of the children.

7.    the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

8.    the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States.

9.    the right, (after consultation with the other conservator and consultation with the parent facilitator), to make decision concerning the children's education.

10.   except as provided by section 264.0111 of the Texas Family Code, the right, subject to the agreement of the other parent conservator, to the services and earning of the children.

11.   except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right, subject to the agreement of the other parent conservator, to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government.

12.   the duty, subject to the agreement of the other parent conservator, to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

13.   the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

IT IS ORDERED that BRYAN ROWES, as a parent joint managing conservator, shall have the following rights and duty:

1.    the right to consultation from the other conservator, and an opportunity to consult with the parent facilitator, prior to that conservator consenting to medical, dental, and surgical treatment involving invasive procedures.

2.    the right to consultation with the other parent conservator, prior to that conservator's consent to outpatient psychiatric and psychological evaluation of the

---

*Order in Suit Affecting the Parent Child Relationship*                           *Page 6*

children.

3.    the right to a consultation with the other parent conservator, prior to that conservator's consent to outpatient psychiatric and psychological treatment of the children.

4.    the right, subject to the agreement of the other parent conservator, to consent to inpatient psychiatric and psychological treatment of the children.

5.    the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children.

6.    the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States.

7.    the right to consultation from the other conservator, and consultation with the parent facilitator prior to the other conservator making a decision concerning the children's education with the exception of the other conservators right to select the school the children attend.

8.    except as provided by section 264.0111 of the Texas Family Code, the right, subject to the agreement of the other parent conservator, to the services and earnings of the children.

9.    except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right, subject to the agreement of the other parent conservator, to act as an agent of the children in relation to the children estates if the children's action is required by a state, the United States, or a foreign government.

10.    the duty, subject to the agreement of the other parent conservator to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

The Court orders that, as long as the nonprimary parent resides in Dallas County or a contiguous county, the residence of the children is restricted to Dallas County or until further orders of the Court or by written agreement of the parties filed with the Court.

*Possession and Access*

1.    *Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Possession Order.  IT IS ORDERED that this Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Possession Order.  IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Possession Order "school" means the primary or secondary school in which the children is enrolled or, if the children is not enrolled in a primary or secondary school, the public school district in which the children primarily resides.

2.    In this Possession Order "children " includes each child , whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the children at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the children under the specified terms set out in this Possession Order.

(c)    Except as otherwise expressly provided in this Possession Order, BRYAN ROWES shall have the right to possession of the children as follows:

Weekends Periods of Possession shall continue year round with the exception of June and July.

*December 2, 2011 to January 13, 2012*

• Father shall have possession of the children on alternate weekends from Friday at 6:00 p.m. until the immediately following Sunday at 6:00 p.m.

• Father shall have possession of the children on each Thursday from 6:00 p.m. until 8:00 p.m.

---

*Order in Suit Affecting the Parent Child Relationship*                          *Page 8*

<u>*Beginning January 14, 2012*</u>

- Father shall have possession of the children each Thursday from the time school recesses until school resumes Friday and alternate Fridays from the time school recesses until 11:30 a.m. the immediately following Sunday. This weekend possession on alternate weekends shall continue year round and the special periods of possession set forth herein shall serve as an overlay to the weekend possession calendar and shall not alter the rotation of the weekends. Upon thirty (30) day's written notice to Mother, the Father may elect to extend his possession until Sunday at 6:00 p.m. in the event he is not working on Sundays.

<u>*Special Periods of Possession*</u>

<u>*Winter Break*</u>

Christmas Holidays in Odd-Numbered Years – In odd numbered years, BRYAN ROWES shall have the right to possession of the children from the time school recesses until 8:00 p.m. on December, 23rd.

Christmas Holidays in Odd-Numbered Years - In odd-numbered years, MARY TILLOTSON shall have the right to possession of the children from 8:00 p.m. on December, 23rd until school resumes.

Christmas Holidays in Even Numbered Years – In even numbered years, BRYAN ROWES shall have the right to possession of the children from 10:00 a.m. December 26th until school resumes following the holiday.

Christmas Holidays in Even Numbered Years – In even numbered years, MARY TILLOTSION shall have the right to possession of the children from the time school recesses until 10:00 a.m. on December 26th.

<u>*Thanksgiving Holiday*</u>

Thanksgiving in Even-Numbered Years - In even-numbered years, BRYAN ROWES shall have the right to possession of the children beginning at 6:00 p.m. on the day the children is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

Thanksgiving in Odd-Numbered Years - In odd-numbered years, MARY TILLOTSON shall have the right to possession of the children beginning at 6:00 p.m. on the day the children is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

---

## Spring Break

Father shall have possession of the children in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the children is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

Mother shall have possession of the children in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the children is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

*In the event that Spring Break conflicts with Easter or Passover, Spring Break shall supercede. In the event of a conflict with Passover and Easter, the Easter holiday supercedes in odd numbered years and Passover in even numbered years.*

## Easter Holiday

Mother shall have possession of the children every Easter from the time school recesses for Easter until the time school resumes following Easter Sunday. *(In the event of a conflict with Passover and Easter, the Easter holiday supercedes in odd numbered years and Passover in even numbered years).*

## Special Holidays

Mother shall have possession of the children from 3:00 p.m. the day prior until 3:00 p.m. the day following:

* First communion *(Father shall yield possession for two (2) classes for this special holiday also)*
* First reconciliation *(Father shall yield possession for two (2) classes for this special holiday also)*
* Confirmation *(Father shall yield possession for two (2) classes for this special holiday also)*
* *8th Grade Graduation weekend from 3:00 p.m. Friday until 6:00 p.m. Sunday.*

Father shall have possession of the children from 3:00 p.m. the day prior until 3:00 p.m. the day following:

* Yom Kippur
* Purim
* Suckhot
* Simchot Torah
* Tu V'Shvat
* Hannukah (not to supercede thanksgiving or Winter Break allocation)

---

*Order in Suit Affecting the Parent Child Relationship*                                    *Page 10*

- Passover (2 days) *(In the event of a conflict with Passover and Easter, the Easter holiday supersedes in odd numbered years and Passover in even numbered years.*
- Rosh Hashanah (2 days)

### *Children's Birthday*

If a parent is not otherwise entitled under this Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent and returns the child to that same place.

### *Father's Day*

BRYAN ROWES shall have the right to possession of the children each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if BRYAN ROWES is not otherwise entitled under this Possession Order to present possession of the children, he shall pick up the children from MARY TILLOTSON and return the children to that same place.

### *Mother's Day*

MARY TILLOTSON shall have the right to possession of the children each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if MARY TILLOTSON is not otherwise entitled under this Possession Order to present possession of the children, she shall pick up the children from BRYAN ROWES and return the children to that same place.

### *Summer Possession*

June in Even-Numbered Years - In even-numbered years, Mother shall have the right to possession of the children the 2nd and 4th weeks and Father shall have possession of the children the 1st and 3rd weeks.

June in Odd-Numbered Years - In odd-numbered years, Mother shall have the right to possession of the children the 1st and 3rd weeks and Father shall have possession of the children the 2nd and 4th weeks.

July in Even-Numbered Years - In even-numbered years, Mother shall have the right to possession of the children the 3rd and 4th weeks and Father shall have possession of the children the 1st and 2nd weeks.

July in Odd-Numbered Years - In odd-numbered years, Mother shall have the right to possession of the children the 1st and 2nd weeks and Father shall have possession of the children the 3rd and 4th weeks.

02/22/2012 WED 16:49 [TX/RX NO 9767] 013

The parties shall exchange the children for the month of June and July periods at 6:00 p.m. Sunday with the parent receiving the children picking them up from the other conservator.

### *Surrender of Child by MARY TILLOTSON*

*MARY TILLOTSON* is ORDERED to surrender the children to *BRYAN ROWES* at the beginning of each period at the children's school or the police station nearest her residence.

### *Surrender of Child by BRYAN ROWES*

*BRYAN ROWES* is ORDERED to surrender the children to *MARY TILLOTSON* at the children's school or the police station nearest his residence.

This concludes the Possession Order.

2.    *Duration*

The periods of possession ordered above apply to each children the subject of this suit while that children is under the age of eighteen years and not otherwise emancipated.

3.    *Noninterference with Possession*

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

4.    *Termination of Orders*

The provisions of this order relating to conservatorship, possession, or access terminate on the remarriage of BRYAN ROWES to MARY TILLOTSON unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

_Telephone Access to Minor Children_

IT IS ORDERED that the parent shall provide reasonable telephone access for the children to the other parent.

_Parenting Facilitator_

The Court finds that there is good cause shown and it is in the best interest of the children the subject of this suit that a parenting coordinator be appointed and that the parties have agreed to the appointment of _Carrie Beaird_, 15150 Preston Road, Suite 300, Dallas, Texas 75201, 972-448-8797, as the Cooperative Parenting Facilitator in this case. The Court further finds that the appointment of a parenting facilitator is in the best interest of the children.

IT IS FURTHER ORDERED that all expenses associated with the appointment of the Cooperative Parenting Facilitator shall be split equally between the parties unless the parenting facilitator finds that a parent is using the process for harassment or is abusing the process in which case she may reallocate the costs for those harassing or abusive sessions against the parent who is abusing the process. IT IS ORDERED that each party shall promptly pay one-half of all joint sessions. IT IS FURTHER ORDERED that each party shall promptly pay for any and all sessions that is scheduled by the party and in which the party attends individually and without the other party. The Court shall enforce payment of any amounts owed to the Cooperative Parenting Coordinator by either party as necessary.

The Cooperative Parenting Facilitator shall assist the parties and the children to promote the children's best interest in general. The Cooperative Parenting Facilitator is entitled to communicate with the parties, children, health care providers, psychological providers, teachers and any other third parties deemed necessary by the Cooperative Parenting Facilitator. The

_Order in Suit Affecting the Parent Child Relationship_ _Page 13_

parties shall cooperate with the coordinator by executing any necessary releases.

I.      The Cooperative Parenting Facilitator shall:

1.      Make any recommendations relative to enforcing any shared parenting plan and parenting schedule and to minimize conflicts between the parties by addressing the particular patterns of behavior of the parents.

2.      Assist the parent in implementing any plan or schedule so that the children have continuous and consistent contact with both parents within the context of court ordered possession schedules.

3.      Minimize conflict, loyalty binds and unnecessary stress for the children.

4.      Have the following broad responsibilities:

   a.      Recommend approaches that will reduce conflict between parents

   b.      Recommend compliance with any parenting plan or parenting schedule in the Court's order.

   c.      Recommend outside resources as needed such as parenting classes, psychotherapy, etc.

   d.      Monitor parenting plan or parenting schedule and mediate the parent's disputes concerning parenting issues.

   e.      Write detailed guidelines or rules recommended for communication between parents and practicing those guidelines or rules with the parents. If parenting skills are lacking, the coordinator shall work with one or both parents to teach those skills.

   f.      Recommend modification of the parenting plan when agreement or consensus cannot be reached, as a means of reducing conflict and promoting the best interest of the children.  Any recommendation for modification of a plan or schedule must be in writing and submitted to the parties and their attorneys.

   g.      Prior to completion, write modification of the parenting plan when mutual agreement has been made by both parents and their attorneys.

   h.      Prior to completion, recommend how a particular elements of the parenting plan or schedule shall be implemented including, without limitation, the frequency and length of visitation, temporary changes in

*Order in Suit Affecting the Parent Child Relationship*                              *Page 14*

the schedule, holiday or vacation planning, logistics of pick up and drop off, suitability of accommodations, issues dealing with stepparents and significant others.

i.    Work with both parents and any significant others to update and fine tune their parenting schedule over time. (All changes in the family's circumstances could not be foreseen when the parenting plan originated). Parenting schedules, post divorce, may need to be adjusted to children's changing developmental needs, schedules, new blended families or evolving outside interests.

j.    Ensure that both parents maintain ongoing relationships with the children.

k.    Recommend a final decision on any parenting issue over which the parents reach an impasse, but submission of a written recommendation to the parties and their counsel.

l.    Educate the parents in the areas of:

effective communication and negotiation skills.
effective parenting skills.
how to meet the developmental needs of their children.
how to disengage from each other when it leads to conflict.
how to keep their children out of the middle.
the sources of their conflict and its effect of the children.

The Cooperative Parenting Facilitator may recommend the educational component is completed in a group format with other divorcing parents or in a co-parent format. If the parents participate in a group the Cooperative Parenting Facilitator may recommend they participate in the same group together or separately. The joint co-parent sessions may occur simultaneously or after the completion of an eight week group.

m.    Maintain communication among all parties by serving, if necessary, as a conduit for information. The Cooperative Parenting Facilitator is not the ally of either parent. The Cooperative Parenting Facilitator's role is active and specifically focused on helping parents work together for the benefit of the children. The Cooperative Parenting Facilitator's fundamental role is to minimize the conflict to which the children are exposed by the parties.

n.    The Cooperative Parenting Facilitator is not a custody evaluator, nor can

they change the amount of the custodial time either parent has been granted by the courts. Making decisions to place children in the residence and custody of one parent would seriously compromise the Cooperative Parenting Facilitator's neutrality. The Cooperative Parenting Facilitator does not have the power to recommend any changes relevant to the primary residence of the children. The Cooperative Parenting Facilitator recommend temporary changes to reduce the conflict for the children or to better understand the needs of the children. Temporary changes are those changes that would not expand more than a few weeks and might include slight changes in the transfer location, time of phone calls, and other parenting issues.

o.    Recommend if necessary specific solutions to visitation issues and shall make recommendation in writing to counsel.

p.    Assistance provided by the Cooperative Parenting Facilitator is not intended to be a crisis service. Unless an emergency directly impacts the children, neither parent shall contact the Cooperative Parenting Facilitator outside of normal working hours.

II.    Meeting with the Cooperative Parenting Facilitator:

1.    The Cooperative Parenting Facilitator may meet with the parties, the children and significant others jointly or separately. The Cooperative Parenting Facilitator shall recommend the appointments shall be joint or separate.

2.    Both parents shall contact the Cooperative Parenting Facilitator to schedule appointments. Appointments may also be scheduled when the Cooperative Parenting Facilitator requests.

3.    Each parent should direct any disagreements or concerns regarding the children to the Cooperative Parenting Facilitator. The Cooperative Parenting Facilitator shall work with both parents to resolve the conflict and if necessary, shall recommend an appropriate resolution to the parties and their counsel.

III.    Written and Oral Reports and Appearance in Court:

The Cooperative Parenting Facilitator may submit written reports to the parties, the court, and their counsel describing any conflicts and the Cooperative Parenting Facilitator's recommended resolutions. At any time, the Cooperative Parenting Facilitator may also report to

02/22/2012 WED 18:48 [TX/RX NO 9787] @018

the parties, the court and their counsel on parental compliance with and the parental attitudes about any element of the co-parenting process.

*Our Family Wizard*

IT IS ORDERED that the parties (except in emergencies) communicate through *Our Family Wizard*. IT IS FURTHER ORDERED that the parties post all information relating to the minor children upon receipt on *Our Family Wizard*.

IT IS FURTHER ORDERED that the parents shall purchase *Our Family Wizard* (www.ourfamilywizard.com) within three (3) days after the entry of this Order. IT IS FURTHER ORDERED that the parents shall use *Our Family Wizard* for all communications between the parties, absent an emergency, with the only exception being that if either parent needs to email an attachment to the other parent, and they are unable to do so through Our Family Wizard, then the parent shall send an email with the attachment to the other parent through that parent's alternative email address (Katy Tillotson's' alternate email address: █████████████ or substitute email address noticed through *Our Family Wizard*; Bryan Rowes' alternate email address: █████████ or substitute email address noticed through *Our Family Wizard*), and also send the other parent an email through *Our Family Wizard* notifying them that an email was sent to the parent's email address.

IT IS FURTHER ORDERED that each parent shall timely (within 48 hours of receipt) provide the other parent, through *Our Family Wizard* with information received regarding any children the subject of this suit.

*Order in Suit Affecting the Parent Child Relationship*                         *Page 17*

IT IS FURTHER ORDERED that each parent shall update the calendar in *Our Family Wizard* regarding all activities/events/appointments concerning the children as soon as the information is known to the parent, and at a minimum by midnight on Monday and Friday of each week beginning the first week following the entry of this Order.

*Documents*

IT IS ORDERED that BRYAN ROWES shall produce twenty four (24) months of bank statements, credit card statements in his name, and his tax returns from the time of divorce to the current date. These documents must be produced within fourteen (14) days to his attorney of record and forwarded to MARY TILLOTSON's attorney of record within three (3) business days of receipt by BRYAN ROWES' attorney. If an adjustment is warranted for child support using the Child Support guidelines the amount shall be inserted in this Order. If the parties are unable to agree to a child support adjustment the matter shall be scheduled for an in person arbitration with Frances Harris whose decision shall be binding on the parties.

IT IS FURTHER ORDERED that BRYAN ROWES shall secure the unpaid child support with a declining term insurance policy with the children as beneficiaries and provide proof of same annually to MARY TILLOTSON.

IT IS ORDERED that BRYAN ROWES shall submit his proof of payments to Pat Gill or MARY TILLOTSON (for services by Pat Gill) within fourteen (14) days of entry of this Order.

IT IS FURTHER ORDERED that MARY TILLOTSON shall submit invoices from Pat Gill to BRYAN ROWES.

IT IS ORDERED that BRYAN ROWES shall pay MARY TILLOTSON's deficiency (subject to reimbursement or true up) on the automobile in the Decree of Divorce. Submission shall be within fourteen (14) days in the same manner as bank statements and credit card statement. IT IS FURTHER ORDERED that the parties shall offset the amounts that each owes and payment made to the other party in the event the amounts do not offset.

### Extra Curricular Activities

IT IS FURTHER ORDERED and the parties agree that the minor children shall finish the current term of the activities in which they are enrolled. Dance term ends Summer of 2012. Choir, basketball and soccer term ends with the completion of the Spring Semester or activity term within that semester or whichever first occurs. Cub Scouts term ends with Summer of 2012. IT IS ORDERED that BRYAN ROWES shall pay one half (1/2) of the costs of the registration, enrollment, uniforms, equipment for the children to participate in these activities for this term.

IT IS ORDERED and the parties agree that BRYAN ROWES and MARY TILLOTSON shall each pay one half (1/2) of the costs of agreed upon extracurricular activities, including camps or lessons. IT IS FURTHER ORDERED that such agreement must be in writing, either email or text constitutes a "writing" for purposes of this provision.

IT IS FURTHER ORDERED that the party in possession of the children during a regularly scheduled extracurricular activity shall use their best efforts to transport the children to that activity on time and insure the children is present for the duration of the activity. If that party is unable to transport or insure the children are present for the duration of the activity that

*Order On Suit Affecting the Parent Child Relationship*                    *Page 19*

parent shall offer the opportunity to the other parent. If the parties are not able to agree upon an activity they shall confer with the parent facilitator who shall render a decision that is binding on the parents with regard to extracurricular activities.

IT IS ORDERED that either party shall have the right to enroll the children in extracurricular activities without the consent of the other party provided that the non-consenting parent is not required to pay costs of the activity nor shall the non-consenting parent be required to yield their time so that the children may participate in that activity.

IT IS FURTHER ORDERED that the method of payment for the foregoing expenses shall be paid by the parties as follows:

- By direct payment of his or her 50% share to the organization or individual as applicable within five (5) business days of receipt of an invoice specifying the total payment to be made; or

- By making his or her 50% of the payment available to the paying party to enable him or her to timely make the payment.

IT IS ORDERED that in the event either party pays 100% of any of the foregoing expense, then the nonpaying party shall reimburse the paying party 50% of such expenses paid by the paying party within five (5) business days of the nonpaying party's receipt of documentation evidencing the paying party's payment of such expenses. Such reimbursements shall be made by mail or hand delivery at the paying party's current residence address.

02/22/2012 WED 16:48 [TX/RX NO 9767] @022

*Health Care*

1.    IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON shall each provide medical support for each children as set out in this order as additional child support for as long as the Court may order BRYAN ROWES and MARY TILLOTSON to provide support for the children under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day BRYAN ROWES and MARY TILLOTSON's actual or potential obligation to support a children under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that BRYAN ROWES and MARY TILLOTSON are discharged from the obligations set forth in this medical support order with respect to that children, except for any failure by a parent to fully comply with those obligations before that date. IT IS FURTHER ORDERED that the cash medical support payments ordered below are payable through the state disbursement unit and subject to the provisions for withholding from earnings provided above for other child support payments.

2.    Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which BRYAN ROWES is responsible under a medical support order that does not exceed 9

*Order in Suit Affecting the Parent Child Relationship*                          *Page 21*

percent of BRYAN ROWES's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a children " include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

    a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

    b.    to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

    c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3.    Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available to MARY TILLOTSON at a reasonable cost of $160.00

*Order in Suit Affecting the Parent Child Relationship*           *Page 22*

from another source, including the program under section 154.1826 of the Texas Family Code to provide health insurance in title IV-D cases. IT IS FURTHER ORDERED that BRYAN ROWES shall reimburse MARY TILLOTSON the cost of the medical insurance premium.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4.     Provision of Health-Care Coverage •

As child support, MARY TILLOTSON is ORDERED to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

MARY TILLOTSON is ORDERED to maintain such health insurance in full force and effect on each children who is the subject of this suit as long as child support is payable for that children . MARY TILLOTSON is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of her employment or other disqualification from the group insurance. MARY TILLOTSON is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

MARY TILLOTSON is ORDERED to furnish BRYAN ROWES a true and correct copy of the health insurance policy or certification and a schedule of benefits within ten (10) days of the signing of this order. MARY TILLOTSON is ORDERED to furnish BRYAN ROWES the

*Order in Suit Affecting the Parent Child Relationship*                              *Page 23*

insurance cards and any other forms necessary for use of the insurance within ten (10) days of the signing of this order. MARY TILLOTSON is ORDERED to provide, within three days of receipt by her, to BRYAN ROWES any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that BRYAN ROWES paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, it is ORDERED that if MARY TILLOTSON is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of BRYAN ROWES or others as authorized by law.

Pursuant to section 154.182 of the Texas Family Code, BRYAN ROWES is ORDERED to pay MARY TILLOTSON cash medical support for reimbursement of health insurance premiums, as additional child support, of One Hundred Sixty Dollars and No Cents ($160.00) per month, with the first installment being due and payable on December 1, 2012 and a like installment being due and payable on or before the first day of each month until the termination of current child support for all children under this order.

IT IS ORDERED that the cash medical support provisions of this order shall be an obligation of the estate of BRYAN ROWES and shall not terminate on his death.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: MARY TILLOTSON is ORDERED to pay 50 percent and BRYAN ROWES is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, MARY TILLOTSON is providing health insurance as ordered *including*

*Order in Suit Affecting the Parent Child Relationship*                                    *Page 24*

*without limitation, medical, prescription drugs, psychiatric, psychological, dental, eye care, vision exams, contact lens and orthodontic charges, occupational therapy, dyslexia tutoring, and therapy, physical therapy, psycho educational therapy. The parties agree and it is ORDERED that the current health care providers and dental care providers shall not be changed during the pendency of the case absent written agreement of the parties.*

The party who incurs a health-care expense on behalf of a children is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any children who is the subject of this suit that are incurred while child support is payable for that children .

5.     Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

---

*Order in Suit Affecting the Parent Child Relationship*                                          *Page 25*

6.    Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion of that bill.

7.    Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of section

*Order in Suit Affecting the Parent Child Relationship*                          *Page 36*

1204.251 of the Texas Insurance Code, BRYAN ROWES is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a children to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.    Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a children shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.    WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID

02/22/2012 WED 16:49 [TX/RX NO 9767] @029

ON BEHALF OF THE CHILDREN.

*Miscellaneous Child Support Provisions*

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this order shall be an obligation of the estate of BRYAN ROWES and shall not terminate on the death of BRYAN ROWES. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of BRYAN ROWES's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this order relating to current child support terminate on the remarriage of BRYAN ROWES to MARY TILLOTSON unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this order does not terminate on the death of MARY TILLOTSON but continues as an obligation ███████████████ and ███████████████.

*Settlement of Future Disputes*

The Court finds that the parties agree to the following, as evidenced by their signatures below.

*Mediation*

It is agreed that before setting any hearing or initiating discovery in a suit for modification

*Order in Suit Affecting the Parent Child Relationship*                    *Page 28*

of the terms and conditions of conservatorship, possession, or support of the children, except in an emergency, the parties shall mediate the controversy in good faith. This requirement does not apply to actions brought to enforce this order or to enforce any subsequent modifications of this order. It is agreed that the party wishing to modify the terms and conditions of conservatorship, possession, or support of the children shall give written notice to the other party of a desire to mediate the controversy. If, within ten days after receipt of the written notice, the parties cannot agree on a mediator or the other party does not agree to attend mediation or fails to attend a scheduled mediation of the controversy, the party desiring modification shall be released from the obligation to mediate and shall be free to file suit for modification.

*Permanent Mutual Injunction*

The parties agree and the Court orders:

1.    *No Disparaging Statements* - Neither party shall make disparaging statements about the other party or the other party's family to or in the presence of the children or within the hearing of the children nor allow any third party to disparage the other parent in the presence of the children or within the hearing of the children.

2.    *No Disparaging Statements* - Neither party shall make disparaging statements about the other party's religion in the presence of the children or within the hearing of the children nor allow any third party to disparage the other parent's religion in the presence of the children or within the hearing of the children.

3.    *No Disparaging Statements* - Neither party shall disparage nor allow a third party to disparage the employ of the other parent or that parent's family.

*Order in Suit Affecting the Parent Child Relationship*                    *Page 39*

4.    _Conduct In The Presence of the Children_ – Neither parent shall nor shall they allow third parties to be naked in the presence of the children, nor shall they bathe with the children nor allow a third party adult to do so.

## Service of Writ

Petitioner and Respondent waive issuance and service of the writ of injunction, by stipulation or as evidenced by the signatures below.   IT IS ORDERED that Petitioner and Respondent shall be deemed to be duly served with the writ of injunction.

## Required Information

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: *BRYAN ROWES*
      Social Security number:                 xxx-xx-▮
      Driver's license number and issuing state: _____
      Current residence address:        ▮▮▮▮▮▮▮▮
      Mailing address:                  ▮▮▮▮▮▮▮▮
      Home telephone number:            ▮▮▮▮▮▮▮▮
      Name of employer:                 *Karen Dillard College Prep*
      Address of employment:            *5211 Forest Lane, Suite 108, Dallas, Texas 75244*
      Work telephone number:            *214-866-0220*

Name: *MARY TILLOTSON*
      Social Security number:                 xxx-xx-▮
      Driver's license number and issuing state: ▮▮▮▮
      Current residence address:        ▮▮▮▮▮▮▮▮
      Mailing address:                  ▮▮▮▮▮▮▮▮
      Home telephone number:            ▮▮▮▮
      Name of employer:                 *Children's Medical Center*
      Address of employment:            *1935 Medical District Drive, Dallas, Texas 75235*
      Work telephone number:            *214-456-7000*

_Order In Suit Affecting the Parent Child Relationship_                                    Page 30

*Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILDREN.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF

02/22/2012 WED 16:48 [TX/RX NO 8787] @033

CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 256th District Court, 600 Commerce Street, Dallas, Texas 75202. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILDREN CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILDREN CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

*Order in Suit Affecting the Parent Child Relationship*                    *Page 32*

### *Warnings*

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILDREN MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

### *Attorney's Fees*

IT IS ORDERED that attorney's fees are to be borne by the party who incurred them.

### *Costs*

IT IS ORDERED that costs of court are to be borne by the party who incurred them.

---

*Order in Suit Affecting the Parent Child Relationship*                              *Page 33*

*Merger of Mediation Agreement*

This order is stipulated to represent a merger of a mediation agreement between the parties. To the extent there exist any differences between the mediation agreement and this order, this order shall control in all instances.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

All provisions of the prior Decree of Divorce that are not modified remain in full force and effect.

*Relief Not Granted*

IT IS ORDERED that all relief requested in this case and not expressly granted is denied.

*Date of Order*

SIGNED on ___MARCH 6 2012___

_____
JUDGE PRESIDING

JUDGE 301 JUDICIAL DISTRICT COURT ACTING
FOR 256 JUDICIAL DISTRICT COURT OF
DALLAS COUNTY, TEXAS

*Order in Suit Affecting the Parent Child Relationship* *Page 34*

APPROVED AS TO FORM ONLY:

QUILLING SELANDER LOWNDS
WINSLETT MOSER
2001 Bryan Street, Suite 1800
Dallas, TX 75201
Tel: (214) 871-2100
Fax: (214) 871-2111

By: _____
    FREDERICK S. ADAMS, JR.
    State Bar No. 0085600
    Attorney for *MARY TILLOTSON*

McCurley, Orsinger, McCurley, Nelson
& Downing, L.L.P.
5959 Sherry Lane, Suite 800
Dallas, Texas 75225
Tel: (214) 273-2400
Fax: (214) 273-2470

By: _____
    RYAN KIRKHAM
    State Bar No. 24071100
    Attorney for *BRYAN ROWES*

*Order in Suit Affecting the Parent Child Relationship*                                    *Page 35*

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

BRYAN ROWES

MARY TILLOTSON

CAUSE NO. DF _09 - 18257_

IN THE MATTER OF:

____Rowes_____

IN THE _250th_ FAMILY DISTRICT

COURT OF DALLAS COUNTY, TEXAS

### ASSOCIATE JUDGE'S REPORT *(Divorce/SAPCR)*
Temporary ___✓___ Final _____

Pursuant to an Order of Referral, a hearing in this matter has been held by a duly appointed Associate Judge as authorized by Chapter 201, Texas Family Code. The parties are hereby given notice of the findings and recommendations contained herein and of their right to be heard by a District Judge upon compliance with the terms of Chapter 201, Texas Family Code. A copy of this Report has been given to each party or the party's attorney who appeared at the hearing.

[ ] AGREEMENT  [ ] DEFAULT  [ ] CONTESTED HEARING  [ ] Reporter/Interpreter Present _____

APPEARANCES:  Husband/Father:___✓_____ and Attorney: _Pro Se_____

Wife/Mother:___✓_____ and Attorney: _Fred Adams_____

Other:_____ and Attorney: _____

_Mother to Execute Release to Allow Father_
_to Obtain Son's Medical Records and to Speak_
_with Son's Medical Providers_

```
DF-09-18237
AJREP
ASSOCIATE JUDGE'S REPORT
657380
```

Attorney for [ ] Husband/Father [ ] Wife/Mother will reduce this Report to written Order and submit to other side and Court within fourteen (14) days.
[ ] Orders require proof of submission to other attorney OR signature of all [ ] attorneys or [ ] parties for entry.

___5/28/14___
Date

Associate Judge

Agreed _____ Agreed _____ Agreed _____ Agreed _____

PAGE ____ OF ____      [ ] SUBJECT TO PROOF OF SERVICE      (Revised 10/13)

No. DF-09-18237

FILED
2015 OCT 23 AM 9: 28
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE 256th |
| | § | |
| ███████████ | § | JUDICIAL DISTRICT COURT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## MARY TILLOTSON'S *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*

TO THE HONORABLE JUDGE OF SAID COURT:

Respondent and Movant MARY TILLOTSON hereby files her Motion for Enforcement of Protective Order, *entered April 11, 2014*, and who shows in support the following:

### I.
### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under level 2, T.R.C.P. Rule 190.

### II.
### PARTIES

This Motion for Enforcement of Protective Order is brought by MARY TILLOTSON ("MARY TILLOTSON" or "Movant"), Petitioner in the above-captioned cause numbers, who is the mother of ███████ and ████████████ (collectively, hereinafter sometimes referred to as the "children"). BRYAN ROWES ("BRYAN ROWES" or "Petitioner") is Respondent in the pending proceeding. He is also the father of ███████ and ████████████

### III.
### CHILDREN

The following children, who are under the continuing jurisdiction of the 256th Judicial District Court of Dallas County, Texas, are the subjects of this suit: ███████ and ███████
███████.

### IV.
### MANAGING CONSERVATORSHIP

Pursuant to the ORDER IN SUIT AFFECTING PARENT CHILD RELATIONSHIP, entered March 6, 2012, MARY TILLOTSON and BRYAN ROWES were appointed Parent Joint Managing Conservators of the children.

# V.
# JURISDICTION

This Court has continuing, exclusive jurisdiction of this case as a result of prior proceedings.

# VI.
# SERVICE AND NOTICE

The party entitled to notice is BRYAN ROWES. BRYAN ROWES may be served with process in this matter in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving him at his place of residence at ███████████, ████, ██████████ or at any other place he may be found.

# VII.
# ORDERS TO BE ENFORCED

MARY TILLOTSON seeks to enforce the PROTECTIVE ORDER that BRYAN ROWES has intentionally, willfully and contemptuously violated subsequent to it being entered. BRYAN ROWES has violated in various respects the PROTECTIVE ORDER, *entered April 17, 2014.*

# A.
# PROTECTIVE ORDER

On April 17, 2014, in Cause No. DF-09-18237, styled "In the Interest of ██████ ████ and ██████████████, Children, Children," in the 256th Judicial District Court of Dallas County, a **PROTECTIVE ORDER** was entered in this Court that stated in relevant part as follows:

> "**Orders**
>
> "**IT IS ORDERED that Respondent, BRYAN ROWES, is:**
>
> "**Prohibited from communicating directly with MARY TILLOTSON in a threatening or harassing manner.**
>
> "**On a finding of good cause, prohibited from communicating in any manner with MARY TILLOTSON, except through Respondent's attorney or a person appointed by a Court, except Our Family Wizard related to the children.**
>
> "**Prohibited from going to or near, or within 500 feet of, any location where MARY TILLOTSON is known by Respondent, BRYAN ROWES, to be and from remaining within 500 feet after Respondent, BRYAN ROWES becomes aware of MARY TILLOTSON's presence.**

"Prohibited from going to or near MARY TILLOTSON's employment addresses or where MARY TILLOTSON normally resides at ███████████ ████████

...

"Effective Period

"This Order shall continue in full force and effect until April 10, 2016."

"Attorney's Fees

The Court finds that BRYAN ROWES should be assessed Five Thousand Dollars and no Cents ($5,000.00) as attorney's fees for the services of Frederick S. Adams, JR. IT'S ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of Five Thousand Dollars and No Cents ($5,000.00) for legal services rendered with post judgment interest thereon. **The judgment, for which let execution issue, is awarded against BRYAN ROWES, which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest paid ...**" (emphasis added)

The above provisions may be found on pages two (2) through three (3) in the **PROTECTIVE ORDER**. A true and correct copy of the **PROTECTIVE ORDER** is attached as Exhibit A and incorporated by reference the same as if fully copied and set forth at length. *See attached exhibit "A."*

## A1.

BRYAN ROWES has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the **PROTECTIVE ORDER**. More particularly, BRYAN ROWES has committed separate violations of the order described in the **PROTECTIVE ORDER** as follows:

Violation 1. On May 28 2014, at 8:30A.M., BRYAN ROWES violated the **PROTECTIVE ORDER**, by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES, specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glared at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the **PROTECTIVE ORDER**. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

Violation 2. On May 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 3. On June 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 4. On July 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00

Violation 5. On August 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 6. On September 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 7. On October 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 8. On November 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 9. On December 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 10. On January 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 11. On February 1, 201, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 12. On March 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 13. On April 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 14. On May 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 15. On June 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 16. On July 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 17. On August 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 18. On September 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 19. On October 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 20. On March 5, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by going to MARY TILLOTSON's place of employment located at Children's Medical Hospital.

Violation 21. On March 28, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the **PROTECTIVE ORDER** was granted.

Violation 22. On or about September 25, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the **PROTECTIVE ORDER** was granted.

Movant MARY TILLOTSON was the Applicant/Petitioner and BRYAN ROWES was the Respondent in the above-referenced proceeding.

## VIII.
## REQUESTS

(a)     Movant requests that Respondent be ***held in contempt, jailed,*** and ***fined for each of the remaining violations detailed above***.

(b)     Movant believes, based on the conduct of Respondent, that Respondent ***will continue to fail to comply*** with the orders set forth above. Movant requests that Respondent be held in contempt, jailed, and fined for each failure to comply with the orders of the Court from the date of this filing to the date of the hearing on this motion.

(c)     Movant, MARY TILLOTSON, requests that, if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on Respondent and giving Respondent a reasonable time within which to comply.

(d)     Movant, MARY TILLOTSON, requests that the Court find that since the last hearing BRYAN ROWES has engaged in an "incident" negating the parties' agreement, and subsequent order of the Court, that BRYAN ROWES's possession of the children be restored pursuant to the prior order dated March 6, 2012.

(e)     Movant, MARY TILLOTSON, requests that BRYAN ROWES provide proof of counseling compliance as a condition precedent for all periods of possession to be exercised.

## IX.
## ATTORNEY'S FEES AND EXPENSES

It was necessary for Movant to secure the services of NACE & MOTLEY, L.L.P., lawyers duly licensed and practicing in the State of Texas, to preserve, protect and defend Movant's rights and the children.  Respondent BRYAN ROWES should be ordered to pay reasonable attorneys' fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against Respondent; or, in the alternative, reasonable attorneys' fees, expenses, and costs should be taxed as costs and should be ordered paid directly to the undersigned attorney, who may enforce the order in the attorney's own name.

Movant requests postjudgment interest as allowed by law.

## PRAYER

Movant prays that the Court grant its Motion for Enforcement and, specifically, that Respondent be held in contempt and punished as requested, that a judgment be granted for attorney's fees, and costs or order a bond or security, that the Court clarify any part of its prior order found not specific enough to be enforced by contempt, for attorney's fees, expenses, costs, and interest, and for all further relief authorized by law.

Respectfully submitted,

NACE & MOTLEY, L.L.P.
100 Crescent Court
7th Floor
Dallas, Texas 75201
Tel: (214) 4598289
Fax: (214) 2424333

By:/s/ Bradford Nace
State Bar No. 24007726
bnace@nacemotley.com
Attorney for Movant
MARY TILLOTSON

## CERTIFICATE OF SERVICE

In addition to serving BRYAN ROWES with service of process, the undersigned certifies that the foregoing document will be served on his counsel of record, PAULA BENNETT, in accordance with the Texas Rules of Civil Procedure.

/s/ Bradford Nace

NO. 09-18237

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
|  | § | 256TH JUDICIAL DISTRICT |
| AND | § | |
| | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

### PROTECTIVE ORDER

On __April 11__, 2014, the Court heard the Application of *MARY TILLOTSON* for a Protective Order.

#### Appearances

Applicant, *MARY TILLOTSON*, appeared in person and through attorney of record, FREDERICK S. ADAMS, JR., and announced ready.

Respondent, *BRYAN ROWES*, appeared in person and announced ready.

#### Jurisdiction

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

#### Findings

The Court finds that *BRYAN ROWES* has engaged in conduct violative of Texas Penal Code Section 42.072. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and are necessary for the protection of Applicant.

#### "Protected Person"

In this order, "Protected Person" means Applicant

---

*Protective Order*                              *Page 1*

## *Orders*

IT IS ORDERED that Respondent, *BRYAN ROWES*, is:

Prohibited from committing family violence, as defined by section 71.004 of the Texas Family Code.

Prohibited from communicating directly with *MARY TILLOTSON* in a threatening or harassing manner.

Prohibited from communicating a threat through any person to *MARY TILLOTSON*

On a finding of good cause, prohibited from communicating in any manner with *MARY TILLOTSON* except through Respondent's attorney or a person appointed by the Court, except Our Family Wizard related to the children.

Prohibited from going to or near, or within 500 feet of, any location where *MARY TILLOTSON* is known by Respondent, *BRYAN ROWES* to be and from remaining within 500 feet after Respondent, *BRYAN ROWES* becomes aware of *MARY TILLOTSON* presence.

Prohibited from going to or near *MARY TILLOTSON*'s employment addresses or where *MARY TILLOTSON* normally resides at ██████████████████

Prohibited from possessing a firearm or ammunition unless Respondent, *BRYAN ROWES* is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Respondent's license to carry a concealed handgun issued under subchapter H, chapter 411, of the Texas Government Code is suspended.

## *Attorney's Fees*

The Court finds that *BRYAN ROWES* should be assessed *Five Thousand Dollars and No Cents* ($5,000.00) as attorney's fees for the services of FREDERICK S. ADAMS, JR. IT IS

ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of *Five Thousand Dollars and No Cents* ($5,000.00) for legal services rendered with post judgment interest thereon. The judgment, for which let execution issue, is awarded against *BRYAN ROWES,* which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest is paid in accordance with Exhibit "A" hereof which is incorporated herein at 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

## *Fees, Charges, and Expenses*

IT IS ORDERED that *BRYAN ROWES* shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent, *BRYAN ROWES* shall pay *Sixteen Dollars and No Cents* ($16.00) to the clerk of this Court on or before May 1, 2014 at Dallas County Courthouse, 600 Commerce Street, Dallas, Texas 75202, by cash, cashier's check, or money order.

## *Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

## *Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court to the chief of police of the municipality of Dallas, Texas.

## *Effective Period*

This order shall continue in full force and effect until April 10, 2016.

*Warnings:*

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM

OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE THERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.

SIGNED on __APR 1 7 2014__

Associate Judge
254th District Court
*JUDGE PRESIDING*

*Information about Respondent to Aid Law Enforcement Officers:*

Name: **BRYAN WILLIAM ROWES**

Home address: ▮▮▮▮▮▮▮▮▮▮

Home telephone number: Cell

Work address: **None**

Work telephone number: **None**

Date of birth: ▮▮▮▮▮▮

Color of eyes: BROWN

Color of hair: Black

Height: 5' 8"

Weight: 150

Sex: **Male**

Race: **Caucasian**

Personal Descriptors: Scar Above left eye

Social Security number: ▮▮▮▮▮▮

Driver's license or identification number and issuing state: **TX DL#**▮▮▮▮▮

4839-0394-6010, v. 1

No. DF-09-18237

| IN THE INTEREST OF | § | IN THE 256th |
| | § | |
| ███ AND ███ | § | JUDICIAL DISTRICT COURT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## ORDER TO APPEAR

Respondent, BRYAN ROWES, is ORDERED to appear and respond to this Motion for Enforcement of Protective Order, dated October 23, 2015 in the 256th Judicial District Court in Dallas County, Texas on December 10, 2015 at 9:00 a. m. The purpose of this hearing is to determine whether the relief requested in this motion should be granted.

It is further ordered that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this suit may serve any citation, notice, or process in this case.

OCT 23 2015

SIGNED on _____.

_____
JUDGE PRESIDING

ORDER TO APPEAR ON *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*
Pg. 1

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ▮ and ▮ | § | 256ᵀᴴ JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

**Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer to Mary Tillotson's Motion for Enforcement of Protective Order Subject to Special Exceptions, Motion to Strike and Motion to Dismiss for Lack of Standing**

Bryan Rowes, Respondent, files this his Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer to Mary Tillotson Motion for Enforcement of Protective Order Subject to Special Exceptions, Motion to Strike, and Motion to Dismiss for Lack of Standing.

### Special Exceptions and Motion to Strike

On October 23, 2015, Mary Tillotson filed her Mary Tillotson's Motion for Enforcement of Protective Order. A true and correct copy of the Motion is attached hereto as "Exhibit A" and incorporated as if fully set forth herein. Bryan Rowes specially excepts to Mary Tillotson's Motion and moves to strike such allegations as set forth immediately herein below. Bryan Rowes requests the Court to rule on such exceptions and motion to strike prior to hearing Mary Tillotson's request for enforcement. Special exceptions are the proper procedure to point out a deficiency in a motion for contempt. *Campos v. Russell*, 2001 WL 660687 (Tex. App.–Austin 2001, no pet.) (not designated for publication).

### Special Exceptions and Objections to Each Specific Alleged Violation

Bryan Rowes specially excepts to Mary Tillotson's Motion for Enforcement of Protective

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 1

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

Order and moves to strike as follows:

1. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

> Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:
>
> Violation 1. On May 28, 2014, at 8:30 A.M., BRYAN ROWES violated the PROTECTIVE ORDER by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glaring at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the PROTECTIVE ORDER. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because these statements are conclusory (factually and legally) and are not supported by adequate evidence. A witness' conclusory statements made in an affidavit, without evidentiary support, do not create any fact issue. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601-02 (Tex.1997); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Testimony that is conclusory or speculative **is irrelevant evidence**, because it does not tend to make the existence of a material fact more probable or less probable. *Coastal Transp. Co. v. Crown Central Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex 2004).

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 2**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

2.    Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 2. On May 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.    Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.    Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.    Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, nd unambiguous as to the duties and respnsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 3

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

3.     Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 3.  On June 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.     Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.     Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense.  That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution.  Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.     Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, nd unambiguous as to the duties and respnsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 4

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

4.  Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 4. On July 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.  Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.  Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety..

3.  Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

---

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 5

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

5. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 5. On August 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.--Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 6**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

6. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 6. On September 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 7

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

7. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 7. On October 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 8**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

8. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 8. On November 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**
Page 9

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

9. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 9. On December 1, 2014, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 10

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

10. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 10. On January 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 11

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

11. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 11. On February 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 12**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

12. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 12. On March 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 13

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

13. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 13. On April 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 14**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

14. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 14. On May 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing
Page 15

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

15.  Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 15.  On June 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.  Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.  Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense.  That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution.  Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.  Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

---

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 16**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

16.  Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 16. On July 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.  Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.  Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.  Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 17

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

17.    Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

> Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:
>
> ...
>
> > Violation 17.    On August 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.    Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.    Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.    Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**
Page 18

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

18. Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 18. On September 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1. Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2. Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3. Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 19

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

19.   Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 19. On October 1, 2015, Bryan Rowes violated the PROTECTIVE ORDER by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

1.   Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.   Bryan Rowes specially excepts and objects because this provision of the Motion contains contempt allegations. Contempt is not a proper remedy and such relief is outside the scope of the trial court's authority to grant. A failure to pay a judgement, except for a judgement for child support or attorney fees incurred for the enforcement of child support, is not a contemptible offense. That would be considered debtors prison and a violation of Article I, Section 18 of the Texas Constitution. Ex Parte Yates, 387 S.W.2d 377 (Tex. 1965). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

3.   Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to payment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 20**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

20.     Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 20.  On March 5, 2015, BRYAN ROWES violated the PROTECTIVE ORDER by going to MARY TILLOTSON'S place of employment located at Children's Medical Hospital.

1.     Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety..

2.     Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to Mary Tillotson' place of employment are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

3.     Bryan Rowes specially excepts and objects because these statements are conclusory (factually and legally) and are not supported by adequate evidence. A witness' conclusory statements made in an affidavit, without evidentiary support, do not create any fact issue. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601-02 (Tex.1997); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Testimony that is conclusory or speculative **is irrelevant evidence**, because it does not tend to make the existence of a material fact more probable or less probable. *Coastal Transp. Co. v. Crown Central Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex 2004).

**Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing**

**Page 21**

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

21.   Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 21.   On March 28, 2015, BRYAN ROWES violated the PROTECTIVE ORDER by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the PROTECTIVE ORDER was granted.

1.   Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety..

2.   Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to threatening or harassing correspondence are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

3.   Bryan Rowes specially excepts and objects because these statements are conclusory (factually and legally) and are not supported by adequate evidence. A witness' conclusory statements made in an affidavit, without evidentiary support, do not create any fact issue. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601-02 (Tex.1997); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Testimony that is conclusory or speculative **is irrelevant evidence**, because it does not tend to make the existence of a material fact more probable or less probable. *Coastal Transp. Co. v. Crown Central*

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 22

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

*Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex 2004).

22.  Beginning on Page 2, Provision titled A1 of Mary Tillotson's Motion states as follows:

Bryan Rowes has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the PROTECTIVE ORDER. More particularly BRYAN ROWES has committed separate violations of the order described in the PROTECTIVE ORDER as follows:

...

Violation 22.  On or about September 25, 2015, BRYAN ROWES violated the PROTECTIVE ORDER by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the PROTECTIVE ORDER was granted.

1.  Bryan Rowes specially excepts and objects because this provision of the Motion fails to state with specificity the language of the order that Bryan Rowes has allegedly violated. Tex. Fam. Code § 157.002(a); *In re Mann*, 162 S.W.3d 429 (Tex. App.–Fort Worth 2005, orig. proceeding). Mary Tillotson should be required to replead her allegations properly, or the Court should strike her claims in their entirety.

2.  Bryan Rowes specially excepts and objects because the provisions in the PROTECTIVE ORDER relating to threatening or harassing correspondence are not specific enough to be subject to enforcement. The Order to be enforced must be clear, specific, and unambiguous as to the duties and responsibilities of the alleged violator. *See Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). The order sought to be enforced by Mary Tillotson violates *Slavin* because the PROTECTIVE ORDER is too vague, general, and broad to clearly place Bryan Rowes on notice as to what exact conduct is required under the PROTECTIVE ORDER. Mary Tillotson should be required to replead this allegation, or the Court should strike this claim in its entirety.

3.  Bryan Rowes specially excepts and objects because these statements are conclusory (factually and legally) and are not supported by adequate evidence. A witness' conclusory statements made in an affidavit, without evidentiary support, do not create any fact issue. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601-02 (Tex.1997); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Testimony that is conclusory or speculative **is irrelevant**

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 23

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

evidence, because it does not tend to make the existence of a material fact more probable or less probable. *Coastal Transp. Co. v. Crown Central Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex 2004).

## Motion to Dismiss Alleged Violations 2 - 19 For Lack of Standing

The <u>PROTECTIVE ORDER</u> stated, in relevant part, as follows:

"<u>Attorney's Fees</u>

The Court finds that BRYAN ROWES should be assessed Five Thousand Dollars and no cents ($5,000.00) as attorney's fees for the services of Frederick S. Adams, jr. IT'S ORDERED that FREDERICK S. ADAMS, JR. Iis awarded judgment of Five Thousand Dollars and No Cents ($5,000.00) for legal services rendered with post judgment interest thereon. **The judgment, for which let execution issue, is awarded against BRYAN ROWES, which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest paid...**"

Bryan Rowes requests the Court dismiss alleged violation numbers 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 because Mary Tillotson lack standing to bring suit on these claims. The judgment was issued to Frederick S. Adams, JR., not Mary Tillotson. On Bryan Rowes's information and belief, Mary Tillotson is not entitled to recover in the capacity in which she sues on these alleged violations.

## Answer Subject to Special Exceptions, Motion to Strike, and Motion to Dismiss

1.      Bryan Rowes objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial.

2.      Bryan Rowes denies the allegations of Mary Tillotson's Motion for Enforcement of Protective Order.

3.      The order sought to be enforced by Mary Tillotson is incapable of enforcement, in that it is ambiguous and is not clear and specific enough in its terms that Bryan Rowes knows

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 24

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

what duties or obligations are required.

4. As affirmative and other defenses, and without waiver of any of the foregoing denials, Bryan Rowes alleges:

1. Mary Tillotson's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

2. Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of collateral estoppel and res judicata.

Bryan Rowes reserves the right to rely upon such other defenses and affirmative defenses as may become available or apparent during discovery proceedings in this case.

## Attorney's Fees

It was necessary for Bryan Rowes to secure the services of Paula A. Bennett and the law firm of Orsinger, Nelson, Downing & Anderson, L.L.P., licensed attorneys, to prepare and defend this suit. Mary Tillotson should be ordered to pay reasonable attorney's fees, expenses and costs and a judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Mary Tillotson and in favor of Bryan Rowes for the use and benefit of his attorneys and be ordered paid directly to Bryan Rowes's attorneys, who may enforce the judgment in their own name. Bryan Rowes requests postjudgment interest as allowed by law.

## Prayer

Bryan Rowes prays that the Court grant his Special Exceptions, Motion to Strike, and Motion to Dismiss for Lack of Standing.

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing
Page 25

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

Bryan Rowes prays that every alleged violation be stricken and Mary Tillotson's Motion for Enforcement of Protective Order be dismissed. In the alternative, Order Mary Tillotson to amend her Motion so it is legally sufficient.

Bryan Rowes prays this Court issue a clarifying order to remove all of its ambiguous terms of the Protective Order if the Court finds that it is vague or ambiguous.

Bryan Rowes prays that the Court deny Mary Tillotson's Motion for Enforcement of Protective Order and that Bryan Rowes recover all attorney's fees, costs and expenses incurred in defending this suit.

Bryan Rowes prays for general relief.

Respectfully submitted,

ORSINGER, NELSON, DOWNING
    & ANDERSON, LLP
5950 Sherry Lane
Suite 800
Dallas, Texas 75225
Tel: (214) 273-2400
Fax: (214) 273-2470

By: _Paula A. Bennett_

Paula A. Bennett
State Bar No. 24064824
pbennett@ondafamilylaw.com
Attorney for Bryan Rowes

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 26

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd

## Verification

The undersigned stated under oath: "I have read the foregoing motion. The statements contained in the foregoing motion are within my personal knowledge and are true and correct."

Bryan Rowes

Signed under oath, before me on November 30, 2015.

Notary Public, State of Texas

Tammy Brewer
Commission Expires
10-03-2017

## Certificate of Service

I certify that a true copy of the above was served on Brad Nace, The Crescent Court, 100 Crescent Court, 7th Floor, Dallas, Texas 75201 attorney of record or party via e-mail at bnace@nacemotley.com in accordance with the Texas Rules of Civil Procedure on November 30, 2015.

Paula A. Bennett

Respondent's Special Exceptions, Motion to Strike, Motion to Dismiss for Lack of Standing, and Original Answer and Affirmative Defenses Subject to Special Exceptions , Motion to Strike and Motion to Dismiss for Lack of Standing

Page 27

N:\USERS\_Clients\Rowes, Bryan Enforcement\Special Exceptions, Motion to Strike, Original Answer and Affirmative Defenses.wpd


"A"

No. DF-09-18237

FILED
2015 OCT 23 AM 9: 28
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE 256th |
| | § | |
| ██ AND ██ | § | JUDICIAL DISTRICT COURT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## MARY TILLOTSON'S *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*

TO THE HONORABLE JUDGE OF SAID COURT:

Respondent and Movant MARY TILLOTSON hereby files her Motion for Enforcement of Protective Order, *entered April 11, 2014*, and who shows in support the following:

### I.
### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under level 2, T.R.C.P. Rule 190.

### II.
### PARTIES

This Motion for Enforcement of Protective Order is brought by MARY TILLOTSON ("MARY TILLOTSON" or "Movant"), Petitioner in the above-captioned cause numbers, who is the mother of ██████ and ████████ (collectively, hereinafter sometimes referred to as the "children"). BRYAN ROWES ("BRYAN ROWES" or "Petitioner") is Respondent in the pending proceeding. He is also the father of ████████ and ████████.

### III.
### CHILDREN

The following children, who are under the continuing jurisdiction of the 256th Judicial District Court of Dallas County, Texas, are the subjects of this suit: ████████ and ████████ ████.

### IV.
### MANAGING CONSERVATORSHIP

Pursuant to the ORDER IN SUIT AFFECTING PARENT CHILD RELATIONSHIP, entered March 6, 2012, MARY TILLOTSON and BRYAN ROWES were appointed Parent Joint Managing Conservators of the children.

## V.
## JURISDICTION

This Court has continuing, exclusive jurisdiction of this case as a result of prior proceedings.

## VI.
## SERVICE AND NOTICE

The party entitled to notice is BRYAN ROWES. BRYAN ROWES may be served with process in this matter in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving him at his place of residence at ███████████████████, or at any other place he may be found.

## VII.
## ORDERS TO BE ENFORCED

MARY TILLOTSON seeks to enforce the PROTECTIVE ORDER that BRYAN ROWES has intentionally, willfully and contemptuously violated subsequent to it being entered. BRYAN ROWES has violated in various respects the PROTECTIVE ORDER, *entered April 17, 2014.*

## A.
## PROTECTIVE ORDER

On April 17, 2014, in Cause No. DF-09-18237, styled "In the Interest of ███████ ███████ and ███████████████, Children, Children," in the 256th Judicial District Court of Dallas County, a **PROTECTIVE ORDER** was entered in this Court that stated in relevant part as follows:

"Orders

"IT IS ORDERED that Respondent, BRYAN ROWES, is:

"Prohibited from communicating directly with MARY TILLOTSON in a threatening or harassing manner.

"On a finding of good cause, prohibited from communicating in any manner with MARY TILLOTSON, except through Respondent's attorney or a person appointed by a Court, except Our Family Wizard related to the children.

"Prohibited from going to or near, or within 500 feet of, any location where MARY TILLOTSON is known by Respondent, BRYAN ROWES, to be and from remaining within 500 feet after Respondent, BRYAN ROWES becomes aware of MARY TILLOTSON's presence.

MARY TILLOTSON'S *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*
Pg. 2

"Prohibited from going to or near MARY TILLOTSON's employment addresses or where MARY TILLOTSON normally resides at ██████████, ████████████."

...

"Effective Period

"This Order shall continue in full force and effect until April 10, 2016."

"Attorney's Fees

The Court finds that BRYAN ROWES should be assessed Five Thousand Dollars and no Cents ($5,000.00) as attorney's fees for the services of Frederick S. Adams, JR. IT'S ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of Five Thousand Dollars and No Cents ($5,000.00) for legal services rendered with post judgment interest thereon. The judgment, for which let execution issue, is awarded against BRYAN ROWES, which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest paid ..." (emphasis added)

The above provisions may be found on pages two (2) through three (3) in the **PROTECTIVE ORDER**. A true and correct copy of the **PROTECTIVE ORDER** is attached as Exhibit A and incorporated by reference the same as if fully copied and set forth at length. *See attached exhibit "A."*

## A1.

BRYAN ROWES has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the **PROTECTIVE ORDER**. More particularly, BRYAN ROWES has committed separate violations of the order described in the **PROTECTIVE ORDER** as follows:

Violation 1.   On May 28 2014, at 8:30A.M., BRYAN ROWES violated the **PROTECTIVE ORDER**, by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES, specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glared at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the **PROTECTIVE ORDER**. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

Violation 2. On May 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 3. On June 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 4. On July 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00

Violation 5. On August 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 6. On September 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 7. On October 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 8. On November 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 9. On December 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 10. On January 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 11. On February 1, 201, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 12. On March 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 13. On April 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 14. On May 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 15. On June 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 16. On July 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 17. On August 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 18. On September 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 19. On October 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 20. On March 5, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by going to MARY TILLOTSON's place of employment located at Children's Medical Hospital.

Violation 21. On March 28, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the **PROTECTIVE ORDER** was granted.

Violation 22. On or about September 25, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the **PROTECTIVE ORDER** was granted.

Movant MARY TILLOTSON was the Applicant/Petitioner and BRYAN ROWES was the Respondent in the above-referenced proceeding.

## VIII.
## REQUESTS

(a) Movant requests that Respondent be *held in contempt, jailed,* and *fined for each of the remaining violations detailed above.*

(b) Movant believes, based on the conduct of Respondent, that Respondent *will continue to fail to comply* with the orders set forth above. Movant requests that Respondent be held in contempt, jailed, and fined for each failure to comply with the orders of the Court from the date of this filing to the date of the hearing on this motion.

(c) Movant, MARY TILLOTSON, requests that, if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on Respondent and giving Respondent a reasonable time within which to comply.

(d) Movant, MARY TILLOTSON, requests that the Court find that since the last hearing BRYAN ROWES has engaged in an "incident" negating the parties' agreement, and subsequent order of the Court, that BRYAN ROWES's possession of the children be restored pursuant to the prior order dated March 6, 2012.

(e) Movant, MARY TILLOTSON, requests that BRYAN ROWES provide proof of counseling compliance as a condition precedent for all periods of possession to be exercised.

## IX.
## ATTORNEY'S FEES AND EXPENSES

It was necessary for Movant to secure the services of NACE & MOTLEY, L.L.P., lawyers duly licensed and practicing in the State of Texas, to preserve, protect and defend Movant's rights and the children. Respondent BRYAN ROWES should be ordered to pay reasonable attorneys' fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against Respondent; or, in the alternative, reasonable attorneys' fees, expenses, and costs should be taxed as costs and should be ordered paid directly to the undersigned attorney, who may enforce the order in the attorney's own name.

Movant requests postjudgment interest as allowed by law.

## PRAYER

Movant prays that the Court grant its Motion for Enforcement and, specifically, that Respondent be held in contempt and punished as requested, that a judgment be granted for attorney's fees, and costs or order a bond or security, that the Court clarify any part of its prior order found not specific enough to be enforced by contempt, for attorney's fees, expenses, costs, and interest, and for all further relief authorized by law.

Respectfully submitted,

NACE & MOTLEY, L.L.P.
100 Crescent Court
7th Floor
Dallas, Texas 75201
Tel: (214) 4598289
Fax: (214) 2424333

By:/s/ Bradford Nace
State Bar No. 24007726
bnace@nacemotley.com
Attorney for Movant
MARY TILLOTSON

## CERTIFICATE OF SERVICE

In addition to serving BRYAN ROWES with service of process, the undersigned certifies that the foregoing document will be served on his counsel of record, PAULA BENNETT, in accordance with the Texas Rules of Civil Procedure.

/s/ Bradford Nace

NO. 09-18237

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ▮▮▮▮▮▮ | § | 256TH JUDICIAL DISTRICT |
| AND | § | |
| ▮▮▮▮▮▮ | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

### PROTECTIVE ORDER

On **APRIL  11**_____, 2014, the Court heard the Application of *MARY*

*TILLOTSON* for a Protective Order.

#### Appearances

Applicant, *MARY TILLOTSON*, appeared in person and through attorney of record,

FREDERICK S. ADAMS, JR., and announced ready.

Respondent, *BRYAN ROWES*, appeared in person and announced ready.

#### Jurisdiction

The Court, after examining the record and hearing the evidence and argument of counsel,

finds that all necessary prerequisites of the law have been satisfied and that this Court has

jurisdiction over the parties and subject matter of this case.

#### Findings

The Court finds that *BRYAN ROWES* has engaged in conduct violative of Texas Penal

Code Section 42.072.  The Court finds that the following protective orders are for the safety and

welfare and in the best interest of Applicant and are necessary for the protection of Applicant.

#### "Protected Person"

In this order, "Protected Person" means Applicant

---

## Orders

IT IS ORDERED that Respondent, *BRYAN ROWES*, is:

Prohibited from committing family violence, as defined by section 71.004 of the Texas Family Code.

Prohibited from communicating directly with *MARY TILLOTSON* in a threatening or harassing manner.

Prohibited from communicating a threat through any person to *MARY TILLOTSON*

On a finding of good cause, prohibited from communicating in any manner with *MARY TILLOTSON* except through Respondent's attorney or a person appointed by the Court, except Our Family Wizard related to the children.

Prohibited from going to or near, or within 500 feet of, any location where *MARY TILLOTSON* is known by Respondent, *BRYAN ROWES* to be and from remaining within 500 feet after Respondent, *BRYAN ROWES* becomes aware of *MARY TILLOTSON* presence.

Prohibited from going to or near *MARY TILLOTSON*'s employment addresses or where *MARY TILLOTSON* normally resides at ███████████████████

Prohibited from possessing a firearm or ammunition unless Respondent, *BRYAN ROWES* is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Respondent's license to carry a concealed handgun issued under subchapter H, chapter 411, of the Texas Government Code is suspended.

## Attorney's Fees

The Court finds that *BRYAN ROWES* should be assessed *Five Thousand Dollars and No Cents* ($5,000.00) as attorney's fees for the services of FREDERICK S. ADAMS, JR.  IT IS

---

*Protective Order*                                                           *Page 2*

ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of *Five Thousand Dollars and No Cents* ($5,000.00) for legal services rendered with post judgment interest thereon. The judgment, for which let execution issue, is awarded against *BRYAN ROWES*, which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest is paid in accordance with Exhibit "A" hereof which is incorporated herein at 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

## *Fees, Charges, and Expenses*

IT IS ORDERED that *BRYAN ROWES* shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent, *BRYAN ROWES* shall pay *Sixteen Dollars and No Cents* ($16.00) to the clerk of this Court on or before May 1, 2014 at Dallas County Courthouse, 600 Commerce Street, Dallas, Texas 75202, by cash, cashier's check, or money order.

## *Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

## *Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court to the chief of police of the municipality of Dallas, Texas.

## *Effective Period*

This order shall continue in full force and effect until April 10, 2016.

*Warnings:*

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM

OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PUNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES. THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWEVER, REMAINS UNLAWFUL AND VIOLATES THE THERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES. THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.

SIGNED on __APR 1 7 2014__

Associate Judge
254th District Court

*JUDGE PRESIDING*

---

*Information about Respondent to Aid Law Enforcement Officers:*

Name: **BRYAN WILLIAM ROWES**

Home address: ███████████████

Home telephone number: Cell

Work address: None

Work telephone number: None

Date of birth: ███████████

Color of eyes: BROWN

Color of hair: Black

Height: 5' 8"

Weight: 150

Sex: Male

Race: Caucasian

Personal Descriptors: Scar Above left eye

Social Security number: ████████████

Driver's license or identification number and issuing state: TX DL# ███████

4839-0394-6010, v. 1

---

No. DF-09-18237

| IN THE INTEREST OF | § | IN THE 256th |
| | § | |
| ▮▮▮▮▮ AND ▮▮▮▮▮ | § | JUDICIAL DISTRICT COURT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## ORDER HOLDING BRYAN ROWES IN CONTEMPT FOR VIOLATION OF APRIL 11, 2014 PROTECTIVE ORDER, AND FOR COMMITMENT TO COUNTY JAIL

On this day, the Court heard Movant's Motion for Enforcement of April 11, 2014 Protective Order.

## APPEARANCES

Movant, KATY TILLOTSON, appeared in person and through attorney of record, BRADFORD NACE, and announced ready for trial. BRYAN ROWES appeared through attorney of record, PAULA BENNETT, and announced ready for trial.

## JURISDICTION & JURY

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction over the subject matter and the parties in this case. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

## RECORD

The record of testimony was duly reported by the court reporter for the 256th Judicial District Court.

## FINDINGS

The Court finds that on April 17, 2014, in Cause No. DF-09-18237, styled "In the Interest of ▮▮▮▮▮ and ▮▮▮▮▮, Children," in the 256th Judicial District Court of Dallas County, a **PROTECTIVE ORDER** was entered in this Court that stated in relevant part as follows:

"**Orders**

"**IT IS ORDERED that Respondent, BRYAN ROWES, is:**

"**Prohibited from communicating directly with MARY TILLOTSON in a threatening or harassing manner.**

ORDER HOLDING BRYAN ROWES IN CONTEMPT FOR VIOLATION OF APRIL 11, 2014 PROTECTIVE ORDER, AND FOR COMMITMENT TO COUNTY JAIL
Pg. 1

"On a finding of good cause, prohibited from communicating in any manner with MARY TILLOTSON, except through Respondent's attorney or a person appointed by a Court, except Our Family Wizard related to the children.

"Prohibited from going to or near, or within 500 feet of, any location where MARY TILLOTSON is known by Respondent, BRYAN ROWES, to be and from remaining within 500 feet after Respondent, BRYAN ROWES becomes aware of MARY TILLOTSON's presence.

"Prohibited from going to or near MARY TILLOTSON's employment addresses or where MARY TILLOTSON normally resides at ██████████, ██████████.

...

"Effective Period

"This Order shall continue in full force and effect until April 10, 2016."

That following the entry of the APRIL 11, 2014 **PROTECTIVE ORDER**, Respondent BRYAN ROWES violated said **PROTECTIVE ORDER** as set forth herein.

The above provisions are found on pages two (2) through three (3) in the **PROTECTIVE ORDER**.

The Court granted a directed verdict on the following violations:

Violation 20. On March 5, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by going to MARY TILLOTSON's place of employment located at Children's Medical Hospital.

Violation 22. On or about September 25, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the **PROTECTIVE ORDER** was granted.

The Court proceeded forward with regard to violations 1 & 21 and in accordance therewith made the following findings: that Respondent BRYAN ROWES has violated the APRIL 11, 2014 **PROTECTIVE ORDER** as follows:

## CONTEMPT FINDINGS AND FINDINGS ON ARREARAGES

The Court finds that BRYAN ROWES has violated the APRIL 11, 2014 **PROTECTIVE ORDER and is therefore in CIVIL/CRIMINAL CONTEMPT**. More particularly, BRYAN

ROWES has committed separate violations of the order described in the **PROTECTIVE ORDER** as follows:

Violation 1.　On May 28 2014, at 8:30A.M., BRYAN ROWES violated the **PROTECTIVE ORDER**, by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES, specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glared at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the **PROTECTIVE ORDER**. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

Violation 21.　On March 28, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the **PROTECTIVE ORDER** was granted.

The Court finds that Respondent BRYAN ROWES violated the **PROTECTIVE ORDER** as set forth herein and on the dates as set out above and that Respondent BRYAN ROWES is guilty of a separate act of contempt for each such separate violation.

The Court denies attorney's fees in this case.

## RELIEF GRANTED

IT IS ADJUDGED that Respondent, BRYAN ROWES, is in contempt for violations 1 & 21 enumerated above.

## CIVIL/CRIMINAL CONTEMPT

IT IS ORDERED that punishment for violations 1 & 21 enumerated above is assessed at a **fine of five hundred dollars ($500.00)** to be paid to **Dallas County Child Support Office** located at 600 Commerce Street, Dallas, Texas 75202 within **ninety (90) days of the date of this judgment** and confinement in the county jail of Dallas County, Texas, for a period of **thirty (30) days**.

IT IS THEREFORE ORDERED that Respondent BRYAN ROWES is committed to the county jail of Dallas County, Texas, for a period of **thirty (30) days**.

ORDER HOLDING BRYAN ROWES IN CONTEMPT FOR VIOLATION OF APRIL 11, 2014
PROTECTIVE ORDER, AND FOR COMMITMENT TO COUNTY JAIL
Pg. 3

IT IS FURTHER ORDERED that Respondent BRYAN ROWES not be given good conduct time credit for time spent in the county jail.

## ISSUANCE OF PROCESS

IT IS ORDERED that all writs and other process necessary for enforcement of this order be issued.

## RELIEF NOT GRANTED

All relief requested and not expressly granted is denied.

**DEC 1 0 2015**

SIGNED on _____.

_____
JUDGE PRESIDING

No. DF-09-18237

| IN THE INTEREST OF | § | IN THE 256th |
|---|---|---|
|  | § |  |
| ███████ AND ███████ | § | JUDICIAL DISTRICT COURT |
|  | § |  |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## AMENDED ORDER HOLDING BRYAN ROWES IN CONTEMPT FOR VIOLATION OF APRIL 17, 2014 PROTECTIVE ORDER, AND FOR COMMITMENT TO COUNTY JAIL

On this day, the Court heard Movant's Motion for Enforcement of April 17, 2014 Protective Order.

### APPEARANCES

Movant, KATY TILLOTSON, appeared in person and through attorney of record, BRADFORD NACE, and announced ready for trial. BRYAN ROWES appeared through attorney of record, PAULA BENNETT, and announced ready for trial.

### JURISDICTION & JURY

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction over the subject matter and the parties in this case. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

### RECORD

The record of testimony was duly reported by the court reporter for the 256th Judicial District Court.

### FINDINGS

The Court finds that on April 17, 2014, in Cause No. DF-09-18237, styled "In the Interest of ███████ and ███████, Children," in the 256th Judicial District Court of Dallas County, a **PROTECTIVE ORDER** was entered in this Court that stated in relevant part as follows:

"**Orders**

"**IT IS ORDERED that Respondent, BRYAN ROWES, is:**

"**Prohibited from communicating directly with MARY TILLOTSON in a**

AMENDED ORDER HOLDING BRYAN ROWES IN CONTEMPT FOR VIOLATION OF APRIL 17, 2014 PROTECTIVE ORDER, AND FOR COMMITMENT TO COUNTY JAIL
Pg. 1

threatening or harassing manner.

"On a finding of good cause, prohibited from communicating in any manner with MARY TILLOTSON, except through Respondent's attorney or a person appointed by a Court, except Our Family Wizard related to the children.

"Prohibited from going to or near, or within 500 feet of, any location where MARY TILLOTSON is known by Respondent, BRYAN ROWES, to be and from remaining within 500 feet after Respondent, BRYAN ROWES becomes aware of MARY TILLOTSON's presence.

"Prohibited from going to or near MARY TILLOTSON's employment addresses or where MARY TILLOTSON normally resides at ██████████,
██████████

...

"Effective Period

"This Order shall continue in full force and effect until April 10, 2016."

That following the entry of the APRIL 17, 2014 **PROTECTIVE ORDER**, Respondent BRYAN ROWES violated said **PROTECTIVE ORDER** as set forth herein.

The above provisions are found on pages two (2) through three (3) in the **PROTECTIVE ORDER**.

The Court granted a directed verdict on the following violations:

Violation 20. On March 5, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by going to MARY TILLOTSON's place of employment located at Children's Medical Hospital.

Violation 22. On or about September 25, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the **PROTECTIVE ORDER** was granted.

The Court proceeded forward with regard to violations 1 & 21 and in accordance therewith made the following findings: that Respondent BRYAN ROWES has violated the APRIL 17, 2014 **PROTECTIVE ORDER** as follows:

## CONTEMPT FINDINGS AND FINDINGS ON ARREARAGES

The Court finds that BRYAN ROWES has violated the APRIL 17, 2014 **PROTECTIVE ORDER and is therefore in CIVIL/CRIMINAL CONTEMPT**. More particularly, BRYAN ROWES has committed separate violations of the order described in the **PROTECTIVE ORDER** as follows:

Violation 1. On May 28 2014, at 8:30A.M., BRYAN ROWES violated the **PROTECTIVE ORDER**, by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES, specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glared at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the **PROTECTIVE ORDER**. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

Violation 21. On March 28, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER**, by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the **PROTECTIVE ORDER** was granted.

The Court finds that Respondent BRYAN ROWES violated the **PROTECTIVE ORDER** as set forth herein and on the dates as set out above and that Respondent BRYAN ROWES is guilty of a separate act of contempt for each such separate violation.

The Court denies attorney's fees in this case.

## RELIEF GRANTED

IT IS ADJUDGED that Respondent, BRYAN ROWES, is in contempt for violations 1 & 21 enumerated above.

## CIVIL/CRIMINAL CONTEMPT

IT IS ORDERED that punishment for violations 1 & 21 enumerated above is assessed at **a fine of five hundred dollars ($500.00)** to be paid to **Dallas County Child Support Office** located at 600 Commerce Street, Dallas, Texas 75202 within **ninety (90) days of the date of this judgment** and confinement in the county jail of Dallas County, Texas, for a period of **thirty (30) days**.

IT IS THEREFORE ORDERED that Respondent BRYAN ROWES is committed to the county jail of Dallas County, Texas, for a period of **thirty (30) days.**

IT IS FURTHER ORDERED that Respondent BRYAN ROWES not be given good conduct time credit for time spent in the county jail.

## ISSUANCE OF PROCESS

IT IS ORDERED that all writs and other process necessary for enforcement of this order be issued.

## RELIEF NOT GRANTED

All relief requested and not expressly granted is denied.

SIGNED on _____ **DEC 1 0 2015** _____ .

JUDGE PRESIDING

**ATTACHMENT AND COMMITMENT IN CONTEMPT**  Form 294-D/10-86

CAUSE NO. **DF-09-18237**

STYLE

**IN THEINTEREST OF**
~~\_\_\_\_\_ ROWES~~, **ET AL**
**CHILDREN**

SERVICE OFFICER: **BAILIFF**

| | |
|---|---|
| Clerk's fees | **$8.00** |
| Officer's fees collected | **$150.00** |
| Officer's fees not collected | $ |
| Costs not complied with | $ |
| Affidavit Inability to Pay | $ |

# THE STATE OF TEXAS

TO ANY SHERIFF OR ANY CONSTABLE OF THE STATE OF TEXAS _____ GREETINGS:

WHEREAS, it appearing that in the case of **KATY TILLOTSON**, Petitioner, and **BRYAN ROWES,** Respondent, NO. **DF-09-18237** , pending in the **256TH DISTRICT COURT** in and for Dallas County, Texas, that **BRYAN ROWES**, has been adjudged in contempt of this court for failure to obey an order heretofore entered herein, as the same appears of record in Vol. **7844, Page 529,** of the Minutes of said Court.

NOW, therefore, in obedience to an order of this Court made and entered on the **17th day of April, 2014** as shown on the Minutes of said Court.

YOU ARE HEREBY COMMANDED to take **BRYAN ROWES** into your custody and to commit said person to the jail of your county. In accordance with the certified copy of the Court's Order which is attached hereto and marked Exhibit "A" and incorporated herein by reference, you will safely keep said person until the fine of **$500.00 (PAID WITHIN 90 DAYS OF THIS JUDGEMENT)**assessed in said order is paid and until the imprisonment of **30 DAYS** days/months have been discharged. You will further safely keep said person until he has complied with any and all coercive requirements of said order until said person is otherwise legally discharged.

HEREIN FAIL NOT, but due return make of this writ within ninety days from the date hereof, showing how you have executed same.

WITNESS: FELICIA PITRE, Clerk of the District Courts, Dallas County, Texas.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at office in the City of Dallas,

**ON THIS THE 10TH DAY OF DECEMBER, 2015.**

Issued at request of:

**BRADFORD NACE**
**NACE & MOTLEY LLP**
**THE CRESCENT COURT**
**100 CRESCENT COURT 7TH FLOOR**
**DALLAS TX  75201**
**214-459-8289**

ATTEST:     FELICIA PITRE
Clerk of the District Courts
Dallas County, Texas

By _____ , Deputy
              **CARMEN MOORER**

---

OFFICER'S RETURN

Came to hand on the \_10 TH\_ day of \_DEC\_ , 20 \_15\_ , and executed on the \_10 TH\_ day of \_DEC\_ , 20 \_15\_ . Returned on this the \_10 TH\_ day of \_DEC\_ , 20 \_15\_ .

Officer \_Lupe Valdon Sheriff\_ County \_DALLAS\_

By \_EH. Duncan #771\_ Deputy

Fees.................................$ \_158 00\_

REPORTER'S RECORD

TRIAL COURT

Cause No. 09-18237-Z

| | |
|---|---|
| IN THE MATTER OF THE MARRIAGE OF | * IN THE DISTRICT COURT |
| | * |
| MARY TILLOTSON | * DALLAS COUNTY, TEXAS |
| AND | * |
| BRYAN ROWES | * 256TH JUDICIAL DISTRICT |

* * * MOTION FOR CONTEMPT * * *

On the 10th day of December, 2015, the testimony of said witnesses came on to be heard in the presence of a Judge, in the above-entitled and -numbered cause, and the following rulings were made by the Honorable David Lopez, Judge of the 256th Judicial District Court, held in Dallas, Dallas County, Texas:

A P P E A R A N C E S

MR. BRADFORD NACE
Attorney @ Law
SBOT NO. 24007726
100 Crescent Court, Fl 7
Dallas, Texas 75201
Office No. 214-459-8289
Fax No. 214-242-4333
    COUNSEL for MARY TILLOTSON

MS. PAULA BENNETT
Attorney @ Law
SBOT NO. 24064824
5950 Sherry Lane
Suite 800
Dallas, Texas 75225
Office No. 214-273-2400
Fax No. 214-273-2470
    COUNSEL for BRYAN ROWES

* * *

I N D E X

Proceedings  * * * * * * * * * * * * * * * * * * * * *   5

WITNESSES:
    MARY TILLOTSON
        Direct Examination
            By Mr. Nace* * * * * * * * * * * * * * * * *   7
        Cross-Examination
            By Ms. Bennett * * * * * * * * * * * * * * * *   23
        Redirect Examination
            By Mr. Nace* * * * * * * * * * * * * * * * * *   34
        Recross-Examination
            By Ms. Bennett * * * * * * * * * * * * * * * *   35

    BRAD NACE
        Direct Examination
            By Mr. Nace* * * * * * * * * * * * * * * * * *   37
        Cross-Examination
            By Ms. Bennett * * * * * * * * * * * * * * * *   37

Motion for Directed Verdict
    By Ms. Bennett * * * * * * * * * * * * * * * * * * *   39

Judge's Ruling on Direct Verdict* * * * * * * * * * *   41

    BRYAN ROWES
        Direct Examination
            By Ms. Bennett * * * * * * * * * * * * * * * *   41
        Cross-Examination
            By Mr. Nace* * * * * * * * * * * * * * * * * *   46

    PAULA BENNETT
        Direct Examination
            By Ms. Bennett * * * * * * * * * * * * * * * *   49

Judge's Ruling * * * * * * * * * * * * * * * * * * * *   51

Reporter's Certification * * * * * * * * * * * * * *   52

* * *

# E X H I B I T   I N D E X

**PETITIONER'S**

| EXHIBIT | DESCRIPTION | MARKED | OFFERED | ADMITTED |
|---------|-------------|--------|---------|----------|
| 1 | Motion for PO | 9 | 9 | 9 |
| 2 | Email from Our Family Wizard 3/28/15 | 12 | 13 | 13 |
| 4 | Email from Our Family Wizard 9/25/15 | 17 | 18 | 18 |
| 5 | Copy of Ltr sent to Southlake Address | 18 | 18 | 19 |
| 6 | Email from Our Family Wizard 3/30/15 | 21 | 21 | 21 |
| 8 | Email from Our Family Wizard 3/28/15 Not disclosed | 46 | 46 | 47 |

**RESPONDENT'S**

| EXHIBIT | DESCRIPTION | MARKED | OFFERED | ADMITTED |
|---------|-------------|--------|---------|----------|
| 1 | All Our Family Wizard Communication | 44 | 45 | 45 |
| 2 | P. Bennett's Fees | 50 | 50 | 51 |
| 3 | P. Bennett's CV | 50 | n/a | n/a |

* * * * *

P R O C E E D I N G S

THE COURT:  All right.  This is Cause Number 09-18237.  The Court's had an off the record regarding the motion for enforcement that is currently pending in this case and the attorney for the mother has indicated a nonsuit for Violations 2 through 19.  The Respondent has objected to nonsuit.

The Court is going to -- Anything else you want to say on that issue before I -- the Court is going to overrule that objection.  And therefore proceeding on Violations 1, 20, 21, and 22.

MS. BENNETT:  Could we still present evidence with respect to Violations 2 through 19, the attorney's fees issues since we had to prepare and all the way up to this point we've not been notified 2 through 19 would be nonsuited?

THE COURT:  Let me ask you this:  How much time are you going to need on -- I mean you've got essentially four violations here.

MS. BENNETT:  Half an hour a side for me. I'll go as quick as I can.

THE COURT:  And you, Counsel?

MR. NACE:  We can probably do this in twenty minutes for our side, Judge.

THE COURT:  Twenty minutes a side is the best

I got.  I got another case I got to hear after this.

MS. BENNETT:  Thank you, Your Honor.

MR. NACE:  May I keep my phone out so I have my timer on?

THE COURT:  Yes, certainly.  I'm going to do the same.

MR. NACE:  Would Your Honor like us here at counsel table or at the bench?

THE COURT:  Doesn't matter to me.  But I will tell you the Court -- I do have contempts in very short time --

MR. NACE:  May we approach the bench, Your Honor?

THE COURT:  Sure.  Okay.  You may proceed.

MR. NACE:  Thank you, Your Honor.  Please state your full name for the record?

MS. TILLOTSON:  Mary Catherine Tillotson.

THE COURT:  I'm sorry, did I swear everybody in?

MR. NACE:  No.

MS. BENNETT:  No.

THE COURT:  My fault.  Can you -- if you're going to testify, please raise your right hand.

(Whereupon witness was sworn).

MR. NACE:  Your Honor, I'm noticing that the

Respondent did not raise his right hand.

MS. BENNETT: He --

MR. ROWES: I was sworn in.

MS. BENNETT: I don't think you were sworn in today.

MR. ROWES: I was.

MS. BENNETT: Oh, you were? I'm sorry.

(Whereupon Respondent sworn in).

THE COURT: All right. You may proceed.

MARY K. TILLOTSON,

the witness hereinbefore named, being first duly cautioned and sworn to testify the truth, the whole truth and nothing but the truth, testified on her oath as follows:

DIRECT EXAMINATION

BY MR. NACE:

Q.    State your full name for the record.

A.    Mary Katherine Tillotson.

Q.    And you are the movant on a Motion for Enforcement of a Protective Order filed on October 23, 2015, correct?

A.    Yes, sir.

Q.    Respondent, Bryan Rowes, is your ex-husband?

A.    Yes.

Q.    Father of your two children, ██ and ████ ████?

A.    Yes, sir.

Q.    And you notice he is in this courtroom today, present before the court and in front of the bench, correct?

A.    Yes.

Q.    Would you identify an article of clothing that he is wearing?

A.    A blazer with a striped tie.

MR. NACE:    Ask the Court to take notice that my client has recognized Mr. Rowes in the courtroom today.

THE COURT:    Yes, sir.

Q.    (By Mr. Nace) All right.    You had a protective order heard and issued before the Court on April 11, 2014, correct?

A.    Yes.

Q.    Is that order still in force and effect?

A.    Yes.

Q.    And specifically today we're only trying to enforce distinct and separate issues, Numbers 1, 20, 21, and 22 pursuant to the protective order issued on April 11, 2014, correct?

A.    Correct.

MR. NACE:    And, Judge, we'd ask the Court to take judicial notice of the protective order on file dated April 11, 2014.

THE COURT: Yes, sir.

Q. (By Mr. Nace) Stated within there are certain prohibitions and specifically turning you to Page 2 on that protective order it states, it is ordered that Respondent, Bryan Rowes, is prohibited from communicating directly with Mary Tillotson in a threatening or harassing manner; do you see that?

A. Correct. Yes.

Q. And additionally prohibited from going to or near Mary Tillotson's employment addresses or where Mary Tillotson normally resides at █████████████████ ███, correct?

A. Correct.

Q. Effective period, this order shall continue in full force and effect April 10, 2016.

A. Yes.

Q. Correct?

A. Yes.

Q. Now, the summary of testimony is Petitioner's 1 a true and correct copy of that motion?

A. Yes.

MR. NACE: We will offer Petitioner's 1 as a summary.

MS. BENNETT: No objections.

THE COURT: Admitted.

Q.    (By Mr. Nace) Okay.  Cutting right to it, Violation 1, Page 3, A1 states, on May 28, 2014 at 8:30 a.m. Bryan Rowes violated the protectibr order going within 500 feet of a location where Mary Tillotson was known to be by Respondent Bryan Rowes, made eye contact with Mary Tillotson, glared at her menacingly and stood next to her. Do you see that?

A.    Yes.

Q.    Is all that information true?

A.    Yes.

Q.    And one provision that I did not read from the protective order is specifically Bryan Rowes, Page 2, is prohibited from going to or near or within 500 hundred feet of any location where Mary Tillotson is known by Respondent, Bryan Rowes, to be; do you see that?

A.    Yes.

Q.    But on that particular day he was within 500 feet, correct?

A.    Yes.

Q.    Tell the Court what happened following that interaction?

A.    I had to back up.  I started crying and the security officer saw me and came over.  It was in the courthouse.  And Judge Olvera heard it.

Q.    And this happened after the protective order

was issued in this case, correct?

A.      Yes.

Q.      And specifically, did you get on the elevator that day?

A.      No.

Q.      Stairs?

A.      I backed up and Bryan got on the elevator.

Q.      Okay.  And following that interaction, did Bryan do anything else within 500 feet of a location where you were known to be by him?

A.      Yes.  He knew I was going down to the basement.  He went to the down to the basement and he walked by twice.  Fred Adams was there and testified about it.

MS. BENNETT:  Objection, Your Honor, hearsay. Fred Adams isn't here so she can't say what Fred Adams testified about.

MR. NACE:  It's not offered for the truth of the matter asserted, Judge.  There's testimony -- well, evidence before the Court that he was there.

THE COURT:  Overruled.

Q.      (By Mr. Nace) Okay.  Did you feel threatened on that particular day by Mr. Rowes?

A.      Yes.

Q.      Turning your attention to Violation 20 on

March 5th, this is at Page 5 of your motion, on March 5, 2015 Bryan Rowes violated the protective order by going to Mary Tillotson's place of employment located at Children's Medical Hospital, correct?

A.    Correct.

Q.    With regard to Mr. Rowes and his appearance at your place of employment, where were you employed on March 5, 2015?

A.    Children's Medical Center.

Q.    Where is that located?

A.    1935 Medical District Drive.

Q.    Now, pursuant to the protective order the mode of communication is suppose to be by Our Family Wizard between you and Bryan, correct?

A.    Correct.

Q.    Has he also violated that as well since the entry of the protective order?

A.    I don't believe so.

Q.    With regard to Our Family Wizard had he sent you communications about his appearance at your place of employment on March 5, 2015?

A.    Yes.  And mentioned several times.  I only have proof of one.

Q.    So turning your attention to Petitioner's 2, I'm going to hand you an exhibit dated March 28, 2015.  Is

this a true and correct copy of the e-mail that you received from Our Family Wizard from Bryan Rowes?

A.     Yes.

Q.     Okay.

MR. NACE:  We will offer Petitioner's 2.

MS.  BENNETT:  No objection.

THE COURT:  Admitted.

Q.     (By Mr. Nace) Turning your attention quickly to the last sentence of that March 28, 2015 letter from Bryan Rowes, it states, "I went to the hospital".  Can you read that?

A.     Yes.

Q.     And that's the hospital where you work, correct?

A.     Yes.

Q.     In fact in the first paragraph he even states, "you were present during my first interactions", correct?

A.     Correct.  That was prior to --

Q.     Okay.  So that's prior to the protective order.  I went to the hospital is after the protective order, correct?

A.     Correct.

MR. NACE:  I will tender, Your Honor.

Q.     (By Mr. Nace) Violation 21 on March 28, Bryan

Rowes violated the protective order by communicating with Mary Tillotson directly when he sent her threatening or harassing correspondence e-mail stating he went to her place of employment on two separate occasions after the protective order was granted.  Do you see that?

A.     Yes.

Q.     Tell me about that?

A.     He just sent messages stating that he had been there --

MS. BENNETT:  May Your Honor --

THE WITNESS:   -- on multiple occasions that he had gone to Children's.

MS. BENNETT:  Objection, Your Honor, we'd ask for the -- the best evidence rule states that she has to put forth those e-mails showing that he stated those things on multiple occasions.  In fact it's only the March 28th e-mail that's in question at this point.  And if she's saying that in fact he said this on multiple times, I'd like to see copies of multiple Our Family Wizard messages.

THE COURT:  Do you have that?

THE WITNESS:  I think it mentions it several times in there.

MR. NACE:  Is this on my time?

THE COURT:  Well, initially it wasn't and now that it's returned to you it is.

MR. NACE: It does, Your Honor. Specifically it says that I again brought ███'s birth certificate to the medical records department and had a conversation with management at the department. I explained that I had already brought ███'s birth certificate once and explained my concern that you, as a social worker, at the hospital would have access to the file so it does say it.

MS. BENNETT: Just to clarify, Your Honor, the testimony was that in fact he had sent multiple messages. That's one message that stated that he went to Children's Hospital; not multiple messages. I asked the Court to have them provide proof of other message stating the same.

MR. NACE: This is not Voir Dire, Judge. If you want to cross-examine my client, that's proper.

THE COURT: Yes, sir.

Q. (By Mr. Nace) Petitioner's 3, what is it?

A. This is a document that was signed by him at Children's Medical Center on March 5, 2015.

Q. Is that a true and correct copy?

A. Yes.

Q. Do you recognize Bryan Rowes' signature on that document?

A. Yes.

Q. You were previously married to that man,

right?

A.     Yes.

Q.     Is that his signature Bryan Rowes' signature and nobody else to your knowledge?

A.     It is his.

MR. NACE:  We'll offer 3.

MS. BENNETT:  Your Honor, we object insofar as it needs to be properly authenticated.  It's not properly authenticated.  They would need a business record affidavit on file 14 days prior to today or we need a sponsoring custodian or record to prove up any record of Children's Hospital if in fact that's what they are.

MR. NACE:  Judge, we're not trying to prove it up as a business record.  We're proving it up as his signature.

MS. BENNETT:  Your Honor --

MR. NACE:  Or a document.

MS. BENNETT:  Your Honor, they're not asking the court to have you take a look at the document for the signature because we're not proving up signatures on any other document.  So it's not a document that's going to be used later to prove up a signature.  It's a document that is being used to prove whether or not Mr. Rowes was in fact at Children's Hospital on a given day.

THE COURT:  Sustained.

Q.      (By Mr. Nace) Turn your attention to Violation 22, on or about September 25, 2015 Bryan Rowes violated the protective order by communicating with Mary Tillotson directly when he sent her a threatening or harassing correspondence to Mary Tillotson's residence after the protective order was granted.  Do you see that?

A.      Yes.

Q.      On that specific date, September 25, 2015, did you forward Mr. Rowes an e-mail by Our Family Wizard with regard to a change of residence?

A.      Yes.

Q.      Did Mr. Rowes respond?

A.      I believe so.

Q.      Okay.  With regard to the e-mail that you had sent Mr. Rose on September 25, I'll hand you Petitioner's 4.  Is that a true and correct copy of the e-mail you sent by Our Family Wizard to Mr. Rowes?

A.      Yes.

Q.      And specifically you stated in that e-mail at 10:38 a.m, "I really have more important things", here is your address ███████████████████████████████, correct?

A.      Correct.

Q.      Below you ask, again, I am directly asking what is your plan to repay the judgment, correct?

A.      Correct.

Q.      You were granted a judgment of $95,000.00 in this case, correct?

A.      Correct.

Q.      I've asked three times now and received no response.  Are you going to pay weekly, monthly, lump sum, and if so how much and what time?

A.      Correct.

        MR. NACE:  Offer No. 4.

        MS. BENNETT:  No objection.

        THE COURT:  Admitted.

Q.      (By Mr. Nace) Now, in response did you receive a letter on -- well, following September 25, 2015 at your home at your residence at your new address?

A.      Yes.

Q.      Okay.  And is this a fair and accurate depiction of the letter you received?

A.      Yes.

Q.      True and correct copy?

A.      Yes.

        MR. NACE:  Offer 5.

        MS. BENNETT:  Your Honor, if I can we would object to it being a true and correct copy.  This is the document that she pertains and pursues to put him in jail.  And in this case we believe that the original should be

produced. So we object to a duplicate.

THE COURT: Overruled.

Q. (By Mr. Nace) Specifically that -- we'll let the Court read exactly what that --

THE COURT: No. 5 is admitted.

Q. (By Mr. Nace) This letter says what it says, right?

A. Yes.

Q. Now, continuing course of conduct, do you believe there has been one in this case?

MS. BENNETT: Objection, Your Honor. This is testimony that would be -- it would be in violation of Texas Rules of Evidence 404, proof of character based on what she alleges to be acts done in conformity with prior acts.

THE COURT: Sustained.

Q. (By Mr. Nace) With regard to had you received a prior letter in the underlined case?

MS. BENNETT: Objection, Your Honor, once again, this goes to the same objection, Texas Rule of Evidence 404 states that you can't go backward. He needs to prove up a crime if in fact one has occurred via this letter.

Q. (By Mr. Nace) Anybody else to your knowledge --

THE COURT:  Sustained.

Q.    (By Mr. Nace) -- have your address on ████

████████  besides your ex-husband as of September 25, 2015?

A.    My mother had it, my husband, you.

Q.    (By Mr. Nace) Anybody else?

A.    Judge Lopez.

MS. BENNETT:  Objection, Your Honor, nonresponsive.  It was a yes or no question.

THE COURT:  Sustained.

THE WITNESS:  I'm sorry.  Yes.

Q.    (By Mr. Nace) Okay.  And this is a sex offender letter, dear resident, right?

A.    Yes.

Q.    Are you a sex offender?

A.    No.

Q.    Can you think of any other person besides Mr. Rowes who would have produced that letter or sent that letter?

A.    No.

Q.    Do you believe that letter was sent in direct response to your e-mail to him earlier that day when you informed him of your address --

A.    Yes.

Q.    -- change?  And that letter was sent on

September 25, 2015, correct?

A.      Correct.

Q.      Did you incur attorney's fees in this case?

A.      Yes.

Q.      You had a fee agreement with me, correct?

A.      Yes.

Q.      And you're aware that my fees exceeded $5,000.00 today for this matter alone, correct?

A.      Yes.

Q.      With regard to Petitioner's 6, is this another e-mail that you received from Mr. Rowes on March 30, 2015?

A.      Yes.

Q.      Okay.  And this is after his appearance at the hospital, correct?

A.      Correct.

Q.      Now --

        MR. NACE:  We'll offer Petitioner's 6.

        MS. BENNETT:  No objection.

        THE COURT:  Admitted.

Q.      (By Mr. Nace)  And he says here, Dear Katy, I have been reviewing ███'s medical file, right?

A.      Correct.

Q.      It's only one place he could have gotten that, correct?

A.      Correct.

Q.      And I do not see anything in there about your drinking and smoking while pregnant.  How long ago had you been pregnant as of March 30, 2015?

A.      I was not pregnant.

Q.      I'm sorry?  How many years ago were you pregnant?  Last pregnant?

A.      Like twelve.  Well, with ███ it had been twelve.

Q.      So twelve years later he's referencing something about when you were pregnant, right?

A.      Yes.

Q.      Now, the protective order says that he, Bryan Rowes, is prohibited from communicating directly with you in a threatening or harassing manner, right?

A.      Yes.

Q.      Was that threatening or harassing to you?

A.      Yes.

Q.      Mr. Rowes also filed, in this case, an ex parte motion to modify and motion to enforce?

A.      Yes.

Q.      And motion to modify the protective order as to his ability to go to the hospital where you work, correct?

A.      Correct.

Q.      That motion was not granted by this Court, correct?

A.      Correct.

MR. NACE:   I'll pass my client.

MS. BENNETT:   Okay.

## CROSS-EXAMINATION

BY MS. BENNETT:

Q.      Mrs. Tillotson, if you could take a look -- I don't have the exhibits -- If we could take a look at your petition.   Let's go ahead and take a look at your petition.   Thank you.   Do you have a copy of your petition? Can you -- can you give her a copy, please.

A.      Okay.

Q.      Okay.   With respect to Violation 1, A1 on Page 3, you state that you told Bryan that he was in violation of the protective order.   Did you do that at the elevator bank?

A.      Yes.

Q.      Okay.   And that took place in the basement -- or on the ground floor of the courthouse, correct?

A.      Yes.

Q.      And on May 28, 2014 you had a hearing set in this family law matter, did you not?

A.      I did.

Q.      Are you under the assumption that he cannot

appear at his own hearing in the cases you have against him?

A.     No.   I just asked him to back up.

Q.     Okay.   So he has right to --

MS. BENNETT:   Objection, nonresponsive after no.

THE COURT:   Sustained.

Q.     (By Ms. Bennett) So he has a right to be here to defend himself on May 28, 2014, doesn't he?

MR. NACE:   Object, Your Honor, asking my client for a legal conclusion she cannot answer.

THE COURT:   Sustained.

Q.     (By Ms. Bennett) And you -- Isn't it true that you both arrived at the elevator bank on the first floor after going through security?

A.     Correct.

Q.     And isn't it true that he jumped on the first elevator that came to go downstairs?

A.     I don't recall.

Q.     Okay.   Do you recall meeting him at the elevator?

A.     I was standing there.

Q.     Okay.   Do you recall that he got on the elevator, the first elevator that came?

A.     I don't remember.

Q.      So isn't it true he was in your space for less than a minute before the elevator arrived?

A.      I -- I don't know.

Q.      Well, if I were bringing a lawsuit against somebody --

A.      I know he walked up.  I backed up.

Q.      -- stating I wanted to put them in jail, I would understand that that was a very serious allegation.  So, again, I'm asking you --

A       It is.  I backed up.  I said, I have a protective order against you.  I backed up.

Q.      And he got on the elevator, didn't he?

A.      Yeah.

Q.      So the protective order states, if you could turn to the protective order, which is attached to your petition, it states that he is prohibited from going to or near or within 500 feet of any location that you are known to be by the Respondent and remaining, remaining within 500 feet after the Respondent becomes aware of your presence.  He didn't remain in your presence, did he?

A.      He did.  He said I'm waiting for the elevator to open.

Q.      All of thirty seconds?

A.      It's a lot to me.

Q.      And he should be put in jail?

A.    And I was crying.  Yes.

Q.    And in fact, you've made a lot allegations that where you show up, he has to leave, don't you? Isn't that part of your regular act to say where -- Strike that.  On November 3, 2015, your husband has a case pending against Mr. Rowes, is that not true?

A.    That is true.

Q.    And you are not a party to that suit?

A.    Correct.

Q.    And it was a deposition that was requested by Bryan's lawyer of Joe Tillotson, your husband, correct?

A.    Uh-huh.

Q.    And Bryan showed up --

MR. NACE:  Object to the relevance.

MS. BENNETT:  The relevance is that she's using the protective order as a sword and not a shield. She shows up at -- they show up at the elevator. He has a right to be here --

THE COURT:  Overruled.

Q.    (By Ms. Bennett) And so in fact you showed up at that deposition, didn't you?

A.    Yes.  I had no idea he would be there.

MS. BENNETT:  Objection after yes.

THE COURT:  Sustained.

Q.    (By Ms. Bennett) And you're not a party to

that suit, are you?

A.     No.

Q.     And in fact you decided you weren't going to leave that day even though it was requested you leave so Bryan could stay at the deposition?

A.     True.

Q.     And you pulled out your phone and was going to call the police, weren't you?

A.     Yes.

Q.     And you told everybody there, I'm going to call the police because I have a protective order and he's violating it?

A.     Yes.

Q.     And in fact it was Bryan who left a deposition in his own case just to avoid a violation of a protective order?

A.     Yes.

Q.     Isn't that the same thing that happened at the elevator?

A.     No.

Q.     Okay.  On October --

A.     He's there; he intimidates me all the time. He sees me and he tries to scare me.

          MS. BENNETT:  Objection to everything after no.

THE COURT:  Sustained.

Q.    (By Ms. Bennett) On October 29, 2015 there was a visit for three hours at Bryan's house; isn't that true?

A.    Yes.

Q.    And in fact when you showed up Bryan was on his porch, correct?

A.    Correct.

Q.    And Bryan never left his porch that night, did he?

A.    No.

Q.    And in fact Nancy Stark walked the children to your car when you pulled up?

A.    Yes.

Q.    And when you pulled up, you stayed inside the car, didn't you?

A.    Yes.

Q.    And it was dark out that night, wasn't it?

A.    Yes.

Q.    And in fact --

MR. NACE:  Judge, I'm going to repeat my objection to relevance because she hasn't plead a violation for what is now being asked of her.

MS. BENNETT:  Judge, this goes to the relevance that she claims everything is harassing.  We're

standing here about to put him in jail for what she considers harassing.

THE COURT: Sustained.

Q. (By Ms. Bennett) So Bryan was at court that day for a hearing, correct?

A. (No response).

Q. Did you in fact have a hearing on May 28, 2014?

A. Was that the protective order hearing?

Q. May 28, 2014 did you have a --

A. We've had so many hearings I'm not sure exactly what date.

Q. You plead this in your pleading. So did you have a hearing on May 28th?

A. Yes.

Q. Violation 20. You didn't bring any proof today that you were working at Children's Hospital on May 5, 2015, did you?

A. No.

Q. And in fact nobody contacted you on May 5, 2000 and -- March 5, 2015 and stated that Bryan was in the building, did they?

A. He bypassed security so, no.

MS. BENNETT: Objection, nonresponsive.

Q. (By Ms. Bennett) Nobody contacted you?

A.    No.

Q.    And the letter on March 28, 2015 is the only statement in here that you alleged he communicated harassing with you is the fact that he stated he went to the hospital, is that the only statement in here that you allege as harassing?

A.    He harasses me all the time.

MS. BENNETT:  Objection, nonresponsive.

THE COURT:  Sustained.

Q.    (By Ms. Bennett) Is the only statement in the order --

A.    In that particular e-mail.

Q.    That's the only statement?

A.    Yes.

Q.    September 25, 2015 letter, you have no proof that my client sent that letter, do you?

A.    No.

Q.    And in fact on November 3, 2015 you were present at your husband's deposition, weren't you?

A.    Yes.

Q.    And in fact he stated that he didn't have any proof either, did he?  That in fact this letter was sent by Bryan?

A.    I don't remember.

Q.    Okay.  And in fact you testified a few

minutes earlier that you opened the letter, didn't you?

A.    No.

Q.    Okay.  Did you tell your son, ██, about this letter?

A.    Not initially.

Q.    Okay.  In fact you received the letter, isn't it true that you took your son in the back room and talked to him about the letter?

MR. NACE:  Objection, relevance.

THE WITNESS:  I saw the letter.

THE COURT:  Sustained.  Sustained.

MS. BENNETT:  Judge, it goes to her motive. Who has the -- who gets more bang for their buck for this letter being sent?  A guy who had his first visit in two years, one day prior, or somebody who wants to stop the visits in their entirety?  So her motive to upset the child is exactly what's at issue here.

MR. NACE:  Or his motive to upset the mother as he has for the last two years.

THE COURT:  I still sustain the objection.

Q.    (By Ms. Bennett) Okay.  With respect to your pleading, the requested relief, you're requesting that on Page 6 in your pleading that Bryan be held in contempt, jailed, and fined for each of the violations; is that true?

A.    Yes.

Q.     And in fact you put that in bold and underlined and italics, right?

A.     I didn't type it.

Q.     In fact this is your pleading, ma'am, correct?

A.     Correct.

Q.     And you're also requesting that he be provided -- you be provided records of Dr. Godbey; is that correct?

A.     Correct.

Q.     And you're asking that the Court find that there's an incident that Bryan has participated in so that you can keep his visitation at three hours per week; is that right?

A.     Yes.

Q.     Now, we provided you records, didn't we, yesterday showing that Bryan is in compliance with his treatment with Dr. Godbey, correct?

MR. NACE:  Actually, I object.

THE WITNESS:  I would --

MR. NACE:  Objection.  It calls for speculation in terms of compliance of what he has and hasn't complied with.

THE COURT:  Sustained.

Q.     (By Ms. Bennett) Did you review a letter that

state -- from Dr. Godbey yesterday stating he's in compliance with the weekly visits as well as working on the issues Dr. Albritton asked him to work on?

A.     That is what was stated, yes.

Q.     Thank you.   And in fact Bryan has paid you over $10,000.00 since we were here on September 3rd and he no longer owes child support arrearage; isn't that true?

A.     He's still in arrears.

MR. NACE:   Objection.

THE COURT:   What was the objection?

MR. NACE:   Relevance.

THE COURT:   Sustained.

Q.     (By Ms. Bennett) The protective order was drafted by your lawyer, correct?

A.     Correct.

Q.     And in fact, in the protective order it doesn't state what your employment addresses are, does it? Let's take a look at page --

A.     That is correct.

Q.     So in fact Bryan was not on notice to what your employment addresses were?

A.     He was.   I had sent him messages on --

MS. BENNETT:   Objection to everything after he was.

THE COURT:   Sustained.

MS. BENNETT: Pass the witness.

REDIRECT EXAMINATION

BY MR. NACE:

Q. Employment, with regard to May 5, 2015, had you been working that specific day at Children's?

A. I'm not sure.

Q. Do you recall the day of week?

A. I work -- I'm PRN so my schedule changes all the time.

Q. Well, May 5th though, the day that Bryan showed up at your hospital, were you working that day?

THE COURT: She said May. It was March.

THE WITNESS: March.

Q. (By Mr. Nace) I'm sorry, March? March?

A. I'm not sure.

Q. How long have you worked at Children's?

A. Almost six years.

Q. How have you previously provided notice to your ex-husband, Bryan Rowes, that you worked at Children's?

A. It's on Our Family Wizard.

Q. Okay. So he's aware. The prior -- Well, this letter that was sent to you on September 25, 2015 doesn't address any of the businesses you-all had previously owned, correct?

A.      Correct.

Q.      Prior to that letter that was sent to you included businesses you-all previously owned?

A.      Yes.

MS. BENNETT:   Objection, Your Honor, again, we're talking about a supposed prior letter and they're introducing it in violation of Texas Rules of Evidence 404 for acts that they alleged had been done in conformity. There has been no convictions on any allegations like this.

THE COURT:   Sustained.

MR. NACE:   Pass my client.

RECROSS-EXAMINATION

BY MS. BENNETT:

Q.      You have no documents proving that Bryan Rowes was in Children's Hospital on March 5th; is that correct?

A.      There's that document that he signed.

MS. BENNETT:   Objection.

Q.      (By Ms. Bennett) Do you have a document in evidence that proves he was in Children's Hospital on March 5th?

A.      Yes.

Q.      Okay.   And is it admissible in this case at this time?

A.      I'm not an attorney.

MR. NACE:  Objection.

Q.      (By Ms. Bennett) Okay.  Is the only evidence you have that Bryan was in Children's Hospital the March 28th e-mail that was provided to the Court today?

A.       Detective --

MS. BENNETT:  Objection, Your Honor, nonresponsive.

THE COURT:  Sustained.

Q.      (By Ms. Bennett) You communicate exclusively through Our Family Wizard with Bryan, correct?

A.       Yes.

MS. BENNETT:  Pass the witness.

MR. NACE:  I'll call Mr. Rowes.

THE COURT:  Sir, you've been called as a witness in this case.  You have a constitutional right not to be called.  You have a Fifth Amendment Right to either invoke or waive.  If you invoke it nobody can ask you any questions about the allegations against you.  But if you waive it, you're required to answer questions about the allegations including questions and giving evidence that may prove up any alleged guilt.

So I'm not trying to tell you what to do by giving you this Fifth Amendment admonition.  You have a counsel here who you're able to confer with.  And if you want to confer with your counsel, I need to know whether or not

you're going to a waive your Fifth Amendment Right or invoke it and not testify.

                    MR. ROWES:  I'd like to invoke it.

                    THE COURT:  All right.  Next witness?

                    MR. NACE:  Myself.

                    THE COURT:  Yes, sir.

                    MR. NACE:  My name is Brad Nace.  I'm an attorney licensed to practice law before the State of Texas -- the courts in the State of Texas and have been in good standing before the state bar for seventeen years and one month.  I am representing Katy Tillotson in this court proceeding.  We have incurred the sum of $5,000.00 in attorney fees, which I believe are reasonable and necessary in the prosecution of this particular matter;  the fees are reasonable and necessary and that's pursuant to my hourly rate of $260.00 an hour and I would pass myself as a witness.

                    MS. BENNETT:  Okay.

                          CROSS-EXAMINATION

BY MS. BENNETT:

        Q.      Just one question, did you bring a fee statement today detailing your individual charges?

        A.      No, I did not.

                    MS. BENNETT:  Pass the witness, Your Honor.

                    THE COURT:  Back to you, Mr. Nace.

MR. NACE: How much time do I have, Judge?

THE COURT: About three minutes.

MR. NACE: I'll call Bryan Rowes by transcript.

MS. BENNETT: Your Honor, we would object. He invoked his Fifth Amendment Right.

MR. NACE: He testified previously, sworn testimony, before this court.

MS. BENNETT: The only testimony that's applicable is testimony after entry of the protective order. Anything that goes behind the protective order goes behind the date that the protective order was applicable and it should be kept out. He hasn't testified. So there's nothing in there to testify that's an inconsistent statement, which is the way that can be brought in.

MR. NACE: Actually, Judge, his former testimony is absolutely admissible and it shows the state of mind, a prior letter, almost carbon copy identical, the one before the Court today and its' admissions.

MS. BENNETT: Texas Rule of Evidence states, 404, he can't bring anything in that he's trying to prove he acted in conformity with any prior act. So prior testimony is absolutely prohibited evidence.

THE COURT: Sustained.

MR. NACE: Pass my client.

MS. BENNETT: Your client? You rest?

MR. NACE: Yeah, I rest.

MS. BENNETT: Your Honor, at this point we would move for a directed verdict on each of the violations. With respect to Violation Number 1, the pleading as well as Petitioner's or Movant's testimony states that in fact Mr. Rowes got on an elevator and he immediately left her presence. The protective order states he has to remain in her space.

He in fact did not remain in her space. And there was no allegation that he made any effort to harass her. He simply got on the next elevator when he came through the front doors in the morning. Importantly he had a right to be here at the court. Just like I asked, may he approach here today. He had a right to approach and be in the courtroom on May 28, 2014.

We believe that on its' face that these statements are conclusory inside the pleadings but that Mrs. Tillotson's own testimony states that he didn't remain in her space. He immediately left her space and we would ask for a directed verdict. With respect to Violation Number 20, she cannot prove that he was in the building at Children's Hospital or her place of employment at Children's Hospital on March 5, 2015.

Further, the protective order is vague. It just

says, employment address.  It doesn't say Children's Hospital.  So even if she were able to prove up that he was there on March 5th.  In fact her place of employment, Children's Hospital, is not a listed prohibited place to be and the protective order needs -- in order to hold him in contempt needs to be unambiguous as to what he's on notice to.

Violation Number 21 states that the March 28th letter, 2015, is communicating with her in a harassing way. Harassing is not defined in the protective order.  It's ambiguous, number one.  And, number two, on its' face, when the Court reviews the March 28, 2015 e-mail, there's nothing in there harassing.

She states that the only statement that harassed her was he stated he went to get the child's record, that to me is not on its' face harassing enough to throw somebody in jail or harassing at all.  Violation Number 22 we ask for a directed verdict there as well because she doesn't know who sent the letter.  She just thinks he sent the letter because that's who makes the most sense to her.

But in order to hold him in contempt of court and throw him in jail, there's absolutely no proof that he sent the letter.  No proof at all.  In fact they didn't even bring the original letter here today.  We would ask the Court to grant a directed verdict on all violations at this

time; including that he not be ordered to pay attorney's fees, Your Honor, for a frivolous suit.

THE COURT:  The Court will grant the directed verdict on Violations 20 and 22.

MR. NACE:  What's that, Your Honor? 20 and 22?

THE COURT:  Yes, sir.

MS. BENNETT:  May I proceed with my case?

THE COURT:  Yes.

MS. BENNETT:  Okay.

BRYAN ROWES,

the witness hereinbefore named, being first duly cautioned and sworn to testify the truth, the whole truth and nothing but the truth, testified on his oath as follows:

DIRECT EXAMINATION

BY MS. BENNETT:

Q.     State your name for the court?

A.     Bryan Rowes.

Q.     Are you waiving your Fifth Amendment Right at this time and willing to testify?

A.     Yes.

Q.     Okay.  Taking a look at Violation Number 1, were you in this building on March -- what's the date, May 28, 2014?

A.     Yes.

Q.      What happened that morning?

A.      I arrived for a hearing.  I arrived a little early so that I could procure some records from the basement.

Q.      Okay.  And did you see Katy Tillotson that day?

A.      I came around the wall where the elevator bank is and she was standing there.

Q.      And when you say the elevator bank is this on the first floor?

A.      Yes.

Q.      Is this right after you come through security?

A.      Yes.

Q.      And were you looking for Katy Tillotson?

A.      No.

Q.      Okay.  And what happened when you saw each other?

A.      She said she was getting on the elevator.  I responded that I did.  She -- As she stated, she took a few steps back so I got on the elevator and left.

Q.      Okay.  How long were you in Katy Tillotson's presence at the elevator bank that morning?

A.      Less than thirty seconds.  The elevator opened almost immediately when I arrived.

Q. And then where did you go after the elevator?

A. I went to Records. I tried to procure some records for this case actually. It's under seal. They wouldn't provide them to me even though I'm a party so I went to Judge Olvera's chambers -- not chambers, her courtroom. I had her sign a document giving me permission to get my documents, went back downstairs to records and got my documents and went back upstairs to Judge Olvera's and waited for my hearing.

Q. And at any point were you remaining in the presence of Katy or Mary Kate Tillotson that day?

A. No.

Q. And did you see Katy Tillotson at any other point prior to the hearing and from the elevator bank?

A. No.

Q. Okay. And did you harass her in anyway?

A. Absolutely not.

Q. Did you glare at her menacingly in anyway?

A. No.

Q. With respect to Violation 21, the March 28, 2015 e-mail, have you reviewed that e-mail?

A. I have.

Q. Is there anything in that e-mail that you

deem to be harassing or threatening to Mary Kate Tillotson?

A.    Absolutely not.

Q.    And what is the substance of that e-mail?

A.    I was --

MR. NACE:    Object to best evidence.

MS. BENNETT:    It's in evidence already, Your Honor.

THE COURT:    Overrule.

Q.    (By Ms. Bennett) What is the substance of that e-mail?

A.    She asked for any information I supplied regarding the children to Children's Hospital.  I tried to be exhaustive and supply absolutely everything that -- all the information I had I supplied that I could think of.

Q.    How do you communicate with Mrs. Tillotson?

A.    Our Family Wizard.

Q.    And so she says that this is the threatening act.  Is there any other means in which you could have threatened or harassed her?

A.    No.

Q.    Do you in fact -- Who do you believe is harassing who?

A.    I believe she's harassing me.

Q.    Okay.  I'm going to show you what is marked as I guess Respondent's 1 at this point.  Can you identify

this as a packet of Our Family Wizard's e-mail between you and Katy Mary Tillotson?

A.     Absolutely.

Q.     And do those Our Family Wizard go back as far as November 29, 2013?

A.     Yes.

MS. BENNETT:  I offer Respondent's 1.

MR. NACE:  Just a minute, Your Honor.

THE COURT:  Okay.

MR. NACE:  No objection under Rule 2006 as a summary, Judge.

THE COURT:  Admitted.

Q.     (By Ms. Bennett) And, Bryan, if you can take a look at the October 30, 2015 e-mail.  This a summary of all of the e-mails?

MS. BENNETT:  Where is the exhibit that we've entered?  We will offer Respondent's 1 to the court.

Q.     (By Ms. Bennett) Upon the court's review, are these Our Family Wizard exchanges opportunities that Katy has told you that you were harassing her at that time as well?

A.     Yes.

Q.     And in any of the e-mail communications on the dates listed here, do you believe that you were harassing Katy or Mary Kate Tillotson in anyway?

A.    Absolutely not.

Q.    Who do you believe is harassing who?

A.    I believe she's harassing me.

Q.    Okay.  Did you incur fees in order to -- in order to defend this suit?

A.    Yes.

Q.    Do you believe this suit is frivolous?

A.    Absolutely.

Q.    And do you believe you have harassed her any such way?

A.    Not at all.

MS. BENNETT:  Okay.  Pass the witness.

CROSS-EXAMINATION

BY MR. NACE:

Q.    I'm going to hand you what has been marked as Exhibit 8.  Can you identify that?

A.    I take the fifth.

MS. BENNETT:  No, you can't.

MR. ROWES:  I cannot take the fifth.

Q.    (By Mr. Nace) That's a true and correct copy of an e-mail you did not disclose in the last exhibit before the Court dated March 28, 2015, correct?

A.    Yes.  You're asking if I not disclose this before?

Q.    That's not in the exhibit your attorney just

produced to the Court?

A.      I would have to take a look at that exhibit and see.

MS. BENNETT:  Your Honor, if I could clarify. I have a copy of every Our Family Wizard dated back to what date -- that would be -- this is a copy of the full e-mail strings where she accuses him of being harassing and for the Court's edification I have no problem putting a full -- from what date -- back from 9-25 to the present which is the date that the visitation began again after our last court appearance so we can put in all the full strand, which would be inclusive of the e-mail that I believe -- Strike that.  This is to clarify, this is the e-mail between the parties where she alleges he's harassing in the prior e-mail.

THE COURT:  What's the objection about that document?

MS. BENNETT:  Okay.  No objection to its admission.

Q.      (By Mr. Nace) One of the e-mails you did not disclose to your attorney is March 28 it says, Dear Katy, I've shared all of the information I shared with the outpatient psych office.  The last three sentences there, I do not recall specifically what I said but I believe it was all along the lines of having been court ordered therapy to

address ███ having been molested by her stepsister. Beyond that I did not discuss any custody litigation nor any concerns I had regarding your husband nor you. You said that, correct?

A.      I read that, correct.

Q.      That is harassing, isn't it?

A.      No.

Q.      Now, with regard to the letter that was put into evidence today sent -- I'm going to hand you a courtesy copy dated September 25th. Do you see that letter?

A.      I see a photocopy of this letter.

Q.      What date -- March -- September 25, 2015 were you working?

        MS. BENNETT: Your Honor, I object to this line of questioning. You've already granted some directed verdict on Violation 22 which goes to this letter.

        THE COURT: If that's what you're trying to do, sustain.

        MR. NACE: It goes to the issue of attorney's fees, Judge. What we're asking for.

        MS. BENNETT: We received a directed verdict on the claim so --

        MR. NACE: They're asking for attorney's fees in this case. I'm entitled to cross examine whether he did

it or not. The court already granted a direct verdict on the issue of the violation but not the issue of attorney's fees.

MS. BENNETT: Your Honor, we would respond that he doesn't have the right to examine him, that would be double jeopardy. He had no right to examine him. He can ask him how much he incurred in defending Violation Number 22 which goes to the heart of the attorney's fees but not in fact whether or not he took some action that the Court has already found that there's a directed verdict.

THE COURT: Sustained.

Q. (By Mr. Nace) May 28, 2014 with regard to this Violation 1, May 28, 2014, when you saw my client, why did you not just go the other direction?

A. On what date?

Q. May 28, 2014 here at the courthouse?

A I was going down to records so I -- I was a little -- I guess flabbergasted that she was there. I got on the elevator as quickly as I could. I went away. I mean I was -- What was I suppose to do? I did not turn and go back through security if that is your question.

Q. Thank you.

MR. NACE: I'll pass the witness.

MS. BENNETT: I'm going to call myself, Your Honor. My name is Paula Bennett. I've been licensed

through the State of Texas to practice law since 2008. I practice only family law. I have a copy of my CV that I'll enter as Respondent's 3 and copy of my billing statement that I will enter as Respondent's 2. Mr. Rowes retained me with a $5,000.00 retainer to retain my firm. The billing that -- I'm familiar with the billing in Dallas County and what we charge as reasonable. He has incurred $11,039.97. I offer Respondent's 2.

MR. NACE: We would object to that exhibit if that exhibit includes attorney's fees in response to anything pertaining to what we've already nonsuited as of today, Violations 2 through 19.

MS. BENNETT: We would respond that we only learned of the nonsuit here. We were prepared to move forward with Violations 1 through 22. My client was subject to being put in jail today for Violations 2 through 19 and such violations, while he may have nonsuited them to protect his client, did not protect my client. We had to get ready for today. We ask that the Court take into account all $11,039.97.

Further we ask that Mrs. Tillotson, because the suit is frivolous, be denied attorney's fees payable by my client. I offer Respondent's 2, the billing statements and the summary of my testimony with regards to the billing.

MR. NACE: We'll stand on our objection as to

relevance.

THE COURT:  Overruled.  Admitted.

MS. BENNETT:  Pass myself.

MR. NACE:  Nothing further.

MS. BENNETT:  Rest.

THE COURT:  Your proposed order?

MR. NACE:  I do.  May I grab it?

THE COURT:  Yes, sir.

MR. NACE:  One with commitment; one with non-commitment.  I couldn't e-file some of the orders because of the nature of the case.  It's a sealed file.  We would need to strike any findings as to Numbers 2 through 19 based on the prior statement by myself and the order of the court as to the foreign fees.

THE COURT:  I think there's one exhibit missing here.  The order -- maybe the motion.

THE COURT:  All right.  Based on the evidence, the Court finds the Respondent in violation of this court order, finds that he violated Violation Number 1 and 21.  The Court sentences the Respondent in jail for a period of thirty days, fines him $500.00 to be paid in ninety days.  The Court will deny attorney's fees.  Find the Respondent in civil and criminal contempt.  Sheriff, would you take the Respondent in custody.

(End of Proceedings).

STATE OF TEXAS       *

COUNTY OF DALLAS     *

I, GLENDA E. FINKLEY, Official Court Reporter in and for the 256th Judicial District Court of Dallas County, State of Texas, do hereby certify that the above and foregoing contains the ruling of said judge, which is a true and correct transcription of all portions of evidence and other proceedings requested by counsel for the parties to be included in this portion of Reporter's Record in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total costs for the preparation of this Reporter's Record is $700.00 and was paid by Ms. Paula Bennett.

WITNESS MY OFFICIAL HAND this the 15th day of December, 2015.

____glenda e. finkley_____
Glenda E. FINKLEY,CSR #3274
Official Court Reporter,
256th Judicial District Court
600 Commerce St, 4th Flr. Ste. 440
Dallas, Texas 75202
Office No.  214-653-6452
Fax No.     214-653-6267
Certification No.  3274
Date of Expiration:  12-31-16

No. DF-09-18237

FILED
2015 OCT 23 AM 9:28
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
DEPUTY

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE 256th |
| | § | |
| ▉ | § | JUDICIAL DISTRICT COURT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## MARY TILLOTSON'S *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*

TO THE HONORABLE JUDGE OF SAID COURT:

Respondent and Movant MARY TILLOTSON hereby files her Motion for Enforcement of Protective Order, *entered April 11, 2014*, and who shows in support the following:

### I.
### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under level 2, T.R.C.P. Rule 190.

### II.
### PARTIES

This Motion for Enforcement of Protective Order is brought by MARY TILLOTSON ("MARY TILLOTSON" or "Movant"), Petitioner in the above-captioned cause numbers, who is the mother of ▉ (collectively, hereinafter sometimes referred to as the "children"). BRYAN ROWES ("BRYAN ROWES" or "Petitioner") is Respondent in the pending proceeding. He is also the father of ▉ and ▉.

### III.
### CHILDREN

The following children, who are under the continuing jurisdiction of the 256th Judicial District Court of Dallas County, Texas, are the subjects of this suit: ▉ and ▉ ▉.

### IV.
### MANAGING CONSERVATORSHIP

Pursuant to the ORDER IN SUIT AFFECTING PARENT CHILD RELATIONSHIP, entered March 6, 2012, MARY TILLOTSON and BRYAN ROWES were appointed Parent Joint Managing Conservators of the children.

MARY TILLOTSON'S *MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER*
Pg. 1



# V.
## JURISDICTION

This Court has continuing, exclusive jurisdiction of this case as a result of prior proceedings.

# VI.
## SERVICE AND NOTICE

The party entitled to notice is BRYAN ROWES. BRYAN ROWES may be served with process in this matter in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving him at his place of residence at ███████████████████████, or at any other place he may be found.

# VII.
## ORDERS TO BE ENFORCED

MARY TILLOTSON seeks to enforce the PROTECTIVE ORDER that BRYAN ROWES has intentionally, willfully and contemptuously violated subsequent to it being entered. BRYAN ROWES has violated in various respects the PROTECTIVE ORDER, *entered April 17, 2014.*

# A.
## PROTECTIVE ORDER

On April 17, 2014, in Cause No. DF-09-18237, styled "In the Interest of ███████ and ████████████████, Children, Children," in the 256th Judicial District Court of Dallas County, a **PROTECTIVE ORDER** was entered in this Court that stated in relevant part as follows:

> "**Orders**
>
> "**IT IS ORDERED that Respondent, BRYAN ROWES, is:**
>
> "**Prohibited from communicating directly with MARY TILLOTSON in a threatening or harassing manner.**
>
> "**On a finding of good cause, prohibited from communicating in any manner with MARY TILLOTSON, except through Respondent's attorney or a person appointed by a Court, except Our Family Wizard related to the children.**
>
> "**Prohibited from going to or near, or within 500 feet of, any location where MARY TILLOTSON is known by Respondent, BRYAN ROWES, to be and from remaining within 500 feet after Respondent, BRYAN ROWES becomes aware of MARY TILLOTSON's presence.**

"Prohibited from going to or near MARY TILLOTSON's employment addresses or where MARY TILLOTSON normally resides at ███████████, ███████████.

...

"Effective Period

"This Order shall continue in full force and effect until April 10, 2016."

"Attorney's Fees

The Court finds that BRYAN ROWES should be assessed Five Thousand Dollars and no Cents ($5,000.00) as attorney's fees for the services of Frederick S. Adams, JR. IT'S ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of Five Thousand Dollars and No Cents ($5,000.00) for legal services rendered with post judgment interest thereon. **The judgment, for which let execution issue, is awarded against BRYAN ROWES, which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest paid ..."** (emphasis added)

The above provisions may be found on pages two (2) through three (3) in the **PROTECTIVE ORDER**. A true and correct copy of the **PROTECTIVE ORDER** is attached as Exhibit A and incorporated by reference the same as if fully copied and set forth at length. *See attached exhibit "A."*

## A1.

BRYAN ROWES has disobeyed and continues to disobey such order in that he has intentionally, willfully and maliciously violated the **PROTECTIVE ORDER**. More particularly, BRYAN ROWES has committed separate violations of the order described in the **PROTECTIVE ORDER** as follows:

Violation 1. On May 28 2014, at 8:30A.M., BRYAN ROWES violated the **PROTECTIVE ORDER**, by going within 500 feet of a location where MARY TILLOTSON was known to be by Respondent, BRYAN ROWES, specifically an elevator bank at the court house. There, BRYAN ROWES made eye contact with MARY TILLOTSON, glared at her menacingly and stood next to her. As MARY TILLOTSON retreated, she told him he was in violation of the **PROTECTIVE ORDER**. BRYAN ROWES smirked and got on the elevator nevertheless, where she was still standing. Following, security saw MARY TILLOTSON visibly shaken and crying and escorted her downstairs to meet her then attorney. Following, BRYAN ROWES deliberately walked past MARY TILLOTSON twice while she was in front of the courtroom glaring at her as he previously had.

Violation 2.     On May 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 3.     On June 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 4.     On July 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00

Violation 5.     On August 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 6.     On September 1, 2014 BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 7.     On October 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 8.     On November 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 9.     On December 1, 2014, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 10.     On January 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 11.     On February 1, 201, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 12.     On March 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 13. On April 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 14. On May 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 15. On June 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 16. On July 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 17. On August 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 18. On September 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 19. On October 1, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER** by not making the court ordered installment payment to the attorney of MARY TILLOTSON in the amount of $250.00.

Violation 20. On March 5, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by going to MARY TILLOTSON's place of employment located at Children's Medical Hospital.

Violation 21. On March 28, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence by email stating he went to her place of employment on two separate occasions after the **PROTECTIVE ORDER** was granted.

Violation 22. On or about September 25, 2015, BRYAN ROWES violated the **PROTECTIVE ORDER,** by communicating with MARY TILLOTSON directly when he sent her threatening or harassing correspondence to MARY TILLOTSON's residence after the **PROTECTIVE ORDER** was granted.

Movant MARY TILLOTSON was the Applicant/Petitioner and BRYAN ROWES was the Respondent in the above-referenced proceeding.

## VIII.
## REQUESTS

(a)    Movant requests that Respondent be *held in contempt, jailed*, and *fined for each of the remaining violations detailed above*.

(b)    Movant believes, based on the conduct of Respondent, that Respondent *will continue to fail to comply* with the orders set forth above. Movant requests that Respondent be held in contempt, jailed, and fined for each failure to comply with the orders of the Court from the date of this filing to the date of the hearing on this motion.

(c)    Movant, MARY TILLOTSON, requests that, if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on Respondent and giving Respondent a reasonable time within which to comply.

(d)    Movant, MARY TILLOTSON, requests that the Court find that since the last hearing BRYAN ROWES has engaged in an "incident" negating the parties' agreement, and subsequent order of the Court, that BRYAN ROWES's possession of the children be restored pursuant to the prior order dated March 6, 2012.

(e)    Movant, MARY TILLOTSON, requests that BRYAN ROWES provide proof of counseling compliance as a condition precedent for all periods of possession to be exercised.

## IX.
## ATTORNEY'S FEES AND EXPENSES

It was necessary for Movant to secure the services of NACE & MOTLEY, L.L.P., lawyers duly licensed and practicing in the State of Texas, to preserve, protect and defend Movant's rights and the children. Respondent BRYAN ROWES should be ordered to pay reasonable attorneys' fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against Respondent; or, in the alternative, reasonable attorneys' fees, expenses, and costs should be taxed as costs and should be ordered paid directly to the undersigned attorney, who may enforce the order in the attorney's own name.

Movant requests postjudgment interest as allowed by law.

## PRAYER

Movant prays that the Court grant its Motion for Enforcement and, specifically, that Respondent be held in contempt and punished as requested, that a judgment be granted for attorney's fees, and costs or order a bond or security, that the Court clarify any part of its prior order found not specific enough to be enforced by contempt, for attorney's fees, expenses, costs, and interest, and for all further relief authorized by law.

Respectfully submitted,

NACE & MOTLEY, L.L.P.
100 Crescent Court
7th Floor
Dallas, Texas 75201
Tel: (214) 4598289
Fax: (214) 2424333

By:/s/ Bradford Nace
    State Bar No. 24007726
    bnace@nacemotley.com
    Attorney for Movant
    MARY TILLOTSON

## CERTIFICATE OF SERVICE

In addition to serving BRYAN ROWES with service of process, the undersigned certifies that the foregoing document will be served on his counsel of record, PAULA BENNETT, in accordance with the Texas Rules of Civil Procedure.

/s/ Bradford Nace

NO. 09-18237

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
|---|---|---|
| ▮▮▮▮▮▮▮▮ | § | |
| | § | 256TH JUDICIAL DISTRICT |
| AND | § | |
| ▮▮▮▮▮▮▮▮ | § | |
| | § | |
| MINOR CHILDREN | § | DALLAS COUNTY, TEXAS |

## PROTECTIVE ORDER

On **APRIL  11**_____, 2014, the Court heard the Application of *MARY TILLOTSON* for a Protective Order.

### Appearances

Applicant, *MARY TILLOTSON*, appeared in person and through attorney of record, FREDERICK S. ADAMS, JR., and announced ready.

Respondent, *BRYAN ROWES*, appeared in person and announced ready.

### Jurisdiction

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and subject matter of this case.

### Findings

The Court finds that *BRYAN ROWES* has engaged in conduct violative of Texas Penal Code Section 42.072. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and are necessary for the protection of Applicant.

### "Protected Person"

In this order, "Protected Person" means Applicant

---

*Protective Order* | *Page 1*

## Orders

IT IS ORDERED that Respondent, *BRYAN ROWES*, is:

Prohibited from committing family violence, as defined by section 71.004 of the Texas Family Code.

Prohibited from communicating directly with *MARY TILLOTSON* in a threatening or harassing manner.

Prohibited from communicating a threat through any person to *MARY TILLOTSON*

On a finding of good cause, prohibited from communicating in any manner with *MARY TILLOTSON* except through Respondent's attorney or a person appointed by the Court, except Our Family Wizard related to the children.

Prohibited from going to or near, or within 500 feet of, any location where *MARY TILLOTSON* is known by Respondent, *BRYAN ROWES* to be and from remaining within 500 feet after Respondent, *BRYAN ROWES* becomes aware of *MARY TILLOTSON* presence.

Prohibited from going to or near *MARY TILLOTSON*'s employment addresses or where *MARY TILLOTSON* normally resides at ███████████████ .

Prohibited from possessing a firearm or ammunition unless Respondent, *BRYAN ROWES* is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

Respondent's license to carry a concealed handgun issued under subchapter H, chapter 411, of the Texas Government Code is suspended.

## Attorney's Fees

The Court finds that *BRYAN ROWES* should be assessed *Five Thousand Dollars and No Cents* ($5,000.00) as attorney's fees for the services of FREDERICK S. ADAMS, JR. IT IS

ORDERED that FREDERICK S. ADAMS, JR. is awarded judgment of *Five Thousand Dollars and No Cents* ($5,000.00) for legal services rendered with post judgment interest thereon. The judgment, for which let execution issue, is awarded against *BRYAN ROWES,* which is to be paid $250.00 per month beginning May 1, 2014 and each month thereafter until the Judgment and all interest is paid in accordance with Exhibit "A" hereof which is incorporated herein at 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

## *Fees, Charges, and Expenses*

IT IS ORDERED that *BRYAN ROWES* shall pay the $16 protective order fee, the standard fee for cost of service of this order, the costs of court, and all other fees, charges, or expenses incurred in connection with this order.

IT IS THEREFORE ORDERED that Respondent, *BRYAN ROWES* shall pay *Sixteen Dollars and No Cents* ($16.00) to the clerk of this Court on or before May 1, 2014 at Dallas County Courthouse, 600 Commerce Street, Dallas, Texas 75202, by cash, cashier's check, or money order.

## *Relief Not Granted*

IT IS ORDERED that all relief requested in the Application for Protective Order but not expressly granted is denied.

## *Order Forwarded*

A copy of this order, along with the information provided by Applicant's attorney that is required under section 411.042(b)(6) of the Texas Government Code, shall be forwarded by the clerk of this Court to the chief of police of the municipality of Dallas, Texas.

## *Effective Period*

This order shall continue in full force and effect until April 10, 2016.

*Warnings:*

. A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

IT IS UNLAWFUL FOR ANY PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION. POSSESSION OF A FIREARM

OR AMMUNITION, AS DEFINED IN 18 U.S.C. § 921, WHILE THIS PROTECTIVE ORDER IS IN EFFECT MAY BE A FELONY UNDER FEDERAL LAW PNISHABLE BY UP TO TEN YEARS IN PRISON, A $250,000 FINE, OR BOTH.

PURSUANT TO 18 U.S.C. § 925(a)(1), THE RESTRICTIONS ON POSSESSION OF FIREARMS OR AMMUNITION FOUND AT 18 U.S.C. § 922(g)(8), AND IMPOSED BY THIS PROTECTIVE ORDER, DO NOT APPLY TO FIREARMS OR AMMUNITION ISSUED BY THE UNITED STATES OR ANY DEPARTMENT OR AGENCY THEREOF OR ANY STATE OR ANY DEPARTMENT, AGENCY, OR POLITICAL SUBDIVISION THEREOF, WHICH RESPONDENT POSSESSES IN CONNECTION WITH THE DISCHARGE OF OFFICIAL GOVERNMENT DUTIES.  THE POSSESSION OF PRIVATELY OWNED FIREARMS AND AMMUNITION, HOWRVER, REMAINS UNLAWFUL AND VIOLATES THE THERMS OF THIS PROTECTIVE ORDER.

IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO KNOWINGLY PURCHASE, RENT, LEASE, OR RECEIVE AS A LOAN OR GIFT FROM ANOTHER, A HANDGUN FOR THE DURATION OF THIS ORDER.

INTERSTATE VIOLATION OF THIS PROTECTIVE ORDER MAY SUBJECT RESPONDENT TO FEDERAL CRIMINAL PENALTIES.  THIS PROTECTIVE ORDER IS ENFORCEABLE IN ALL FIFTY STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND U.S. TERRITORIES.

SIGNED on   APR 1 7 2014

Associate Judge
254th District Court
*JUDGE PRESIDING*

---

*Protective Order*                                                                 *Page 5*

*Information about Respondent to Aid Law Enforcement Officers:*

Name: **BRYAN WILLIAM ROWES**

Home address: ▮▮▮▮▮▮▮▮▮▮▮▮▮

Home telephone number: Cell

Work address: None

Work telephone number: None

Date of birth: ▮▮▮▮▮▮

Color of eyes: BROWN

Color of hair: Black

Height: 5' 8"

Weight: 150

Sex: Male

Race: Caucasian

Personal Descriptors: Scar Above left eye

Social Security number: ▮▮ ▮ ▮▮▮▮ ▮

Driver's license or identification number and issuing state: TX DL ▮▮▮▮

4839-0394-6010, v. 1

---

*Protective Order*          *Page 6*

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Katy Tillotson generated this report on 12/10/15 at 01:34 AM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 03/28/2015 3:59 PM |
| **From:** | Bryan Rowes |
| **To:** | Katy Tillotson (First View: 03/28/2015 4:23 PM) |
| **Subject:** | RE: ███████ Therapist |
| **Message:** | |

Dear Katy,

I am happy to share all of the information about your family (including ██████, Lauren, Joe, and yourself) that I have shared with anyone employed at Children's, including the staff at outpatient psych.

1. You were present during my first interactions: I had come to see ████ in the hospital. I told you the day before that I would be coming and, as requested, I texted you when I was on my way. I arrived between 12 and 1. You left the hospital room to give ████ and me some private time. When you returned you brought a co-worker with you from the social work department. I am not sure exactly what you had told her, but you clearly had led her to believe that I had done something inappropriate. We all had a short discussion while ████ was in the room on "boundary issues". I did feel like it was appropriate to discuss any such issue in depth with ████ in the room, so upon the conclusion of the conversation I requested a card from the social worker to follow-up. She responded that she did not have one, but would give one to you that you could then pass along to me. You both then left the room so that I could finish spending time with ████. When you returned you did not bring any of the social workers cards with you. As I left I stopped by the front desk and asked to be in touch with social work department so that I could speak with the social worker that had met with us. She said that I could call the departments phone line and be put in touch with her. I then called the department but no one answered and the phone went straight to voicemail. The outgoing message said to leave my information and someone would be in touch. It also said that should I have any further concerns I could contact the head of social work and provided a number. I left a message requesting to speak with the social worker. I then realized that you probably have access to the voicemail account and that I should speak directly with the head of the social work department. I redialed the social work department line so that I could write down the directors phone number. I then called the head of the department and left a message that I would like to speak with her.

A day or so later the head of the department returned my call. I explained the previous story to her and our background. I told her that I was concerned about what had been or would be recorded in ████s file. I explained that my concerns were based on the fact that as a social worker at the hospital you might have undue influence in any records, you might have access to the records, and you had a history of attempting to document things that were untrue in order to make me look bad. She apologized for the social worker not providing me with her card and stated that it was a violation of policy to have expected you to pass along such information to me. She also said that she would speak with the social worker to insure that an accurate record was kept. She also stated that you would not have access to ████s file beyond what other parents have. She concluded the conversation by saying that if I had any further concerns that I should contact her directly.

A day or so later the social worker called me and apologized. I had a very similar conversation with her.

I followed up with the director after another few days and she assured me that everything had been handled appropriately.

2. When ████ had been hospitalized I called to get information and speak with his health care providers. They explained that you had not listed me as ████ father (nor anywhere in the file) and as a result they would not share any information with me. They told me that I would need to bring proof of parenthood in order to obtain such information.

I went to the hospital and provided them with ████ birth certificate for their files and requested copies of his medical records which were sent to me several weeks later.

I later requested an updated copy of his medical records. I was again told that I was not listed as his father. I again brought ████ birth

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

certificate to the medical records department and had a conversation with management at the department. I explained that I had already brought ▮ birth certificate once and expressed my concern that you, as a social worker at the hospital, would have access to the file and could have removed me or otherwise altered the file. She assured me that such a thing was not possible and apologized for the department's failure to record me as the father. I also stated that there was ongoing litigation and requested that I be provided proof that I had been left off of ▮ file.

I had asked you numerous times to have the hospital include me as the father, but you never did. If you had- I never would have had to have this contact.

3. In court the judge had instructed you to get therapy for ▮ The conclusion reached was that ▮ could be seen at Children's hospital for free. You informed me that both she and ▮ were put on a waiting list. You shared the names of the individuals with whom you had spoken and the number I should call if I wanted to follow-up. After an extended period of time, during which I had made numerous requests for status updates- which you either ignored or declined, I called the number you had shared with me and spoke with one of the individuals you mentioned. She said that they had no waiting list, and no record or recollection of you ever being in contact with them.

Please share any information you have provided to Children's about me.

Thank you,
Bryan

## Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Katy Tillotson generated this report on 12/10/15 at 08:53 AM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 09/25/2015 11:37 AM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 09/25/2015 11:38 AM) |
| **Subject:** | RE: Judge's Orders/Medical Payments |
| **Message:** | |

Carrie is not able to resolve legal issues regarding the Order.

**On Fri, 09/25/15 at 11:08 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: Judge's Orders/Medical Payments
Message:

Dear Katy,

I have spoken with Carrie about the financial judgement and she has advised for us to not discuss it here or during our sessions with her. If you have concerns regarding the financial judgement, please have your lawyer contact my lawyer.

I have mailed you a check for 183.22 to reimburse for the 8/13 and 8/15 expenditure. When we resolve the issues with the other two expenditures you have posted, I will remit payment for those as well. If you would prefer, we can discuss details with Carrie.

Thank you,
Bryan

**On Fri, 09/25/15 at 10:38 AM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: RE: Judge's Orders/Medical Payments
Message:

I really have more important things to do then email you back and forth all day long. If you don't want to pay the $25 ensure accuracy- fine. Mail me a check.

Again, I am directly asking: WHAT IS YOUR PLAN TO REPAY THE JUDGMENT? I've asked three times now and received no response. Are you going to pay weekly, monthly, lump sum, and if so how much at each time?

**On Fri, 09/25/15 at 10:11 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: Judge's Orders/Medical Payments
Message:

Dear Katy,

I do recall that exchange, and while you initially made that offer you withdrew it saying:

"If you really intend to pay just mail me a check."

The message is from 4/14. If you would like I can provide a copy.

If you would like to handle payments using the OFW system going forward, let me know and we can set it up.

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

Thank you,
Bryan


**On Fri, 09/25/15 at 10:07 AM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: RE: Judge's Orders/Medical Payments
Message:

You will recall I paid the fee for our family wizard so that payments could be made through the website and tracked for both our protection.

What is your payment plan for the judgement?


**On Fri, 09/25/15 at 10:01 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: Judge's Orders/Medical Payments
Message:

Dear Katy,

Please provide an address for me to mail payments.

Thank you,
Bryan


**On Thu, 09/24/15 at 9:51 PM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: Judge's Orders/Medical Payments
Message:

I am concerned that payment has not been remitted for the last medical expenses and also that the impression I have is that you do not have a plan, or perhaps even intent, to pay the $94,000 Judgment Ordered to me for attorney's fees.

Please inform as to whether your intent is to comply with paying the Judgment and if so what your plan is? If you do not have a plan and/or intend to comply then I want to make sure this is addressed in the Order and/or with Judge Lopez prior to signing the Order.



Dear Resident,

I regret to inform you that you have two sex offenders living in the neighborhood. These individuals have not officially been charged with a crime because they have not been caught in the act by the authorities. They do not appear on any offender watch lists. However, I think it would be irresponsible of me to not share this information with you, so that you can act accordingly. Both individuals are currently seeking therapy in an attempt to control themselves. While this may be successful, it is widely believed that issues like these cannot be cured. I encourage you to be responsible and vigilant with these individuals:

Katy Tillotson

Joe Tillotson

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Katy Tillotson generated this report on 09/02/15 at 08:06 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 03/30/2015 6:52 PM |
| **From:** | Bryan Rowes |
| **To:** | Katy Tillotson (First View: 03/30/2015 9:56 PM) |
| **Subject:** | ▮ Medical File |
| **Message:** | |

Dear Katy,

I have been reviewing ▮ medical file and I do not see anything in there about your drinking and smoking while pregnant. Did you share this with the doctors?

Thank you,
Bryan

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Katy Tillotson generated this report on 09/02/15 at 08:10 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 03/28/2015 5:54 PM |
| **From:** | Bryan Rowes |
| **To:** | Katy Tillotson (First View: 03/28/2015 6:02 PM) |
| **Subject:** | RE: ▇ Therapist |
| **Message:** | |

Dear Katy,

I have shared all of the information I shared with the outpatient psych office. That you informed me that you had put the kids on the waitlist for appointments at Children's. I shared the necessary information Ro needed to look up a file. I do not recall every detail of our conversation as it was a while ago and quite brief. Joe was certainly never mentioned as he has nothing to do with this. In looking for any appointments, I believe Ro asked what the counseling was for. I do not recall specifically what I said, but I believe it was along the lines of having been court-ordered therapy to address ▇ having been molested by her step-sister. Beyond that I did not discuss any custody litigation issues nor any concerns I had regarding your husband nor you.

Please share any information you have provided Children's about me.

Thank you,
Bryan

---

On Sat, 03/28/15 at 5:39 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ▇ Therapist
Message:

You stated previously that you had shared information you deemed "reasonable". What did you discuss regarding what you believe ▇ needed counseling for, whether it was court ordered, any custody/litigation issues as well as concerns you have regarding my husband and I.

---

On Sat, 03/28/15 at 4:36 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: ▇ 's Therapist
Message:

Dear Katy,

Perhaps I was not specific enough. I spoke with Ro. I explained that my ex-wife had put ▇ and ▇ on the waiting list and asked for a status update. She informed me that they did not have a waiting list. She asked for my information so she could look up the kids. I gave her my information as well as ▇ and ▇ It was all basic stuff, name address, etc. She told me that she had no record nor any recollection of the kids ever having scheduled or attempted to schedule anything. I explained that I was confused as you had informed me the kids were on a waitlist. She again told me that there was nothing but said that there was a chance that medical records had some information.

My second contact with medical records was when I was attempting to see if there was any such record of the kids being scheduled or put on a waitlist.

Please let me know if any of this was not clear enough and I will attempt to elaborate.

Also, please share any information you have provided Children's about me.

Thank you,
Bryan

---

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

P- 8

On Sat, 03/28/15 at 4:26 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ████ Therapist
Message:

You did not answer my question. What did you discuss with them regarding ████ counseling? A whole page of writing and no answer.

---

On Sat, 03/28/15 at 3:59 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: ████'s Therapist
Message:

Dear Katy,

I am happy to share all of the information about your family (including ████ Lauren, Joe, and yourself) that I have shared with anyone employed at Children's, including the staff at outpatient psych.

1. You were present during my first interactions: I had come to see ████ in the hospital. I told you the day before that I would be coming and, as requested, I texted you when I was on my way. I arrived between 12 and 1. You left the hospital room to give ████ and me some private time. When you returned you brought a co-worker with you from the social work department. I am not sure exactly what you had told her, but you clearly had led her to believe that I had done something inappropriate. We all had a short discussion while ████ was in the room on "boundary issues". I did feel like it was appropriate to discuss any such issue in depth with ████ in the room, so upon the conclusion of the conversation I requested a card from the social worker to follow-up. She responded that she did not have one, but would give one to you that you could then pass along to me. You both then left the room so that I could finish spending time with ████. When you returned you did not bring any of the social workers cards with you. As I left I stopped by the front desk and asked to be in touch with social work department so that I could speak with the social worker that had met with us. She said that I could call the departments phone line and be put in touch with her. I then called the department but no one answered and the phone went straight to voicemail. The outgoing message said to leave my information and someone would be in touch. It also said that should I have any further concerns I could contact the head of social work and provided a number. I left a message requesting to speak with the social worker. I then realized that you probably have access to the voicemail account and that I should speak directly with the head of the social work department. I redialed the social work department line so that I could write down the directors phone number. I then called the head of the department and left a message that I would like to speak with her.

A day or so later the head of the department returned my call. I explained the previous story to her and our background. I told her that I was concerned about what had been or would be recorded in ████'s file. I explained that my concerns were based on the fact that as a social worker at the hospital you might have undue influence in any records, you might have access to the records, and you had a history of attempting to document things that were untrue in order to make me look bad. She apologized for the social worker not providing me with her card and stated that it was a violation of policy to have expected you to pass along such information to me. She also said that she would speak with the social worker to insure that an accurate record was kept. She also stated that you would not have access to ████'s file beyond what other parents have. She concluded the conversation by saying that if I had any further concerns that I should contact her directly.

A day or so later the social worker called me and apologized. I had a very similar conversation with her.

I followed up with the director after another few days and she assured me that everything had been handled appropriately.

2. When ████ had been hospitalized I called to get information and speak with his health care providers. They explained that you had not listed me as ████ father (nor anywhere in the file) and as a result they would not share any information with me. They told me that I would need to bring proof of parenthood in order to obtain such information.

I went to the hospital and provided them with ████'s birth certificate for their files and requested copies of his medical records which were sent to me several weeks later.

I later requested an updated copy of his medical records. I was again told that I was not listed as his father. I again brought ████ birth certificate to the medical records department and had a conversation with management at the department. I explained that I had already brought ████'s birth certificate once and expressed my concern that you, as a social worker at the hospital, would have access to the file and could have removed me or otherwise altered the file. She assured me that such a thing was not possible and apologized for the department's failure to record me as the father. I also stated that there was ongoing litigation and requested that I be provided proof that I had been left off of ████ file.

I had asked you numerous times to have the hospital include me as the father, but you never did. If you had- I never would have had to have this contact.

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

3. In court the judge had instructed you to get therapy for ▮▮▮▮. The conclusion reached was that ▮▮▮▮ could be seen at Children's hospital for free. You informed me that both she and ▮▮ were put on a waiting list. You shared the names of the individuals with whom you had spoken and the number I should call if I wanted to follow-up. After an extended period of time, during which I had made numerous requests for status updates- which you either ignored or declined, I called the number you had shared with me and spoke with one of the individuals you mentioned. She said that they had no waiting list, and no record or recollection of you ever being in contact with them.

Please share any information you have provided to Children's about me.

Thank you,
Bryan

---

On Sat, 03/28/15 at 3:03 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ▮▮▮▮ Therapist
Message:
I am requesting exactly what information did you share about ▮▮▮ me, Lauren, Joe, or any of my family members to anyone employed at Children's, including but not limited to staff at outpatient psych.

---

On Thu, 03/12/15 at 3:18 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: ▮▮▮▮ Therapist
Message:
Dear Katy,

Thank you for your response. I am glad things are moving forward. Please let me know what your opposition to Children's is. You are correct that the order does not specifically state that ▮▮▮ be seen at Children's- that's just what the judge specifically said. Also, please provide me with potential play therapists so that I can ensure they are acceptable.

Regarding the ability to pay, I told you in a message sent 1/15 that, depending upon the cost, I anticipate being able to afford a private therapist for ▮▮▮▮

As for my communications with Children's- I have a right to communicate with the children's medical providers. My conversations are, as they have always been, appropriate and focused on the children. I will continue to communicate with individuals at Children's and elsewhere regarding the kids health as I see fit.

Thank you,
Bryan

---

On Thu, 03/12/15 at 2:37 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ▮▮▮▮ Therapist
Message:
If your going to communicate about this with distortions and outright lies then it will be pointless. There is no court order requiring ▮▮ or ▮▮▮▮ be seen at Childrens. I am telling again, I will not agree to have them seen there. Your calling them for any reason only constitutes harassment of me at my place of work. Your calling them again or sharing any personal information about me or my husband is a violation of an order and I will take action to enforce your compliance and ensure the welfare of ▮▮ and ▮▮▮

I did speak with Children's- multiple times. It was my understanding that they were unsure they had someone to meet ▮▮▮ needs but we're working in finding someone and would get back to me. Since that time I informed you in two occasions that I did NOT want her seen there- sought agreement on other recommendations as well as a response from you regarding YOUR PAYMENT. You never responded your ability to willingness to pay. As you are already do ridiculously delinquent in medical bills I'm sure the court will understand my concerns. I'm not your bank - and you don't get to threaten me and you are barred by the Protective Order against harassing and sharing personal information about me or my husband. I look forward to hearing from Ro what you told her. You are a Stalker.

I'll make an appointment for ▮▮▮ today with a play therapist. How do you intend to pay?

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

On Thu, 03/12/15 at 11:44 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: █████ Therapist
Message:

Dear Katy,

I have made every effort to work with you on finding a therapist for ████ At your request, I provided a list of private practitioners that would be good for ████. You have mentioned using play therapy and stated that you had some individuals you were considering- I informed you that I am concerned about the effectiveness of play therapy and requested the names of these individuals so that I could do some research and determine whether they were adequate and appropriate. However, you never shared any names. You also stated that both ████ and ████ were on waitlists to be seen at Children's. However, when I spoke to the scheduler- the one who's name you provided to me- the kids were not only not on the waitlist, there was no waitlist. Further, she had no record or memory of scheduling anything for ████ I have looked at ████ hospital records and I also see no record of you having ever scheduled anything.

It does not matter whether you are in agreement with the children going to counseling/psychiatry at Children's. The judge specifically stated that ████ be seen there. It has now been months since the court ordered that ████ been seen by a therapist. While I was open to exploring different options for therapists, it seems as though this has proven fruitless. It is important that ████ be seen.

Please make an appointment today. I will contact Ro in the morning and confirm that this has been done. If it has not, then I will file a motion for enforcement. While I think litigation continues discord between us and makes things more difficult to work together for the kids- it appears as though it might be necessary to ensure both that you comply with the court's order and that ████ welfare is cared for.

Thank you,
Bryan


On Wed, 03/11/15 at 10:19 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ████ Therapist
Message:

I am confused as to why you called them as I specifically told you I wanted to seek counseling elsewhere for them. You are barred from just contacting my employer so I'm assuming you are using this to find some way around it, that you are calling the clinic and harassing them regularly. I'm going to check on the frequency and conted of your contacts with them and if in ANY way related to me personally I will sue your dumb ass and take you to court for violating the Protective Order.

Let me reiterate so we are CRYSTAL CLEAR.

I AM NOT IN AGREEMENT WITH THE CHILDREN GOING TO COUNSELING/ PSYCHIATRY AT CHILDREN'S.

Not sure how you were intending to " fix" any issue regardless seeing as how you do not have the legal right to do so.

Moving on. The persons you suggested I am not in agreement with- they do not specialize in children nor play therapy.

I would like to find someone who deals with custodial issues and who might eventually be willing to see the kids with you conjointly to facilitate, at some point, transitioning to a less restrictive form of visitation.

Speaking of that, have you began your intensive psychotherapy yet? You have known about this recommendation for a long time so hopefully so. If not, maybe you should look for a place specializing in custodial issues where both you and the kids could go for counseling. That would be very beneficial.

I am concerned that you are not going to pay your half of counseling. Please let me know how you intend to address payment. I will not pay your half in advance as you are so behind on medical payments.

Will begin looking for play therapists today (if you are able to pay) and send some names for your opinion.

Also, what do you want to do about visitation? If you are not able to pay I'm not sure how this is going to work. No, I am not willing to "fund" this. Please advise as yo any suggestions you might have.

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

On Wed, 03/11/15 at 10:50 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: ███ Therapist
Message:

Dear Katy,

I just got off the phone with Ro, whom you mentioned in the message below. She has no record of ███ or ███ She also said that there is no waitlist. Could you please provide me with more information regarding this so that I may resolve this issue and have the children seen?

Thank you,
Bryan

.

On Thu, 02/05/15 at 5:06 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ███ Therapist
Message:

I know about the psychologist bc every clinic in Children's that manages long-term patents has one. I just requested info at his Dr. Appt as ███ has been struggling with coming to terms with the permanency of his disease.

Any number you need to call- use main number (214) 456-7000 and request who you want. I asked for outpatient psychology. I spoke with Mikah and Ro. Either of them could help you I'm sure.

I will check on the status at ███s psychiatry appt, which is scheduled for Feb 12th with Dr. Hubregsen. This is for his ADHD meds as managing medications, in light of ███s diabetes, is best done by both a specialist, and someone at Children's with whom ███ endocrinologist can communicate with easily if necessary.

While there I will ask about the status of their therapy appointments.

On Wed, 02/04/15 at 4:16 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: ███'s Therapist
Message:

Dear Katy,

Who is the Endocrinology psychologist that ███ will be meeting? I looked at the website and didn't see anyone. When will ███ see the psychologist? Does he have an appointment? Please tell me any other information that I should know- including how you came to find out about this person and when/how you decided that ███ should meet them.

Also, please let me know when you put the kids on the wait list. And is this the number you called to set up the appointment: 214-456-5937?

Thank you,
Bryan

On Tue, 02/03/15 at 12:10 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: ███'s Therapist
Message:

Both going to Children's and both on waiting list. Not sure how long it will take, and not sure the name of the specific therapist- only that it will be someone in their outpatient psychiatry. ███ will see the Endocronology psychologist too and he can choose who he thinks is a better fit for him. Will let you know when they assign a therapist and appointments.

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

On Tue, 02/03/15 at 8:30 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: ███████ 's Therapist
Message:

Dear Katy,

Please let me know the status of ████████ therapist.

Also, we had talked previous about getting someone for ████ What do you think about signing him at Children's?

Thank you,
Bryan

Copyright 2000-2015 OurFamilyWizard.com, all rights reserved, patented

## SUMMARY OF "HARASSMENT" CLAIMS BY KATY TILLOTSON
### (In Our Family Wizard Communications between Parties)

**October 30, 2015**

5:08 p.m.    Bryan says he does not agree with her
10:23 p.m.    RESPONSE from Katy: " ...Again, please stop harassing me."

9:46 a.m.    Bryan requests a list of health care providers
9:51 a.m.    RESPONSE from Katy: "...You are harassing me...Stop harassing me. Stop stalking me."

**August 14, 2015**

10:02 a.m.    Bryan asks for update on children's schooling (grade level, school district?)
10:19 a.m.    RESPONSE from Katy: "...every time I provide you with information you use it to harass, embarrass, control or interfere with care for the children."

**June 16, 2015**

5:16 p.m    Bryan says he left message for Hannah's House, met with Kristi Frye, income info, I am following all of the court's orders, as always.
8:22 p.m.    RESPONSE from Katy: "You continue to harass, disseminate information regarding me and my family..."

**June 15, 2015**

1:28 p.m.    Bryan says he has not heard from hannah's House, should he contact them
2:22 p.m.    RESPONSE from Katy: :...I am resigning my position. Your behaviors - intended to humiliate, harass and embarrass me - did just that. You win."

**April 14, 2015**

3:08 p.m.    Bryan asks how referred to speech therapist.
3:22 p.m.    RESPONSE from Katy: "Answered. Intent to harass."

11:29 a.m.    Bryan asks about response to outstanding questions
12:24 p.m.    RESPONSE from Katy: "I will not respond to questions sent with the intent to harass or further delay payment"

EXHIBIT
R-1
tabbies

3:06 p.m.    Bryan asks questions regarding medical reimbursement requests
             (urgent care?, Primacare two days in a row?, co-pay $0.00?
3:21 p.m.    Response from Katy: "3,4,5 Intent to harass - nothing to do with
             legitimacy pf payment."

**March 27, 2015**

9:33 a.m.    Bryan asks why child needs forensic psychologist
3:14 p.m.    RESPONSE from Katy: "...I do not intend tp provide their name
             sp please don't harass me about that either."

12:04 p.m.   Bryan requests response to his question regarding travel with
             children
2:55 p.m.    Response from Katy: T refuse to be bullied by you any
             further....do not harass me with your controlling behaviors."

**September 23, 2014**

1:25 p.m.    Bryan requests information regarding children (school, activities,
             etc.)
1:39 p.m.    RESPONSE from Katy: You are using the children to harass
             and stalk me, STOP."

**September 23, 2014**

11:47 a.m. Bryan requesting information on what services children can
           attend for Yom Kippur
1:23 p.m.    RESPONSE from Katy: "...Please don not message me again
             regarding this. It has become harassing and further messages
             would violate your PO..."

**June 24, 2014**

8:52 a.m.    Bryan requests follow up on a few things (kids schooling, which
             teachers, curriculum, back from camp?)
7:32 p.m.    RESPONSE from Katy: "...you have used contacting teachers
             as a way to threaten, harass and embarrass me..."

**November 29, 2013**

7:04 p.m.    Bryan requests a call from █
7:24 p.m.    RESPONSE from Katy: "Stop harassing me..."

# Message Report



*Bryan Rowes generated this report on 12/09/15 at 04:28 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 10/30/2015 10:23 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 11/02/2015 8:42 AM) |
| **Subject:** | RE: Visits |
| **Message:** | |

The kids do not want to go to your home and I would expect you would willingly respect that decision, however, I will not discuss further with you. Again, please stop harassing me.

On Fri, 10/30/15 at 5:08 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: Visits
Message:

Dear Katy,

I do not agree with the content of your message and I do not agree to changing the location of future visits.

Thank you,
Bryan

On Fri, 10/30/15 at 9:46 AM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: Visits
Message:

We need to find another location for visits. It is not working for ▉ and ▉. Both kids were crying within minutes of leaving your home. ▉ and ▉ have both asked to speak with Nancy privately, and ▉ has asked to speak with Judge Lopez again.

▉ was at 70 (I texted a picture with time/date to Nancy, at 8:20pm. They both said they do not like how you feed them; subsequently we have to stop for "dinner" every time we leave a visit.

You have grossly miscalculated ▉ carbs on every visit, generally resulting in me being up multiple times overnight to check.

Further: ▉ NEEDS TO HAVE CARBS WITH HIS MEALS. At least a little, enough to give a bolus. Low carb diets are not healthy for children with diabetes.

Also ▉ was horrified that you told him an epi-pen and glucagon shot are "pretty much the same thing". You need some serious education on diabetes. ▉ is terrified to be in your care due to your horrific lack of knowledge.



EXHIBIT

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:12 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 08/14/2015 10:19 AM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 08/14/2015 10:22 AM) |
| **Subject:** | RE: Kids' Schools |
| **Message:** | |

I haven't discussed schooling because ▇ is terrified you are going to interfere with his school, show up there, or embarrass him and force him to leave his new school like St. Monica. Considering your repeated violations of the protective order well as injunctions I have no doubt that you will try to do so.

As I have discussed repeatedly with Carrie, we (including Carrie) do not want for ▇ and ▇ to be "that family" again. Please do not do this to them.

If I have withheld information it is because every time I provide you with information you use it to harass, humiliate, embarrass, control, or interfere with care for the children. It is ridiculous that I can't just tell you what is going on, seek your input, etc., but you simply respond with attempts to control.

Maybe this has changed- so lets try again.

▇ is going to be enrolled in 7th and ▇ in 3rd. This is due to ▇'s late birthday, and socially I strongly believe she will be better off. Switching schools seems like a good time to do this and I think it is the right decision, but if you strongly feel otherwise please let me know.

▇ did his school testing and actually tested for all pre-AP classes in 7th grade. He is so proud of himself, as he should be. I am working on getting a 504 in place for diabetes and will explore whether he needs/qualifies for one for dyslexia/add.

On Fri, 08/14/15 at 10:02 AM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: Kids' Schools
Message:

Dear Katy,

I have not heard anything on the kids schooling. Please let me know what grades you intend to enroll them in and why you made that decision. Also, please let me know if you have completed registration at with RISD.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

**Message Report**

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:13 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 06/16/2015 8:22 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 06/17/2015 8:01 AM) |
| **Subject:** | RE: Visitation |
| **Message:** | |

Ok well I'm sure Carrie will bring up with you soon. I will contact her to schedule.

I am sorry that you do not understand the importance of the court ordered weekly psychotherapy. I will be strongly advocating that it is in ▓ and ▓▓▓▓'s best interest that even supervised visits rest upon your compliance with this recommendation and Ruling of the Court.

How did you work out payment with ▓▓▓▓'s therapist? Did you pay in advance or provide a credit card to be billed?

I am very confused by your statement that your income has not changed. You stated under oath twice that you were indigent, so either you were perjuring yourself (which we have proof of in multiple other instances) or you are making more money or being supported financially in some other way. Please inform.

You have NOT been compliant with all or even most other Orders. You continue to harass, disseminate information regarding me and my family, violate the protective order, illegally access our computer information, create online postings regarding us, spread videos of me, ▓ and ▓▓▓▓ all over the Internet, threaten me, interfere with ▓ and ▓▓▓▓'s medical care, change their information, ignore court ordered payments including attorney's fees and medical expenses, refusal to remove previous postings regarding my husband, leaving on-line a horrific website with links to personal information regarding me and my family and so much more. The list goes on and on. Perhaps most telling of your mental illness and complete disrespect for the court and the rights of others- are your most recent actions outside of this family case.

You now face sanctions in this case, in civil court, and have two open and on-going cases with the DA- one in family violence and one in computer crimes. Additionally, you probably don't care but lawsuits are imminent involving your actions and others you involved- corporations and individuals.

You have sent multiple emails regarding your "obligation" to inform Children's and CPS about concerns you have about me, you disseminated information to my neighbors, co-workers, employer, etc.

I would like to know if you have informed McGladrey, the Board of Accounting, your landlord, neighbors and friends about your actions, active Protective Order, etc. Surely it is your moral duty.

When will you start paying your $94,000????? Please propose a plan for repayment.

> **On Tue, 06/16/15 at 5:16 PM, Bryan Rowes wrote:**
> **To:** Katy Tillotson
> **Subject:** RE: Visitation
> **Message:**
> Dear Katy,
>
> I have left a message with Hannah's House and am waiting to hear back.
>
> The OAG must not have correct information. I will look into it. Thank you for letting me know.
>
> I have had my appointment with Carrie, so it is now your turn. Please schedule your appointment. She did not bring up any issues regarding me and psychotherapy.

I met with Kristi Frye today, so you can go ahead and schedule an appointment for ████

My income has not changed.

I am following all of the court's orders, as always.

Thank you,
Bryan

On Mon, 06/15/15 at 10:37 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: Visitation
Message:

October of what year? According to the OAG you are over $11,000 in Child Support arrearages so you may want to re-check your math.

You do need to understand that the issues in the Ruling of the Court are not being addressed in mediation and are not negotiable.

The only issues to be mediated are our respective Motions for Enforcement- which is great for you because a mediator cannot put you in jail for contempt unlike a Judge. I see from the other events you are dealing with that you should be aware of that, and also that you seem to not care. Your lack of care is concerning to me, and makes me fear for the safety of myself and my family. Apparently I'm not the only one. I want to know that you are in psychotherapy as Ordered, who you are seeing and when you are beginning, issues being addressed and how progress will be provided to the court. I know Carrie was going to discuss this with you. Also, I was going to meet with her again after she saw you again but her assistant has not called. You are still seeing her, right?

Also, your income notification requirements have not changed. Again: has your income changed and/or are you receiving money from another source such as anyone in our family, or perhaps an inheritance? Please provide information.

On Mon, 06/15/15 at 5:00 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: Visitation
Message:
Dear Katy,

I was not aware that I was supposed to initiate contact with Hanah's House. Last time they contacted me, but I will go ahead and reach out to them.

I have a meeting scheduled to meet with Krsti Frye tomorrow.

The child support arrears are being garnished out of my wages and have been for some time. They will be complete and end in October.

I will send you information on insurance shortly.

I agree with you that any other issues should be addressed during mediation.

Thank you,
Bryan

On Mon, 06/15/15 at 2:22 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: Visitation
Message:
You are supposed to initiate contact. I said I was going to pay for my initial missed visit and the subsequent cancellation for the missed visit.

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

As you filed enforcement actions regarding the other misses- I think we should let the court/mediator handle those. However, if you want to pay I am more than happy to bring the children for additional visits to make up for any times that the miss was due to me.

Additional issues:

Have you begun the weekly psychotherapy?

Have you met with ████'s counselor and paid your retainer so that ████ can get started?

When will you begin paying the attorney's fees awarded to me by Judge Lopez? Or the travel fees awarded to me in the hearing you missed? Or the $5,000 awarded for my Protective Order? Also the child support arrears and medical payments?

In both the KTIH hearing and in this current case- you filed an affidavit under oath of an inability to pay court costs- however you have now hired a new law firm, you paid Mary Neal, and you sent $5000 towards back medical fees. You are supposed to tell me if your income has changed. Please inform as somehow you now have more money and you owe me a lot.

Also, regarding income, what are your insurance benefits that would be available to ██ and ████? How much would they cost? We are going to have to revisit child support, insurance, medical payments, etc. as due to your harassment of me at my place of employment I am resigning my position. Your behaviors- intended to humiliate, harass and embarrass me- did just that. You win. It has caused so much extra work for others- even though security, my boss and co-workers have been really supportive- I cannot work there when you blatantly violate the protective order there, contact my co-workers, etc. it is s burden on not only me but others and I'll not let myself be subjected to your harassment there anymore. Furthermore, with all that ██ and ████ and our entire family has been through, I am needed at home full time for my family.

---

On Mon, 06/15/15 at 1:28 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: Visitation
Message:

Dear Katy,

I have not been contacted by Hannah's house about setting up the second visit that you offered. Should I initiate that? Will you be paying for an additional session for last weeks cancellation? Will you be paying for additional sessions for previous times that you cancelled?

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:14 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 06/15/2015 2:22 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 06/15/2015 4:48 PM) |
| **Subject:** | RE: Visitation |
| **Message:** | |

You are supposed to initiate contact. I said I was going to pay for my initial missed visit and the subsequent cancellation for the missed visit.

As you filed enforcement actions regarding the other misses- I think we should let the court/mediator handle those. However, if you want to pay I am more than happy to bring the children for additional visits to make up for any times that the miss was due to me.

Additional issues:

Have you begun the weekly psychotherapy?

Have you met with ████'s counselor and paid your retainer so that ████ can get started?

When will you begin paying the attorney's fees awarded to me by Judge Lopez? Or the travel fees awarded to me in the hearing you missed? Or the $5,000 awarded for my Protective Order? Also the child support arrears and medical payments?

In both the KTIH hearing and in this current case- you filed an affidavit under oath of an inability to pay court costs- however you have now hired a new law firm, you paid Mary Neal, and you sent $5000 towards back medical fees. You are supposed to tell me if your income has changed. Please inform as somehow you now have more money and you owe me a lot.

Also, regarding income, what are your insurance benefits that would be available to ███ and █████? How much would they cost? We are going to have to revisit child support, insurance, medical payments, etc. as due to your harassment of me at my place of employment I am resigning my position. Your behaviors- intended to humiliate, harass and embarrass me- did just that. You win. It has caused so much extra work for others- even though security, my boss and co-workers have been really supportive- I cannot work there when you blatantly violate the protective order there, contact my co-workers, etc. it is s burden on not only me but others and I'll not let myself be subjected to your harassment there anymore. Furthermore, with all that ███ and █████ and our entire family has been through, I am needed at home full time for my family.

On Mon, 06/15/15 at 1:28 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: Visitation
Message:
Dear Katy,

I have not been contacted by Hannah's house about setting up the second visit that you offered. Should I initiate that? Will you be paying for an additional session for last weeks cancellation? Will you be paying for additional sessions for previous times that you cancelled?

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

*Bryan Rowes generated this report on 12/09/15 at 04:15 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 04/14/2015 3:22 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 04/14/2015 3:23 PM) |
| **Subject:** | RE: Expenses |
| **Message:** | |

Answered. Intent to harass.

**On Tue, 04/14/15 at 3:08 PM, Bryan Rowes wrote:**
**To:** Katy Tillotson
**Subject:** RE: Expenses
**Message:**

Dear Katy,

Sorry, I missed one:

Speech: therapists qualifications and how you were referred to her.

Thank you,
Bryan

**On Tue, 04/14/15 at 12:24 PM, Katy Tillotson wrote:**
**To:** Bryan Rowes
**Subject:** RE: Expenses
**Message:**

I do not see that there are any questions outstanding. Please resend legitimate questions relating to an expense. I will respond to any valid questions regarding the validity of an expense.

I will not respond to questions sent with the intent to harass or further delay payment.

**On Tue, 04/14/15 at 11:29 AM, Bryan Rowes wrote:**
**To:** Katy Tillotson
**Subject:** Expenses
**Message:**

Dear Katy,

I have completed payment on all expenses that do not have outstanding questions. As soon as you respond to them, I will complete any other payments.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:15 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 04/14/2015 3:21 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 04/14/2015 3:22 PM) |
| **Subject:** | RE: Expenses |
| **Message:** | |

3, 4, 5 intent to harass – nothing to do with legitimacy of payment. Separately, I will provide medical update but that has nothing to do with your responsibility to pay.

**On Tue, 04/14/15 at 3:06 PM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: Expenses
Message:

Dear Katy,

Please find the updated errors to the expense log:

1. 2/20/2015 Dentist. ▓ and ▓'s names are handwritten. Please provide a proper receipt.

2. 1/5/15 No Name

3. 12/20/14 Did ▓ go to urgent care in Atlanta?

4. 12/19/14 Did ▓ go to Primacare two days in a row?

5. 7/8/14 the only legible part of this shows "co-pay $0.00"

6. 4//24/14 No patient name

7. 2/20/14 No patient name

8. 12/4/13 No patient name

9. 1/16/14 No receipt

10. 8/31/13 Did ▓ go to the emergency room in San Antonio

**On Tue, 04/14/15 at 12:24 PM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: RE: Expenses
Message:

I do not see that there are any questions outstanding. Please resend legitimate questions relating to an expense. I will respond to any valid questions regarding the validity of an expense.

I will not respond to questions sent with the intent to harass or further delay payment.

**On Tue, 04/14/15 at 11:29 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: Expenses
Message:

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

Dear Katy,

I have completed payment on all expenses that do not have outstanding questions. As soon as you respond to them, I will complete any other payments.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:17 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 03/27/2015 3:14 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 03/27/2015 3:15 PM) |
| **Subject:** | RE: Counseling Referrals |
| **Message:** | |

Most counselors/psychologists/therapists do not want to treat children whose parents are involved in custody disputes.

Doyle was recommended by Dr. Sampson.

I would not have a psychiatrist do therapy.

Sarah was recommended by a psychiatrist that I respect. I do not intend to provide their name so please don't harass me about that either.

**On Fri, 03/27/15 at 9:33 AM, Bryan Rowes wrote:**
**To:** Katy Tillotson
**Subject:** RE: Counseling Referrals
**Message:**
Dear Katy,

Why does ███ need a forensic psychologist?

Thank you,
Bryan

**On Thu, 03/26/15 at 7:35 PM, Katy Tillotson wrote:**
**To:** Bryan Rowes
**Subject:** Counseling Referrals
**Message:**

Dr. Sampson does not do forensic cases. That is all of the information I have so if you would like more details about that you will need to call her.

She did provide one referral, and I obtained another referral as well. It is difficult to find psychologists who will work with children where there is active, ongoing litigation. Therefore, options will be limited.

I called Dr. Alexandria Doyle and spoke to her assistant Maria. She stated that she will not be able to speak with Dr. Doyle until Tuesday, and that she has a very full caseload, is not generally accepting new cases, but will sometimes make an exception for a forensic case as she is aware fo the need and limited availability. If she does not have any availability they will provide a referral if able.

I also left a message with Sarah Bennett. Her husband is a child psychiatrist. She is, I believe, open to forensic cases as well.

Will let you know when I hear back. If you have other suggestions I am open.

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:18 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 03/27/2015 2:55 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 03/27/2015 2:56 PM) |
| **Subject:** | RE: New York |
| **Message:** | |

I have no interest in your attempts to demand what we do during our vacation. I refuse to be bullied by you any further with your innaopropriate questions. Furthermore, if there are demands you wish to convey to my Attorney, then talk to Mary Neal but do not harass me with your controlling behaviors.

On Fri, 03/27/15 at 12:04 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: New York
Message:

Dear Katy,

You have not responded to my previous message regarding your trip to New York. Please either respond with the requested information or inform me that you are not going. If I do not hear from you by 5:00 I will assume you are disregarding the standing order again and will call the authorities.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:19 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 09/23/2014 1:39 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 09/23/2014 2:15 PM) |
| **Subject:** | RE: Education |
| **Message:** | |

You are using the children to harass and stalk me. STOP.

I will begin sending a brief weekly summary once a week.

On Tue, 09/23/14 at 1:25 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: Education
Message:
Dear Katy,

I am explicitly allowed access to all of the children's academic records and instructors. Furthermore, you are explicitly required to provide me with any such information. Even if you deny me these rights, at the very least you could give me a synopsis of what the kids are working on each week, how they are doing, and what their grades are like.

Please tell me more about the Heard classes. I assume you are doing the once a week homeschool studies for natural sciences that meet once a week. Please tell me what they will be studying and the structure of instruction/review. Do you know anything about their teachers- qualifications or quality? What sort of homework will they have? How much? How did you hear about it?

Which classes are the kids taking at the Perot?

Where is ▮▮▮▮ doing volleyball? What does "club" mean?

What does it mean that ▮▮ is doing a golf tournament series? Are the private lessons for both kids, or just ▮▮▮▮

Are they playing tennis competitively or just for fun? How often do they get to play? Just at a local court or something?

When did you decided to switch to the HP curriculum? How did you decide on that one vs. the others? How were you able to procure it? And what do you mean by using their curriculum? Same texts, teaching materials, and tests? Or just using their outline for instruction. So that means you are not using the curriculum from that website at all then?

You wrote that ▮▮ is the only one with private math tutoring for now. How and why will that change? What do you mean when you write that she teaches him in a way that his dyslexic brain needs? What does she do. More specifically, how does it differ from other forms of instruction. As someone who has taught math and written math curriculum, I am very interested, so please provide as much detail as possible. Please send Kristin's contact information and resume (is her phone number 972-239-5522?) I see that she has taught in RISD, does she still teach there? You had mentioned that ▮▮ needs to "catch up" on math. Please tell me what you meant by that and what you are doing to address it?

You mentioned that they have language arts only twice a week. How often do they have math and other subjects? Please send me a weekly and daily schedule please- it doesn't need to be exact or anything, just something to give me an idea. Again, please send me a resume and contact information for Jennifer Sullivan. Is she still teaching?

You wrote that they are reading constantly... Is there any structure to what they are reading, or do they choose? Is anything being done regarding reading comprehension? I feel like ▮▮ could benefit a great deal from a better focus on that.

Where do you get your spelling lists that you use? What does it mean that you do math facts daily? How do you do them? How long? Also, what does it mean that you are working on writing? How are you working on it? By geography you are working on having the kids memorize the political labels for geographic locations?

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

You have not started history nor social studies yet? What will they be reading? Where will you be traveling?

Thank you,
Bryan


**On Tue, 09/23/14 at 1:23 AM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: RE: Education
Message:

I have told you this twice now so this is the last time. I will not be providing the log-in information for the children's academic website. If you want to see what it looks like and the work included- then pay for a subscription yourself. However, due to the gross violations of our privacy, including your illegal hacking and theft of personal and private information and the fact that the children's accounts have links to our private information- we simply cannot provide their log-ins.

They have started their classes at the Perot- and I've them. ▮ actually had only three people in his class the first day, leading to there hours of highly individualized and intensive instruction. ▮ loved class- there were about 10 children. They are also taking a once a week science class at the Heard Wildlife museum. It includes the same class of kids all semester (and likely year), has weekly homework, and they are learning a lot. The combination of the two museums teaching science is great.

▮ is doing Club Volleyball (3x/week) and Avi is doing a golf tournament series for 8 weeks. Private lessons will start this week. They are both playing tennis regularly as well and lessons for tennis will start this week or next.

We have decided to follow the curriculum for HP ISD TAG program-it is great ▮ is meeting with Pat twice per week to continue his dyslexia work, they both have language arts twice a week with Jennifer Sullivan, and as of now, ▮ is the only one with private math tutoring- with Kristen Lesher. She is able to teach him in the way that his dyslexic brain needs and he loves it.

They are reading constantly, we have weekly spelling lists, math facts daily, writing daily ( structured and unstructured), working on geography (goal by end of year for all children to know at least every state, capital, continent and ocean.

We are ready to dive into history and social studies through reading, museums, and travel.

They are thriving.


**On Mon, 09/22/14 at 11:48 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: Education
Message:
Dear Katy,

Please provide the log-in information for the kids academic website.

Please also update me on how things are going with their education. Have they started any of their classes? What did you decide on from our emails?

Thank you,
Bryan

**Message Report**

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com

*Bryan Rowes generated this report on 12/09/15 at 04:20 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 09/23/2014 1:23 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 09/23/2014 1:25 PM) |
| **Subject:** | RE: Services |

**Message:**

I will be a█████ golf tournament so if you are there you would be violating the Protective Order.

Furthermore, your comments about expenses including me being court ordered to pay any of yours are flat out wrong and demonstrate there can be no deviation from the court order.

You are welcome to share your religion in whatever way you choose during your time at FLP. These message exchanges further confirm what the psychologist recommended. Your visits need to be supervised while you undergo intensive psychotherapy. I am going to follow the Court Order.

Please do not message me again regarding this. It has become harassment and further messages would violate your PO to not harass me.

**On Tue, 09/23/14 at 11:47 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: RE: Services
Message:
Dear Katy,

Rod works for the Fort Worth police department. 817-733-4738

I will contact my lawyer, but only because we are very short on time. Additionally, I have never intentionally created additional attorney expenses for you. In fact, I have done everything I can to minimize the expenses incurred by everyone involved.

You have intentionally created many additional attorney expenses for me and even when ordered by the court have not reimbursed them.

There is no morning service on the 24th. The service is 9pm-10:30pm

In recognizing the holiday, we are required not to work. Are you saying that you will not allow them to practice this aspect of the holiday? Isn't █████ math class taught one-on-one by a tutor? Can't that be rescheduled?

For the 25th can you please be more specific than "later services" when referring to services you are not allowing the children to attend? There are services at 12:30-2:45 and 4:30 - 5:30. Are you saying both?

Unfortunately, my parents will not be in town in time for █████'s volleyball game, their flight gets in later.

I doubt we will be able to attend the golf tournament because it is Yom Kippur, but please send me details.

Are you saying that you will not allow the kids to attend services at these times either?

Please be specific in the services you will allow the kids to attend. Here is a list:

Sep. 24 9pm-10:30pm
Sep. 25 10am-11:30am
Sep. 25 12:30-2:45pm
Sep. 25 4:30pm-5:30pm

Oct. 3 9pm-10:30pm
Oct. 4 9:45am-11:30am
Oct. 4 1:00-2:30pm
Oct. 4 3:30-5:00
Oct. 4 5:45-8pm

Lastly, I can understand why I need to cancel Wednesdays visit, but I do not understand why I need to cancel Sunday's and next weeks. Please explain why this is necessary. As soon as I have confirmation that I have satisfied all of your stipulations and that this is going to happen I will cancel Wednesday's visit.

Thank You,
Bryan

---

**On Tue, 09/23/14 at 1:41 AM, Katy Tillotson wrote:**
To: Bryan Rowes
Subject: RE: Services
Message:

I will need Rod's actual contact information (including what police department he works for) not just that I can reach him through Jessica.

Re:attorney letter. Yes, it is an additional expense. You have intentionally created many additional attorney expenses for me and even when ordered by the court have not reimbursed them. Yes, I will require a letter from your attorney. Every service they attend will make up for one of my cancelled/missed visits (again, by me, not cancelled by FLP or by the kids themselves).

The morning of the 24th service would be fine. The morning of the 25th would be fine as well, but later services would cause them to miss science class as well as ▮ math class.

The 3rd and 4th should be fine other than ▮ has a volleyball game at 2:30, which your parents might like to attend. They might also like to attend ▮ golf tournament that Sunday.

Also, I need you to, by tomorrow, cancel Wednesday and Sunday visits this week and next.

---

**On Mon, 09/22/14 at 11:46 AM, Bryan Rowes wrote:**
To: Katy Tillotson
Subject: Services
Message:
Dear Katy,

If you could please let me know if there are any services you will definitely not be allowing the kids to attend? I need to get tickets and some things are nearly full.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

*Bryan Rowes generated this report on 12/09/15 at 04:22 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 06/24/2014 7:32 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 06/24/2014 7:36 PM) |
| **Subject:** | RE: Misc Things |
| **Message:** | |

On June 14th I sent you an email asking for your input on teachers, their costs, as well as helping put together some reading lists, curriculum, etc. In the 10 days since I have received no response (other than your initial "former Greenhill, Hockaday or St Mark's teachers"). If you would like to provide your input before I make any final decisions you have been invited to.

I do not intend to provide you specifics on the teachers I am looking into now as historically you have used contacting teachers as a way to threaten, harass and embarrass me- which is a large reason I am being forced to remove ██ and ██ now from a school that they love. However, please provide SPECIFIC recommendations and I will certainly explore. If your recommendations are very expensive, let me know whether you or your parents are prepared to contribute to the cost.

Contacting me about mediation is in direct violation of my protective order- only communicate as it directly relates to specific issues with the children.

Regarding your parents: if they plan to be in Dallas let me know the days and we can try to arrange some time for them to spend together.

**On Tue, 06/24/14 at 8:52 AM, Bryan Rowes wrote:**
**To:** Katy Tillotson
**Subject:** Misc Things
**Message:**
Dear Katy,

I wanted to follow-up on a few things..

--When would it be a good time for the kids to visit my parents- they would lijke to get tickets?

-Do you have any more information about the kids schooling? I am most interested in which teachers you are planning on getting. Or what you have done to procure teachers and establish a curriculum.

-When will ██ be getting backl from camp?

-Your lawyer inquired at the hearing the other day about mediation. Is this something that you would be interested in? If so, what sorts of things do you have in mind.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

# Message Report

The OurFamilyWizard® website
1302 2nd St NE Suite 200
Minneapolis, MN 55413
http://www.OurFamilyWizard.com
Info@OurFamilyWizard.com



*Bryan Rowes generated this report on 12/09/15 at 04:23 PM. All times are listed in America/Chicago timezone.*

| | |
|---|---|
| **Message:** | 1 of 1 |
| **Date:** | 11/29/2013 7:24 PM |
| **From:** | Katy Tillotson |
| **To:** | Bryan Rowes (First View: 11/29/2013 7:25 PM) |
| **Subject:** | RE: █ |
| **Message:** | |

Stop harassing me. If █ has access to some secret phone and was texting you from it them I guess you should respond to that number. Leave me alone and cease using the children as an excuse to continue to harass me.

On Fri, 11/29/13 at 7:04 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: RE: █
Message:

Dear Katy,

I meant to say that was 6:15 PM.

Thank you,
Bryan

On Fri, 11/29/13 at 6:49 PM, Katy Tillotson wrote:
To: Bryan Rowes
Subject: RE: █
Message:

That is not possible. You did not receive a text from █ he has not even had access to a phone today.

On Fri, 11/29/13 at 6:20 PM, Bryan Rowes wrote:
To: Katy Tillotson
Subject: █
Message:

Dear Katy,

I just received a text message from █. Please have him call me.

Thank you,
Bryan

Copyright ©2000-2015 OurFamilyWizard.com, all rights reserved, patented

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ███. and ███. | § | 256TH JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

**ORSINGER, NELSON, DOWNING & ANDERSON, L.L.P.:**
(November 24 through December 7, 2015)
**TOTAL FEES, EXPENSES & COSTS** ........................................................ **$3,014.97**

**ESTIMATED FEES FOR PREPARING AND ATTENDING HEARING**
(December 8 through December 10, 2015)
PARALEGAL – 15.00 hours@$175/hr ...................................................... $2,625.00
ATTORNEY – 15.00 hours@$325/hr ...................................................... $4,875.00
ATTORNEY – 1.00 hours@$525/hr ........................................................... $525.00
**TOTAL PROJECTED FEES** .................................................................. **$8,025.00**

# TOTAL FEES, EXPENSES & COSTS
## (November 24, 2015 through December 10, 2015)
# $11,039.97



EXHIBIT
R-2

# ORSINGER, NELSON, DOWNING & ANDERSON, L.L.P.

5950 Sherry Lane
Eighth Floor
Dallas, TX 75225

December 7, 2015

Mr. Bryan Rowes

PERSONAL AND CONFIDENTIAL

File No. 15310-3-PAB

Invoice #: 0

## Professional Services

| | | | | | Hours | Amount |
|---|---|---|---|---|---|---|
| JS34 | 11/24/2015 | | 1.25 | 0.00 | 175.00 | 0.00 |
| 11/24/15 | JS | New client file set up; Conference with Paula Bennett; Draft Answer to Enforcement; Revise Answer; Review file and documents. (1.25 hrs worked - no charge) | | | 0.00 | 0.00 |
| PAB | 11/25/2015 | | 3.50 | 3.50 | 325.00 | 1,137.50 |
| 11/25/15 | PAB | Interoffice conference _____ Draft Business Records Affidavit: Email correspondence _____ ; Draft Special Exceptions and Motion to Strike; Motion to Dismiss for Lack of Standing and Original Answer. | | | 3.50 | 1,137.50 |
| JS34 | 11/25/2015 | | 0.50 | 0.50 | 75.00 | 37.50 |
| 11/25/15 | JS | Secretarial - Receipt and review correspondenc Conference with Paula Bennett; Review file and draft pleadings. | | | 0.50 | 37.50 |
| PAB | 11/30/2015 | | 0.75 | 0.75 | 325.00 | 243.75 |
| 11/30/15 | PAB | Interoffice conference with Joanie with instructions; Receipt and review email correspondence from Client; Email correspondence to and from opposing counsel; Copy of correspondence to Client. | | | 0.75 | 243.75 |
| JS34 | 11/30/2015 | | 1.00 | 0.50 | 75.00 | 37.50 |
| 11/30/15 | JS | Secretarial - Conference with Paula Bennett; | | | 0.50 | 37.50 |

Review and revise Answer; Attempt to efile
Answer; Correspondence to opposing counsel
with Answer; Conference with runner regarding
filing Answer in sealed case; Receipt and review
file-stamped copy of Answer. (1.0 hrs worked -
.50 hrs no charge)

| PAB | 12/02/2015 | | 3.00 | 3.00 | 325.00 | 975.00 |
|---|---|---|---|---|---|---|

| 12/02/15 | PAB | Telephone conference with Client; Telephone conference with opposing counsel; Email conference with opposing counsel; COpy of correspondence to Client; Email conference with Client (multiple); Email correspondence to opposing counsel; Copy of correspondence to Client; Office conference ........ .. . Interoffice conference with Joanie with instructions; Attempt to call | 3.00 | 975.00 |
|---|---|---|---|---|

| JS34 | 12/02/2015 | | 1.50 | 0.50 | 175.00 | 87.50 |
|---|---|---|---|---|---|---|

| 12/02/15 | JS | Conference with Paula Bennett; Research issues for hearing; Begin preparation for hearing; Conference with attorneys regarding legal issues. (1.5 hrs worked - 1.0 hrs no charge) | 0.50 | 87.50 |
|---|---|---|---|---|

| JS34 | 12/04/2015 | | 0.75 | 0.75 | 75.00 | 56.25 |
|---|---|---|---|---|---|---|

| 12/04/15 | JS | Secretarial - Receipt and review correspondence to and from Client (multiple); Telephone conference . ; Draft subpoena . . Conference with Paula Bennett. | 0.75 | 56.25 |
|---|---|---|---|---|

| PAB | 12/07/2015 | | 0.75 | 0.75 | 325.00 | 243.75 |
|---|---|---|---|---|---|---|

| 12/07/15 | PAB | Receipt and review email correspondence from Client (multiple); Email correspondence t | 0.75 | 243.75 |
|---|---|---|---|---|

| JS34 | 12/07/2015 | | 1.50 | 1.50 | 75.00 | 112.50 |
|---|---|---|---|---|---|---|

| 12/07/15 | JS | Secretarial - Begin preparation from hearing; Review file and documents; Review and scan to file documents received from Client ' . . . . Correspondence to and from Client. | 1.50 | 112.50 |
|---|---|---|---|---|

| | | For professional services rendered | 11.75 | 2,931.25 |
|---|---|---|---|---|

Additional Charges:

| COPY | 12/07/2015 | | $63.75 | |
|---|---|---|---|---|
| 12/07/15 | | Photocopy Expenses | | 63.75 |

| COUR | 12/07/2015 | | $19.97 | |
|---|---|---|---|---|

|                          |              |            |
| ------------------------ | ------------ | ---------- |
| Total costs              |              | ~~83.72~~  |
| **Total - This Invoice** |              | $3,014.97  |
| **Trust Applied**        |              | $3,014.97  |
| **Trust Balance**        |              | $1,985.03  |
| **New Balance**          |              | $0.00      |

**Balance Due within 10 days of statement date**

| JS34 | 6.50  | 3.75  | 50.96  | 331.25   |
| ---- | ----- | ----- | ------ | -------- |
| PAB  | 8.00  | 8.00  | 325.00 | 2,600.00 |
|      | 14.50 | 11.75 |        | 2,931.25 |

Inquiry: Fees - Unbilled Details
Client: 15310 - Rowes, Bryan - Enforc.
Matter: 0003 - Rowes, Bryan - Enforc.

Timekeeper: All Timekeepers

User: MN

|    | Matter | Date | Timekeep | Hours | Rate | Amount |
|----|--------|------|----------|-------|------|--------|
| 1  | 3 | 11/24/2015 | JS34 | 0.00 | 175.00 | 0.00 |
| 2  | 3 | 11/25/2015 | JS34 | 0.50 | 75.00 | 37.50 |
| 3  | 3 | 11/25/2015 | PAB | 3.50 | 325.00 | 1,137.50 |
| 4  | 3 | 11/30/2015 | PAB | 0.75 | 325.00 | 243.75 |
| 5  | 3 | 11/30/2015 | JS34 | 0.50 | 75.00 | 37.50 |
| 6  | 3 | 12/02/2015 | JS34 | 0.50 | 175.00 | 87.50 |
| 7  | 3 | 12/02/2015 | PAB | 3.00 | 325.00 | 975.00 |
| 8  | 3 | 12/04/2015 | JS34 | 0.75 | 75.00 | 56.25 |
| 9  | 3 | 12/07/2015 | JS34 | 1.50 | 75.00 | 112.50 |
| 10 | 3 | 12/07/2015 | PAB | 0.75 | 325.00 | 243.75 |
| 11 | 3 | 12/08/2015 | PAB | 2.25 | 325.00 | 731.25 |
| 12 | 3 | 12/08/2015 | JOA | 0.50 | 525.00 | 262.50 |
| 13 | 3 | 12/08/2015 | JS34 | 2.50 | 175.00 | 437.50 |

Inquiry: Fees - Unbilled Details
Client: 15310 - Rowes, Bryan - Enforc.
Matter: 0003 - Rowes, Bryan - Enforc.

Timekeeper: All Timekeepers

User: MN

| | Narrative |
|---|---|
| 1 | New client file set up; Conference with Paula Bennett; Draft Answer to Enforcement; Revise Answer; Review file and documents. (1.25 hrs worked - nc |
| 2 | Secretarial - Receipt and review correspondenc                    Conference with Paula Bennett; Review file and draft pleadings. |
| 3 | Interoffice conference                    ı; Draft Business Records Affidavit; Email correspondence                    ¡                    ., Draft |
| 4 | Interoffice conference with Joanie with instructions; Receipt and review email correspondence from Client; Email correspondence to and from opposing |
| 5 | Secretarial - Conference with Paula Bennett; Review and revise Answer,            ,. .. ...  , ...... , Correspondence to opposing counsel with Answer; C |
| 6 | Conference with Paula Bennett; Research issues for hearing; Begin preparation for hearing; Conference with attorneys regarding legal issues. (1.5 hrs |
| 7 | Telephone conference with Client; Telephone conference with opposing counsel; Email conference with opposing counsel; COpy of correspondence to |
| 8 | Secretarial - Receipt and review correspondence to and from Client (multiple); Telephone conference ··                    Draft subpoena |
| 9 | Secretarial - Begin preparation from hearing; Review file and documents; Review and scan to file documents received from Client |
| 10 | Receipt and review email correspondence from Client (multiple); Email correspondence |
| 11 | Telephone conference                    ....., Email correspondence to Client; Receipt and review records ·                    ͥ; Email conference ͵. |
| 12 | Office conference with Paula Bennett. |
| 13 | Receipt and review correspondence from Client ·        ...        . Review and save to file all attachments from Client (multiple); Prepare |